**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **LIGHT EBTH LLC** | ) | Case No. |
| | ) | |
| **Plaintiff,** | ) | **COMPLAINT FOR BREACH OF** |
| | ) | **CONTRACT, BREACH OF** |
| v. | ) | **FIDUCIARY DUTIES, FRAUD,** |
| | ) | **AND VIOLATIONS OF STATE** |
| **EBTH INC., ANDREW C. NIELSEN,** | ) | **AND FEDERAL SECURITIES** |
| **JONATHAN C. NIELSEN, and** | ) | **LAWS** |
| **MICHAEL J. REYNOLDS** | ) | |
| | ) | **(JURY DEMAND ENDORSED** |
| | ) | **HEREIN)** |
| **Defendants.** | ) | |

## INTRODUCTION

1.     Defendants fraudulently induced the Plaintiff to purchase 369,130 shares of common stock of EBTH Inc. ("Company" or "EBTH") for a purchase price of $899,999.49 while repeatedly and materially misrepresenting the true (and severely deteriorating) financial condition of the Company.  Accordingly, Plaintiff pursues this lawsuit seeking all appropriate relief available pursuant to the applicable federal and state securities laws, and other common law remedies including civil conspiracy.

## THE PARTIES

2.     Plaintiff is a limited liability company organized under the laws of the state of Delaware.

3.     Defendant EBTH Inc. is a company existing under the laws of the State of Delaware with a principal place of business in Cincinnati, Ohio.  The Company is the largest e-commerce marketplace for estate sales.  It operates via a two-sided auction marketplace for individuals downsizing, relocating, or experiencing other life events so that they can sell their

220808331

belongings to purchasers.  Its registered agent is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

4.      The Company began in 2007 as a full-service estate sale business with a focus on driving awareness through a web presence.  The business grew quickly and, thereafter, Andrew C. Nielsen, Jonathan Nielsen and Michael Reynolds (collectively the three are referred to as "Individual Defendants") approached the original owners of the business about expansion and the Individual Defendants' plan to partner with the original owners and take the Company global.

5.      Defendant Andrew C. Nielsen ("A. Nielsen") is an adult individual residing at 1211 Tannehill Lane, Cincinnati, Ohio, 45208.  At all relevant times, he was an officer of the Company (serving as its President/CEO from May 2012 through March 2018) and a member of the Company's Board of Directors during that period.

6.      In his role with the Company, he touts having "led the company to more than 1,100% growth and was instrumental in raising $84.5 million in venture capital to support the growth of the business."  Further, as reflected by his online profile, "[u]nder his leadership, the company expanded from 1 to 27 markets, hired 650+ employees and was named one of the Cincinnati Business Courier's Fast 55 and one of Inc.'s 5000 Fastest Growing Private companies."

7.      Defendant Jonathan C. Nielsen ("Jon Nielsen") is an adult individual residing at 1209 Tannehill Lane, Cincinnati, Ohio, 45208.  At all relevant times, he was an officer of the Company (serving as its Chief Business Officer [from March 2017 through May 2018] and Chief Revenue Officer [from May 2012 through March 2017]) and a member of the Company's Board of Directors during those periods.

8.      In Jon Nielsen's roles, he touts leading the Company's "rapid growth (2,000% +) over the past five years while pursuing rapid national expansion.  Originally a small 'single-store' operation with 12 employees, Jon and EBTH's management team drove EBTH to a team of nearly 1,000 people operating in over 27 cities across the nation - reaching buyers in over 150 countries."  In addition, he "transitioned into the role of Chief Business Officer in early 2017 to lead EBTH's innovation and new business division. Working cross-functionally, Jon and his team were responsible for identifying and building radical and breakthrough service offerings and revenue streams, ensuring that EBTH maintained its position as industry leader."

9.      Defendant Michael J. Reynolds ("Reynolds") is an adult individual residing at 5722 Beech Grove Lane, Cincinnati, Ohio, 45233.  At all relevant times, he was an officer of the Company (serving as its Chief Financial Officer ("CFO") from [May 2012 through October 2016, and again from March 2018 forward] and Chief Operating Officer ("COO") [from October 2015 through March 2018] and, upon information a member of the Company's Board of Directors during those periods.

10.      In Reynolds' roles with the Company, he was heavily involved in securing investment funding and corresponding agreements for the Company's benefit, as well as securing venture capital funding via Series A, B, and C rounds.  He also managed the Company's key business operations, including scaling of the Company's operations to a national footprint, centralized processing, fulfillment operation, shipping, and process engineering.

11.      At all relevant times, the Individual Defendants controlled the Company and acted as agents on its behalf and each other as related to the Plaintiff's purchase of stock at issue.

**JURISDICTIONAL STATEMENT**

12.      The District Court has subject matter jurisdiction of this action as it raises a federal question under 15 USC §78aa and 28 USC §1331.

220808331

13. This action is brought pursuant to Section 10(b) and Section 20(a) of the 1934 Securities Act (15 USC §§ 78j(b) and 78t(a)) (hereinafter referred to as the "1934 Act"), and Rule 10b-5 of the Securities and Exchange Commission (17 C.F.R. §240.10b-5(b)), based upon the Defendants' use of various means or instrumentalities of interstate commerce and of the mails in connection with the sale of securities, and through the use of various manipulative or deceptive devices or contrivances in contravention of rules or regulations prescribed by the Securities and Exchange Commission.

14. This District Court has supplemental jurisdiction pursuant to 28 USC §1367 of the Plaintiff's pendent common law and statutory claims including (but not limited to) those arising under the laws of the State of Delaware as described below because such claims are part of the same case and controversy.

## VENUE

15. Venue lies properly in this District under 28 USC §1391(b). In particular, but without limitation, at least one of the defendants resides in the state in which this district is located. Further, a substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTUAL BACKGROUND

16. The Plaintiff acquired its ownership interest in the Company EBTH Inc. pursuant to a Common Stock Purchase Agreement dated as of January ___, 2017 (the "Agreement"). A copy of this Agreement is attached hereto, and incorporated by reference as if set forth fully herein, as Exhibit A. The corresponding Shareholder Agreements Joinder Signature Pages are attached hereto and incorporated by reference as if set forth fully herein, as Exhibit B; Amendment No. 1 to the Second Amended and Restated Investors' Rights Agreement is also attached hereto and incorporated by reference as if set forth fully herein as Exhibit C.

- 4 -

17.    Ultimately, Defendants fraudulently induced Plaintiff to purchase a total of 369,130 shares of common stock of the Company for a purchase price of $899,999.49 while repeatedly and materially misrepresenting the true (and severely deteriorating) financial condition of the Company.

18.    Prior to that purchase, on or about December 3, 2016, the Individual Defendants, individually and acting on behalf of the Company, provided a pitch deck to Plaintiff including the following material information about the Company:

|  | 2016 Projected | 2017 Projected |
|---|---|---|
| Gross Auction Revenue | $75,919,960 | $174.738,448 |
| Net Income | ($18,548,773) | ($16,624,773) |

19.    Then, on December 10, 2016, A. Nielsen provided an email to Plaintiff as follows:

*"Hi Mark and Ellen,*

*I hope you're having a great weekend.*

*I've attached the following, per our conversation yesterday:*

*1. 2015 Audited Financial Statements*

*2. YTD financials through 10/31/16.*

*3. A summarized version of our growth model. It is a lot to digest, but it will show more about how the expenses and revenue build. A few notes listed below:*

- *We're working through final budgeting for 2017 right now. As such, that will adjust some of our future projections.*
- *Pay most attention to the "Summary IS" tab.*
- *The Market Pro Forma tab shows an individual location build / budget over the first three years.*
- *The projections in this model include 12 new locations per year. If you want to see the impact of launching additional (or fewer) markets, you can add locations in the yellow cells across the top of the Summary IS tab.  I've gone ahead and removed 4 locations (bringing the total new market count to 8 for 2017).*

- *You'll see Percentage Adjusters in yellow on the left-side of the Summary tab. You can use these to dial up or down the projections for most line items and then monitor the impact per year out to the right. You'll see "Modified," "Original," and "Variance" to help you see the impact of the adjustments.*
- *We built this so we can monitor the impact of certain line items.*
- *The Cashflow sheet has inputs at the top for non-locational CapEx and funding. Each location added on the income statement adds an additional $12,500 of CapEx that is location-specific.*

*This might be more detail than you wanted, but the growth model shows how things build over the next 2 years. I'm happy to review via phone early this week if you'd like.*

*Thanks!*

*Andy"*

20. This correspondence is devoid of any mention of potential changes or refinements of the 2016 budget.

21. Notably, the model revenue represented to Plaintiff the Company's net income before Plaintiff's investment to be a loss of no more than $19,430,571 based upon the summary income statement information given as of that point.

22. Then, on December 19, 2016, A. Nielsen sent another email to Plaintiff including the following assurance: "**In an effort to make sure you're operating off of the most current info**, we're currently working through 2017 planning and believe that the top line revenue projection will likely be in the $130-140MM range as we focus on growth in many of our existing cities and launching more distribution centers. The final budget will be approved at the next board meeting in early 2017." (Emphasis added).

23. The next day, on December 20, 2016, Plaintiff asked about the 2016 and 2017 losses during an oral discussion with A. Nielsen. During that discussion, Andrew Nielsen

- 6 -

discussed adjusted Company financial information for 2017 as provided to Plaintiff earlier that month (including the model revenue spreadsheet referenced above).

24.     On January 3, 2017, considering the substantial investment it was about to make, Plaintiff requested via email, *inter alia*, "financial statements for year end or whatever is the most up-to date that you can send" and raised various questions regarding the company's performance.

25.     In response, A. Nielsen sent an email that date as follows:

I've attached financials through November.

As it pertains to the jump in SG&A for 2017: Much of the jump can be attributed to sales and marketing spends. That said, we're actually in the process of working through 2-3 different growth scenarios for the board for 2017 (for instance, less growth focus and focus on profitability vs. more growth). As we look to this year, the conversation is around how much we want to drop into the sales and marketing engine while building the necessary infrastructure. This year will be a balance of growth and profitability in core cities.

Re: the size of the market: We currently target sales > $15,000 (unless a client has a small collection of items that are each of relatively high value that is easy to process). We monitor factors such as operational throughput (how fast our teams are processing inventory), condition of the estate (between Level 1 and Level 5), average price per item, number of local bidders, and many other KPI's across each of our cities. Our sales reps target an average price per item > $75. We are more lenient when we first enter a market to increase brand awareness, local demand, etc. As such, new locations pull the aggregate average estate value down to ~ $18,000; then as a market matures, this number climbs (as mentioned, we look at this across each city over time). It would be hard to pick an actual % of the available market that is above a certain threshold, but as our older cities have shown us, there are plenty of opportunities that meet this criteria. I'll also point out that we haven't specifically focused on the high-end of the market. We just processed one of our largest curated, single sales to date in December (click here), and will be processing more of those as we head into this year.

26.     Also in that response, A. Nielsen attached a document called "Consolidated Monthly vs. Plan FS 11.30.16 – EBTH Inc. (Q4 REV PLAN).xlsx. That document, as Plaintiff

- 7 -

later learned, did not include the detailed, most up-to-date financial information as requested nor did it include the plan information subsequently provided by the Defendants to Plaintiff only after the closing date. To the contrary, it contained only certain information sought and did not correct the material information provided to Plaintiff as of that date. Similarly, Defendants omitted from disclosure the actual income they anticipated for 2016.

27. On January 6, 2017, in reliance upon these written representations and omissions – and similar/corresponding written and oral assurances made by the Defendants or for which Defendants are responsible, Plaintiff wired its funds to purchase the shares contemplated by the Agreement.

28. On January 9, 2017, the Plaintiff closed on the purchase of the Company's shares pursuant to the Agreement, paying a total of $899,999.49 for 369,130 shares of the Company's common stock. *See* Exhibit A (Agreement).

29. The very next day - on January 10, 2017 - the Company provided its first financial information to Plaintiff after the closing on the Agreement.

30. On that date, the Company's then CFO attached a document called "Consolidated Monthly vs. Plan FS 11.30.16 – EBTH Inc. (Q4 REV PLAN).xlsx. That document, contrary to the one with the same title that A. Nielsen provided prior to closing, includes more detailed financial information than what Plaintiff received before the closing – including the plan information previously withheld from the January 3, 2017 correspondence. Incredibly, that more detailed document indicates that it was created on December 23, 2016.

31. Further, on that date and thereafter, it became clear that certain material information had not been provided to Plaintiff including the following::

     i.    September income loss information (of $3.3 million);

      ii.     December income loss information confirming a loss of $4.1 million -

              more substantial than anticipated and previously represented to Plaintiff;

      iii.    The Company's actual planned income loss of $27.8 million (as opposed

              to the more favorable representations made prior to closing);

      iv.    2016 year to date actual income loss of $29.25 million; and

      v.     The updated 2016 Company budget and other significant, material

              information about the Company all of which was available and should

              have been disclosed by Defendants prior to Plaintiff's purchase.

32.     In that January 10, 2017 email, Plaintiff received the following material information:

> Gross Auction Revenue rose to $6.7 million in November, a record month for EBTH but slightly below our **reforecast completed in early October**. December GAR also is expected to come in at $6.7 million, bringing our full-year revenue to a projected $61.8 million. The net loss for November was $2.8 million, consistent with October's performance but an improvement over the $3.3 million loss in September.

(Emphasis added).

33.     Ultimately, the financial figures and information provided post-closing by the Defendants to Plaintiff are substantially different than the net income (loss) anticipated that Defendants represented to Plaintiff prior to its executing the Agreement as set forth above.

34.     Furthermore, the January 10, 2017 information described in the immediately preceding paragraphs is the first reference by any Defendants to a "reforecast" of the Company's 2016 budgeted figures that occurred in October 2016.

35.     Incredibly, the foregoing information provided on January 10, 2017 included a more detailed spreadsheet that Defendants had created, but not provided to Plaintiff, on December 23, 2016. In fact, Defendants did not provide that full document to Plaintiff until the

- 9 -

day after it had closed on the Agreement and after it had provided the funds to purchase the Company stock.

36.     Further, through January 10, 2017, the only reference by the Defendants to Plaintiff regarding forecast adjustments was potential adjustment to the Company's 2017 forecast – not 2016.

37.     Based upon the information provided post-closing, Defendants knew (or should have known) that the Company's financial performance figures had already been materially adjusted in October 2016.  Despite various discussions and written communications with Plaintiff prior to closing regarding the Company's financial performance, Defendants failed to relay that material information to Plaintiff nor did they relay other material information accurately (or at all) to Plaintiff in a timely and proper fashion.

38.     For example,  on February 15, 2017, Plaintiff received the Company's actual December 2016 and 2016 full year data.  That information reflected, *inter alia*, the 2016 full year loss was actually $29,257,466 – substantially different than the information provided earlier in 2017 to Plaintiff (after the 2016 financial year closed) regarding anticipated losses to be significantly less.

39.     At no time prior to closing did Defendants ever relay to Plaintiff that the Company's net loss would be substantially different than represented to Plaintiff prior to closing or other material information ultimately impacting the profitability of the Plaintiff's investment.

40.     On July 24, 2017, A. Nielsen then sent a letter stating that Defendants are focused on key areas for the third quarter of the year.  Therein, he made no mention of raising capital. Instead, he concluded the letter with the following: "We've made strong progress thus far in 2017, and I believe we've created great momentum as we head into the second half of the year.

- 10 -

Our team is dedicated to driving a banner year for EBTH, and we truly appreciate your ongoing support." Thereafter, however, the Company apparently began to make additional efforts towards raising capital.

41.     Neither the Company – nor any of the Individual Defendants – made any mention of capital raising activity in any updates until December 26, 2017.  However, at that point, Defendants announced taking on venture debt and that the Company would be seeking additional equity capital.

42.     In short, as set forth above, Defendants fraudulently lured the Plaintiff to invest in the Company by acquiring Company common stock in the process.  They did so by knowingly misrepresenting the true financial information of the Company, and otherwise knowingly omitting/concealing the Company's rapidly deteriorating financial condition along with the potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or the extent to which  such activity may be necessary/desired.  At a minimum, the Defendants negligently misrepresented and/or omitted providing such material information from Plaintiff.

43.     Prior to filing this lawsuit, Plaintiff attempted to recoup its fraudulently induced investment from the Individual Defendants.  However, the Individual Defendants have not made the Plaintiff whole despite the egregiousness of their actions and omissions.

## COUNT I
## VIOLATIONS OF FEDERAL SECURITIES LAW
## (AGAINST ALL DEFENDANTS)

44.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

45.     Rule 10b-5 promulgated under the Securities Act of 1934 (17 C.F.R. 240.10b-5) states: "It shall be unlawful for any person, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    (a)    To employ any device, scheme or artifice to defraud,

    (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

46.    To establish liability under § 10(b) of the Securities Exchange Act and under Rule 10b-5, a plaintiff must prove that, in connection with the purchase or sale of a security, (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the Plaintiff's damages.

47.    As stated with specificity above, each of the Defendants engaged in material omissions and material misrepresentations of material facts by knowingly (a) misrepresenting the true financial information of the Company, (b) otherwise omitted/concealing the Company's rapidly deteriorating financial condition, (c) failing to disclose the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or extent that such activity may be necessary/desired less than a year after Plaintiff purchased its stock in the Company.

48.    Given the extent of the Individual Defendants' respective roles with the Company, and their actions on its behalf, Defendants knowingly made the above-stated material false statements and/or omissions of material fact.

49.    Plaintiff justifiably relied upon Defendants' material false statements and/or omissions of material fact, which proximately caused the Plaintiff's damages.

- 12 -

50. Based upon the foregoing, Plaintiff has suffered substantial monetary damages regarding the entire, or at least the vast majority, of the value of Plaintiff's shares in the Company.

51. The foregoing should entitle Plaintiff to rescission of their stock purchase in the Company and Plaintiff hereby pursues such relief.

52. At a minimum, Plaintiff should be entitled to the difference between the price it paid and the true value of the common stock at the time of purchase or sale.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 (including rescission of the Plaintiff's common stock purchase), punitive damages, attorney's fees, interest and costs, and for such other relief as the Court deems appropriate.

## COUNT II

### VIOLATIONS OF DELAWARE'S SECURITIES ACT §73-201 ET SEQ. (AGAINST ALL DEFENDANTS)

53. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

54. Defendants' actions violated the antifraud provisions of the Delaware Securities Act at Section 73-201, which provides:

> *It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:*
>
> *(1) To employ any device, scheme or artifice to defraud;*
>
> *(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or*
>
> *(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.*

- 13 -

55.     Defendants violated the provisions of Section 73-201 of the Delaware Securities Act by knowingly (a) misrepresenting the true financial information of the Company, (b) otherwise omitted/concealing the Company's rapidly deteriorating financial condition, (c) failing to disclose the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or extent that such activity may be necessary/desired less than a year after Plaintiff purchased its stock in the Company.

56.     As stated with specificity above, each of the Defendants engaged in material omissions and material misrepresentations of material facts by knowingly (a) misrepresenting the true financial information of the Company, (b) otherwise omitted/concealing the Company's rapidly deteriorating financial condition, (c) failing to disclose the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or extent that such activity may be necessary/desired less than a year after Plaintiff purchased its stock in the Company.

57.     Given the extent of the Individual Defendants' respective roles with the Company, and their actions on its behalf, Defendants knowingly made the above-stated material false statements and/or omissions of material fact.

58.     Plaintiff justifiably relied upon Defendants' material false statements and/or omissions of material fact, which proximately caused the Plaintiff's damages.

59.     Based upon the foregoing, Plaintiff has suffered substantial monetary damages regarding the entire, or at least the vast majority, of the value of Plaintiff's shares in the Company.

60.     The foregoing should entitle Plaintiff to rescission of their stock purchase in the Company and Plaintiff hereby pursues such relief.

- 14 -

61.    At a minimum, Plaintiff should be entitled to the difference between the price it paid and the true value of the common stock at the time of purchase or sale.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 (including rescission of the Plaintiff's common stock purchase), punitive damages, attorney's fees, interest and costs, and for such other relief as the Court deems appropriate.

## COUNT III

### CLAIM OF COMMON LAW FRAUD
### (AGAINST ALL DEFENDANTS)

62.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

63.    The Defendants misrepresented and concealed material facts as set forth above and with the intent of causing Plaintiff to rely upon their misrepresentations and concealments.

64.    The Defendants knowingly and deliberately failed to inform Plaintiff, and actively concealed from Plaintiff, the following material information regarding the Company: (a) misrepresenting the true financial information of the Company, (b) otherwise omitted/concealing the Company's rapidly deteriorating financial condition, (c) failing to disclose the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or extent that such activity may be necessary/desired less than a year after Plaintiff purchased its stock in the Company.

65.    Plaintiff was justified in relying upon the statements and communications the Defendants made to Plaintiff through the date of the Agreement and thereafter - particularly as the Defendants were in a position of superior knowledge, and ultimately owed a fiduciary duty, to Plaintiffs.

- 15 -

66.     Prior to January 9, 2017, Plaintiff had no knowledge, nor way of knowing, the accuracy of the information Defendants provided to Plaintiff beyond that which Defendants represented to them.

67.     Plaintiff has lost significant amounts of the money, and lost opportunities, as a proximate result of justifiable reliance upon the Defendants' misrepresentations and concealments.

68.     The Defendants committed their acts of fraud maliciously and in reckless disregard of the injuries they would cause Plaintiff to suffer, as a result of which Plaintiff is entitled to recover punitive damages and reasonable attorney's fees.

69.     The foregoing should entitle Plaintiff to rescission of their stock purchase in the Company and Plaintiff hereby pursues such relief.

70.     At a minimum, Plaintiff should be entitled to the difference between the price it paid and the true value of the common stock at the time of purchase or sale.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 (including rescission of the Plaintiff's common stock purchase), punitive damages, attorney's fees, interest and costs, and for such other relief as the Court deems appropriate.

<u>**COUNT IV**</u>

**NEGLIGENT MISREPRESENTATION**
**(AGAINST ALL DEFENDANTS)**

71.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

72.     The Defendants owed a duty to inform, and not omit, material information about the Company to Plaintiff including: (a) the true financial information of the Company, (b) the

- 16 -

Company's rapidly deteriorating financial condition, and (c) the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or the extent to which such activity may be necessary/desirable for the Company's well-being less than a year after Plaintiff purchased its stock in the Company.

73.     Defendants breached their duties to inform, and not omit from, Plaintiff material information provided to the owed a duty to inform, and not omit, material information about the Company to Plaintiff including: (a) the true financial information of the Company, (b) the Company's rapidly deteriorating financial condition, (c) the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or extent that such activity may be necessary/desired less than a year after Plaintiff purchased its stock in the Company.

74.     Defendants breached their duties to Plaintiff by not exercising reasonable care in obtaining and/or communicating information they knew was material to Plaintiff's decision to purchase its stock.

75.     Plaintiff was justified in relying upon the statements and communications the Defendants made to Plaintiff through the date of the Agreement and thereafter - particularly as the Defendants were in a position of superior knowledge, and ultimately owed a fiduciary duty, to Plaintiff.

76.     Prior to January 9, 2017, Plaintiff had no knowledge, nor way of knowing, the accuracy of the information Defendants provided to Plaintiff beyond that which Defendants represented to them.

77.     Plaintiff has lost significant amounts of the money, and lost opportunities, as a proximate result of justifiable reliance upon the Defendants' misrepresentations and concealments.

220808331

78.     The foregoing should entitle Plaintiff to rescission of their stock purchase in the Company and Plaintiff hereby pursues such relief.

79.     At a minimum, Plaintiff should be entitled to the difference between the price it paid and the true value of the common stock at the time of purchase or sale.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 (including rescission of the Plaintiff's common stock purchase), punitive damages, attorney's fees, interest and costs, and for such other relief as the Court deems appropriate.

<u>**COUNT V**</u>

**CLAIM OF CIVIL CONSPIRACY**
**(AGAINST ALL DEFENDANTS)**

80.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

81.     The Individual Defendants, individually and as agents of the Company, combined to engage in an improper scheme designed to induce Plaintiff to purchase shares of the Company.

82.     The Individual Defendants, individually and as agents of the Company, acted overtly, conspired, agreed and engaged in a combination among them, acting with a common purpose to commit the improper acts as alleged herein, through the unlawful means and for the unlawful purposes alleged herein.

83.     The Individual Defendants, individually and as agents of the Company, acted intentionally, willfully, maliciously and with reckless indifference to the harm they would – and did – cause to Plaintiff.  Accordingly, the Defendants' conduct was outrageous.

- 18 -

84.     As a result of Defendants' unlawful civil conspiracy, Plaintiff has suffered damages in the form of its investment in the Company.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 (including rescission of the Plaintiff's common stock purchase), punitive damages, attorney's fees, interest and costs, and for such other relief as the Court deems appropriate.

## COUNT V
## BREACH OF FIDUCIARY DUTY
## (AGAINST THE INDIVIDUAL DEFENDANTS)

85.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

86.     By virtue of their positions as members of the Company's Board of Directors and/or officers of the Company, the Individual Defendants owed fiduciary duties to Plaintiff (including, without limitation, due care, good faith, loyalty and honesty), particularly after the sale of the Company's stock to Plaintiff.

87.     Given the above, the Individual Defendants also owed fiduciary duties to Plaintiff to fully and fairly provide all material information to Plaintiff regarding the Company within their control.

88.     The Individual Defendants breached those duties given their above actions and omissions.

89.     The Individual Defendants acted contrary to their fiduciary duties to Plaintiff when they provided materially inaccurate and/or incomplete financial information to Plaintiff as set forth above.

220808331

90.     Notably, the Individual Defendants breached their duties for their own personal benefit.

91.     Since the Individual Defendants acted improperly to enrich themselves at the expense of Plaintiff, the Individual Defendants have the burden to prove the entire fairness of their transactions, actions and omissions.

92.     Since the Individual Defendants, upon information and belief, controlled the Company at all relevant times, the Individual Defendants either had a material conflict of interest or were not independent of others who had material conflicts of interest.  Accordingly, the Individual Defendants have the burden to prove the entire fairness of their actions and omissions.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against the Individual Defendants for an amount in excess of $75,000, punitive damages, attorney's fees and costs, and for such other relief as the Court deems appropriate.

### COUNT VI
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (AGAINST EBTH)

93.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

94.     By virtue of their positions as members of the Company's Board, and/or officers of the Company, the Individual Defendants owed fiduciary duties of care and loyalty (including good faith) to Plaintiff pursuant to Delaware law as set forth above.

95.     The Individual Defendants acted contrary to their fiduciary duties to Plaintiff as set forth herein.

- 20 -

96. The Company, through the Individual Defendants acting on behalf of the Company and/or as agents of the Company, knowingly aided and abetted and or directed the Individual Defendants to breach their fiduciary duties to Plaintiff.

97. Plaintiffs have suffered monetary damages as the result of the Company's aiding and abetting the Individual Defendants' breach of fiduciary duty to Plaintiffs for which the Company is responsible.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against EBTH Inc. for an amount in excess of $75,000, punitive damages, attorney's fees and costs, and for such other relief as the Court deems appropriate.

**COUNT VII**
**BREACH OF CONTRACT**
**(PLAINTIFF V. JONATHAN C. NIELSEN AND MICHAEL J. REYNOLDS)**

98. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

99. Pursuant to the terms of the Agreement, Jon Nielsen and Reynolds made various representations and warranties without which Plaintiff would not have entered into the Agreement. These included, without limitation, that "[t]o each [of their] knowledge, since October 19, 2016, there has not been a material adverse effect on the business of the Company." *See* Exhibit A (Agreement).

100. Plaintiff performed all of the material terms of the Agreement, including payment of the full purchase price required.

101. Jon Nielsen and Reynolds breached the terms of the Agreement by failing to disclose to Plaintiff various material adverse effects on the business of the Company resulting in the actual financial losses in 2016 and resulting actions undertaken thereafter as set forth above.

- 21 -

102.    Plaintiff has suffered monetary damages as the result of the foregoing breaches of the Agreement.

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against Jonathan C. Nielsen and Michael Reynolds for an amount in excess of $75,000, interest and costs, and for such other relief as the Court deems appropriate.

**COUNT VI**
**UNJUST ENRICHMENT - IN THE ALTERANTIVE**
**(AGAINST ALL DEFENDANTS)**

103.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

104.    In the alternative to the above counts, and in the event that this Court were to determine that no contract or contracts exist between Plaintiff and any of the Defendants, Plaintiff brings a cause of action of quantum meruit / unjust enrichment against all Defendants.

105.    Plaintiff's contributions to the Company, most notably Plaintiff's contribution of substantial funds, have enriched the Defendants.

106.    Due to Defendants' actions and omissions described above, Plaintiff paid a substantial amount of money for the purchase of its common stock in the Company.

107.    Defendants have retained such benefits conferred by Plaintiff without justification.

108.    Should any of the above claims not provide an adequate remedy at law, then Plaintiff is entitled to relief pursuant to this claim.

109.    It would be inequitable and unconscionable for Defendants to retain the benefit of the funds Plaintiff provided to them.

220808331

**WHEREFORE**, Plaintiff, Light EBTH LLC, respectively requests that this Court enter judgment against Jonathan C. Nielsen and Michael Reynolds for an amount in excess of $75,000, interest and costs, and for such other relief as the Court deems appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

*/s/ Anthony A. Agosta*
_____

Anthony A. Agosta, Esq.
500 Woodward Avenue
Suite 3500
Detroit, MI  48226
(313) 965-8300

*Pro hac vice forthcoming:*

Peter Blume, Esq.
Vincent M. Roskovensky, Esq.
CLARK HILL PLC
One Oxford Centre
301 Grant St., 14th Floor
Pittsburgh, PA 15219
(412) 394-7711

*Counsel for Plaintiff,*
*Light EBTH LLC*

- 23 -

220808331