**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LIGHT EBTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-00011-TSB |
| | ) | |
| v. | ) | |
| | ) | Hon. Timothy S. Black |
| EBTH INC., ANDREW C. NIELSEN, | ) | |
| JONATHAN C. NIELSEN and MICHAEL J. | ) | |
| REYNOLDS, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS OF DEFENDANTS ANDREW C. NIELSEN,**
**JONATHAN C. NIELSEN AND MICHAEL J. REYNOLDS**

Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds, by and through their undersigned counsel, hereby respectfully move this Court for entry of an order dismissing the claims asserted against them, in their entirety and with prejudice, pursuant to the relevant provisions of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, *et seq.*, and Federal Rules of Civil Procedure 9(b) and 12(b)(6).  The grounds for this motion are more fully set forth in the attached memorandum of law.

Dated: April 11, 2019

Respectfully submitted,

/s/ Joseph C. Weinstein
Joseph C. Weinstein
joe.weinstein@squirepb.com
Sean L. McGrane
sean.mcgrane@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

Scott A. Kane
scott.kane@squirepb.com
Jennifer L. Dollard-Smith
jennifer.dollard-smith@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Tel: (513) 361 1200
Fax: (513) 361 1201

*Attorneys for Defendants Andrew C. Nielsen,*
*Jonathan C. Nielsen and Michael J. Reynolds*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

LIGHT EBTH, LLC, )
)
        Plaintiff, )
)
     v. )
)
EBTH INC., ANDREW C. NIELSEN, )
JONATHAN C. NIELSEN and MICHAEL J. )
REYNOLDS, )
)
        Defendants. )

Case No. 19-cv-00011-TSB

Hon. Timothy S. Black

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS OF DEFENDANTS ANDREW C. NIELSEN,
## JONATHAN C. NIELSEN AND MICHAEL J. REYNOLDS

Joseph C. Weinstein
joe.weinstein@squirepb.com
Sean L. McGrane
sean.mcgrane@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

Scott A. Kane
scott.kane@squirepb.com
Jennifer L. Dollard-Smith
jennifer.dollard-smith@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Tel: (513) 361 1200
Fax: (513) 361 1201

*Attorneys for Defendants Andrew C. Nielsen,*
*Jonathan C. Nielsen and Michael J. Reynolds*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

LAW & ARGUMENT ....................................................................................................... 4

I.   PLAINTIFF FAILS TO SATISFY THE HEIGHTENED PLEADING
     STANDARDS OF THE PSLRA. ............................................................................ 4

     A.   Light does not adequately allege falsity. ................................................... 4

     B.   Light fails to plead scienter with particularity. ...................................... 11

     C.   Light fails to adequately plead loss causation. ....................................... 14

II.  LIGHT FAILS TO STATE A CLAIM UNDER THE DELAWARE
     SECURITIES ACT. ............................................................................................. 15

III. LIGHT'S REMAINING COMMON LAW CLAIMS FAIL AS A MATTER OF
     LAW. ..................................................................................................................... 16

     A.   Light fails to state a claim for fraud under Rules 9(b) and 12(b)(6). ................. 16

     B.   Light fails to state a claim for negligent misrepresentation. ................ 17

     C.   Light fails to state a claim for civil conspiracy. .................................... 18

     D.   Light fails to state a claim for breach of fiduciary duty. ...................... 18

     E.   Light's breach of contract claim fails. .................................................... 19

     F.   Light fails to state a claim for unjust enrichment. ................................ 20

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Antonelli College*,
304 F. Supp. 3d 656 (S.D. Ohio 2018) (Black, J.) ................................................................ 17

*Albert Fadem Trust v. Am. Elec. Power Co.*,
334 F. Supp. 2d 985 (S.D. Ohio Sept. 10, 2004) ............................................................ 5, 12

*Andersons, Inc. v. Consol, Inc.*,
348 F.3d 496 (6th Cir. 2003) ................................................................................................ 17

*In re Bank of Am. AIG Disclosures Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013) .................................................................................. 10

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ................................................................................................................ 5

*Bihn v. Fifth Third Mortg. Co.*,
980 F. Supp. 2d 892 (S.D. Ohio 2013) ................................................................................ 20

*Darby v. Century Bus. Servs.*,
96 Fed. Appx. 277 (6th Cir. 2004) .......................................................................................... 4

*Davisson v. Ford Motor Co.*,
2014 U.S. Dist. LEXIS 122673 (S.D. Ohio Sept. 3, 2014) .................................................. 16

*Doshi v. Gen Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) ........................................................................................ 11, 12

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................................. 15

*Eastham v. Appalachia*,
2013 U.S. Dist. LEXIS 102846 (S.D. Ohio July 23, 2013) .................................................. 17

*FdG Logistics LLC v. A&R Logistics Holdings, Inc.*,
131 A.3d 842 (Del. Ch. 2016) .............................................................................................. 16

*Forman v. Meridian Bioscience, Inc.*,
2019 U.S. Dist. LEXIS 23120 (S.D. Ohio Feb. 13, 2019) ................................................ 7, 10

*Hoover v. Langstaon Equip. Assocs.*,
958 F.2d 742 (6th Cir. 1992) .................................................................................................. 6

*In re Huntington Bancshares Secs. Litig.*,
    674 F. Supp. 2d 951 (S.D. Ohio Dec. 4, 2009) ................................................................. 11

*JAC Holding Ents., Inc. v. Atrium Capital Partners, LLC*,
    997 F. Supp. 2d 710 (E.D. Mich. 2014) ................................................................. 16

*Jiaxi Hu v. Chan*,
    2016 U.S. Dist. LEXIS 107609 (S.D. Ohio. Aug. 15, 2016) ................................................................. 6

*JSMS Rural LP v. GMG Capital Partners, III, LP*,
    2006 U.S. Dist. LEXIS 54104 (S.D.N.Y. Aug. 4, 2006) ................................................................. 15

*Kober v. Harrington*,
    2018 U.S. Dist. LEXIS 110409 (N.D. Ohio July 2, 2018) ................................................................. 19

*La. Sch. Empls. Ret. Sys. v. Ernst & Young, LLP*,
    622 F.3d 471 (6th Cir. 2010) ................................................................. 4

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ................................................................. 14

*Ley v. Visteon Corp.*,
    540 F.3d 376 (6th Cir. 2008) ................................................................. 4

*Local 295/Local 851 IBT Emplr. Grp. Pension Trust & Welfare Fund v. Fifth Third Bank*,
    732 F. Supp. 2d 689 (S.D. Ohio Aug. 10, 2010) ................................................................. 9

*Macurdy v. Sikov & Love*, P.A.,
    894 F.2d 818 (6th Cir. 1990) ................................................................. 16

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ................................................................. 19

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ................................................................. 18

*Murphy v. Sofamor Danek Grp.*,
    123 F.3d 394 (6th Cir. 1996) ................................................................. 5

*Nicholson v. N-Viro Int'l Corp.*,
    2007 U.S. Dist. LEXIS 76522 (N.D. Ohio Oct. 12, 2007) ................................................................. 9, 10

*In re PEC Solutions, Inc. Sec. Litig.*,
    2004 U.S. Dist. LEXIS 29873 (E.D. Va. May 25, 2004) ................................................................. 13

*Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*,
    614 Fed. Appx. 237 (6th Cir. 2015) ................................................................. 7

*Raskin v. Birmingham Steel Corp.*,
   1990 Del. Ch. LEXIS 194 (Dec. 4, 1990) ............................................................ 19

*Ricker v. Zoo Entm't, Inc.*,
   2012 U.S. Dist. LEXIS 105418 (S.D. Ohio July 26, 2012) .................................... 4

*Sanders v. Devine*,
   1997 Del. Ch. LEXIS 131 (Del. Ch. Sep. 24, 1997) ............................................. 19

*In re Satyam Computer Servs. Sec. Litig.*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013) ................................................................. 14

*Shoemaker v. Murdock*,
   2019 U.S. Dist. LEXIS 13662 (S.D. Ohio Jan. 29, 2019) ..................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................. 4

*Valente v. University of Dayton*,
   689 F. Supp. 2d 910 (S.D. Ohio 2010) ................................................................ 18

*Van Roy v. Sakhr Software Co.*,
   2014 U.S. Dist. LEXIS 92068 (D. Del. July 8, 2014) ........................................... 16

*Wuliger v. Mfrs. Life Ins. Co. (USA)*,
   567 F.3d 787 (6th Cir. 2009) .............................................................................. 20

Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds (the "Individual Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the claims asserted against them, in their entirety and with prejudice.

## PRELIMINARY STATEMENT

The Plaintiff in this case, Light EBTH, LLC ("Light"), is an "accredited investor" as defined by the Securities and Exchange Commission's governing regulations. Accredited investors are a class of high-worth, sophisticated investors who are permitted to purchase certain securities that involve "unique risks" and thus cannot be bought by the general public.

On January 9, 2017, Light and other accredited investors participated in a private securities transaction in which they purchased shares in Defendant EBTH, Inc. ("EBTH"), a Cincinnati-based start-up company that specializes in online estate sales. Now—after the value of its shares declined over the course of two years—Light has commenced this lawsuit. In its complaint, Light attempts to blame its losses not on the normal risks that sophisticated investors face when buying stock in start-up companies, but instead on alleged securities fraud that supposedly happened almost two years prior.

This happens far too frequently. A sophisticated investor loses money in the ordinary course of business and then reflexively accuses other parties of securities fraud in an attempt to recoup some or all of its losses. These are strategic, opportunistic lawsuits, and Congress specifically sought to weed them out through the Private Securities Litigation Reform Act (the "PSLRA"), which imposes heightened pleading requirements on securities fraud plaintiffs. Light's implausible, "fraud-by-hindsight" allegations fail to meet these heightened requirements, and its securities fraud claims should accordingly be dismissed. Similarly, Light's common law fraud and other state law claims should be dismissed under Rules 9(b) and/or 12(b)(6).

## FACTUAL BACKGROUND

Defendant EBTH is a Delaware corporation based in Cincinnati, Ohio. (Compl. at ¶ 3.)
EBTH—an acronym for "Everything But The House"—is "the largest e-commerce marketplace
for estate sales" and other online sales of personal, household property. (*Id.*)

Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds all reside
in Cincinnati. (*Id.* at ¶¶ 5, 7, 9.) Andrew Nielsen is alleged to have served as EBTH's CEO
between May 2012 and March 2018. (*Id.* at ¶ 5.) Jonathan Nielsen is alleged to have served as
EBTH's Chief Revenue Officer from May 2012 through March 2017, and as its Chief Business
Officer from March 2017 through May 2018. (*Id.* at ¶ 7.) Mr. Reynolds is alleged to have
served as EBTH's Chief Financial Officer and/or its Chief Operating Officer between May 2012
and March 2018. (*Id.* at ¶ 9.) Each of the Individual Defendants also is alleged to have served
on EBTH's board during the relevant time period. (*Id.* at ¶¶ 5-9.)

Plaintiff Light is a Delaware limited liability company managed by a Connecticut
financial professional, Mark Sullivan. (*Id.* at ¶ 2; ECF No. 1-1 at p. 20.) Light self-identifies as
an "accredited investor" under Securities and Exchange Commission ("SEC") regulations. (ECF
No. 1-1 at ¶ 5(e).) As described by the SEC, accredited investors are "financially sophisticated"
and "able to fend for themselves." Unlike members of the general public, accredited investors
are allowed to participate in high risk securities offerings that involve "unique risks."[1]

In early 2017, five individuals—including each of the Individual Defendants—agreed to
sell a certain number of EBTH shares to ten different accredited investors. (ECF No. 1-1
(Common Stock Purchase Agreement).) Light purchased (i) 328,581 EBTH shares from Mr.

---

[1] *See* SEC UPDATED INVESTOR BULLETIN: ACCREDITED INVESTORS, *available at*
https://www.investor.gov/additional-resources/news-alerts/alerts-bulletins/updated-investor-
bulletin-accredited-investors (last accessed April 11, 2019).

Reynolds, for $801,134.37, and (ii) 40,549 EBTH shares from Jonathan Nielsen, for $98,865.12. (ECF No. 1-1 at p. 21.)  Light did not purchase any shares from Andrew Nielsen.  (*Id.*)  The remaining nine buyers collectively purchased 2.56 million shares of EBTH for approximately $6.24 million.  (*Id.*)  None of those buyers has sued the Individual Defendants.

The stock sale closed on or around January 9, 2017.  (Compl. at ¶ 28.)  In the preceding weeks, Andrew Nielsen provided Light and other purchasers with regular, comprehensive updates regarding EBTH's past financial performance and future projections.  (*Id.* at ¶¶ 18-26.) Light now alleges that certain material information was not provided to it prior to closing.  (*Id.*) Light acknowledges, however, that virtually all of the information that was supposedly not provided to it before closing was provided to it one day after closing, on January 10, 2017, as part of an updated packet of financial information distributed to purchasers.  (*Id.* at ¶¶ 29-37.)

Upon receipt of this information one day after closing—information that Light now claims showed "the true (and severely deteriorating) financial condition" of EBTH (*Id.* at ¶ 1)— what did Light do?  Apparently, nothing.  It did not seek to rescind the stock purchase, which had closed only 24 hours before, on January 9, 2017.  It did not demand a refund of some or all of the purchase price.  It did not bring a lawsuit, or accuse the Individual Defendants or EBTH of fraud.  Instead, Light waited two years to sue, after the value of its shares apparently declined in a "down-round" of financing that happened in 2018.[2]

---

[2] A "down round" is a financing in which the valuation of the issuing company at the time of the issuance is <u>less</u> than the valuation of the issuing company at the time of its most recent prior issuance.  For example, if Company A is valued at $100 million at the time it issues shares on January 1, 2019, and is valued at $50 million at the time it issues shares on April 11, 2019, the second issuance is a "down round."

## <u>LAW & ARGUMENT</u>

### THE MOTION SHOULD BE GRANTED

I.     **Plaintiff fails to satisfy the heightened pleading standards of the PSLRA.**

Count I of the Complaint is for violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Compl. at ¶¶ 44-52. To state a claim, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury [loss causation]." *Darby v. Century Bus. Servs.*, 96 Fed. Appx. 277, 280-81 (6th Cir. 2004). These claims are subject to the PSLRA's heightened pleading standards, which require a securities fraud plaintiff to plead <u>particularized facts</u> showing both (i) the falsity of the alleged statements and (ii) that the defendant acted with "scienter, *i.e.,* the defendant's intention to deceive, manipulate or defraud." *Ley v. Visteon Corp.*, 540 F.3d 376, 381 (6th Cir. 2008); *see also Ricker v. Zoo Entm't, Inc.*, 2012 U.S. Dist. LEXIS 105418, *7-8 (S.D. Ohio July 26, 2012) ("[W]hen a plaintiff pleads securities fraud, the complaint is subjected to heightened scrutiny."). The PSLRA was enacted to curb opportunistic securities fraud suits that "can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

In addition to the PSLRA, Light's claims for securities fraud are also subject to Federal Rule of Civil Procedure 9(b), which require the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *La. Sch. Empls. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010).

   A.     **Light does not adequately allege falsity.**

In order to satisfy the first element of a securities fraud claim, Light must plead

particularized facts showing falsity by specifically identifying either (1) an affirmative representation that is materially false or misleading or (2) an omission of material fact that the defendant was under a duty to disclose. *Murphy v. Sofamor Danek Grp.*, 123 F.3d 394, 400 (6th Cir. 1996). Light must also "specify the reason or reasons" the representation or omission is false and misleading. 15 U.S.C. § 78u-4(b)(1)(B).

1. **Defendants Reynolds and Jonathan Nielsen are not alleged to have made any representations to Light.**

The thrust of Light's claims is that the financial information it received between December 3, 2016 and January 3, 2017, was misleading. But neither Defendant Reynolds nor Jonathan Nielsen is alleged to have communicated any of this financial information to Light; they were silent as to Light. *See* Compl. at ¶¶ 18-26.

As the United States Supreme Court has explained, "silence" cannot be "misleading under Rule 10b-5" unless the defendant had an affirmative duty to disclose information to the plaintiff. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *see also Murphy*, 123 F.3d at 400 ("Before liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure."). Affirmative duties of disclosure under the securities laws are narrow and arise only where (i) the duty is created by statute or SEC rule; (ii) the defendant is bound to disclose the fact that he or she is engaging in insider trading; or (iii) the undisclosed information must be disclosed in order to render a prior affirmative statement by the defendant not materially false or misleading. *Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1004 (S.D. Ohio Sept. 10, 2004).

Here, Light has not alleged that Mr. Reynolds or Jonathan Nielsen owed it any affirmative duty of disclosure—and, as a matter of law, they did not. And because they are not alleged to have made any affirmative statements whatsoever to Light, they were under no duty to

disclose information to render any such statements not false or misleading. Accordingly, the securities fraud claims against them should be dismissed, in full, for failure to allege any material misstatements or omissions. *See Jiaxi Hu v. Chan*, 2016 U.S. Dist. LEXIS 107609, *15-16 (S.D. Ohio. Aug. 15, 2016) (dismissing securities fraud claims where complaint failed to identify "any fraudulent statements made" by certain defendants).[3]

2.      **Light does not sufficiently allege falsity as to Andrew Nielsen.**

In the weeks preceding the stock sale, Defendant Andrew Nielsen regularly provided financial information regarding EBTH to Light, typically in response to specific requests from Light. *See* Compl. at ¶¶ 19, 24. Light now alleges that Andrew Nielsen made certain misstatements or omissions in these pre-closing communications. None, however, is actionable under the PSLRA—most were "forward-looking" projections that are insulated from liability under the PSLRA, or are otherwise legally insufficient.

a.      **The December 3, 2016 "pitch deck"**

Light alleges that it received a "pitch deck" containing certain financial projections from the Individual Defendants on December 3, 2016. Compl. at ¶ 18. As stated above, however, any statements in the "pitch deck" are not actionable because they are attributed generically to the "Individual Defendants," and not to any specific individual. *See* n. 3.

Even assuming that the "pitch deck" could be attributed to Andrew Nielsen, it cannot give rise to liability under the PSLRA. The PSLRA contains a safe harbor provision that

---

[3] Light alleges at Paragraph 18 that it received a pitch deck from "the Individual Defendants," without specifying which defendants sent the pitch deck. The Sixth Circuit has held that this type of "group pleading" is insufficient to state a claim for securities fraud. *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992) (dismissing claims where complaint "alleges misrepresentations without sufficiently identifying which defendants made them"); *see also Jiaxi*, 2016 U.S. Dist. LEXIS 107609, at *16 ("The complaint's generalized allegations as to the . . . identity of the speaker . . . are insufficient to meet the requirements of Rule 9(b).").

insulates forward-looking statements from liability under the securities laws. 15 U.S.C. § 78u-5(i)(1). As the Sixth Circuit has held, this safe harbor encompasses forward-looking "projections of revenues, income, and earnings-per-share; statements concerning a company's future economic performance; and statements about the assumptions underlying forward-looking statements." *Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 Fed. Appx. 237, 242 (6th Cir. 2015). Such forward-looking statements are only actionable under the PSLRA if the plaintiff pleads particularized facts showing (i) that the projections were not identified as such, or (ii) the defendant had actual contemporaneous knowledge that the projections were false. *Id.*

The only portion of the "pitch deck" that Light excerpts in its complaint are future projections for the final months of 2016 and for fiscal year 2017. Compl. at ¶ 18. The projections are clearly identified as such ("2016 Projected" and "2017 Projected"), and Light does not allege particularized facts showing that Andrew Nielsen (or any "Individual Defendant") had actual contemporaneous knowledge that the projections were false as of December 3, 2016 (the date the pitch deck was sent). *See* Compl. at ¶ 18. Accordingly, the "pitch deck" cannot serve as the basis for liability under the securities laws. *See, e.g., Forman v. Meridian Bioscience, Inc.*, 2019 U.S. Dist. LEXIS 23120, at *29-30 (S.D. Ohio Feb. 13, 2019) (claims based on "projections for fiscal year 2017" were dismissed under safe harbor).

b. **December 10, 2016 email**

Light next points to a December 10, 2016 email from Andrew Nielsen that contained EBTH's 2015 Audited Financial Statements, its 2016 financials "through 10/31/16," and an interactive "growth model" (in the form of a spreadsheet) that could be manipulated by the recipient to run various projections for EBTH's future performance. Compl. at ¶ 19. Light does not allege that the 2015 financial statements or the actual financials through October 2016 were false or misleading in any way, and thus they cannot serve as the basis for liability.

- 7 -

Light does allege that the projections within the interactive "growth model" were somehow false or misleading because they "represented" a future, projected "net income" loss of "no more than $19,430,571." Compl. at ¶ 21. It is not clear how Light derives this figure, as it is not quoted in Andrew Nielsen's email, and appears to be the result of interactive modeling work done by Light itself. In any event, any projections within the interactive growth model also fall within the PSLRA's safe harbor. The projections and growth model were clearly identified as such, *id.* at ¶ 19 (referring to "future projections" and "projections in model"), and Andrew Nielsen expressly cautioned that the projections were subject to further adjustment: "We're working through final budgeting for 2017 right now. As such, that will adjust some of our future projections." *Id.* at ¶ 19. And, Light has not alleged that Andrew Nielsen knew the projections were false or misleading as of December 10, 2017. Thus, these forward-looking projections in the growth model (and any other statements in the December 10 email) are protected from liability under the securities laws.

### c. December 19 email and subsequent oral conversation

Light next points to a December 19, 2016 email from Andrew Nielsen, and a subsequent "oral discussion." Compl. at ¶¶ 22-23. These communications also fall within the safe harbor.

In the December 19, 2016 email, Andrew Nielsen wrote that EBTH was "currently working through 2017 planning and believe[s] that the top line <u>revenue projection</u> will likely be in the $130-140MM range." *Id.* at ¶ 22 (emphasis added). He stressed that the projections were still being adjusted and that the final budget for 2017 would not be approved until the "next board meeting in early 2017." *Id.* During the subsequent "oral discussion," Light alleges that Andrew Nielsen discussed only forward-looking information—"adjusted Company financial information for 2017 . . . including the model revenue spreadsheet" that Andrew Nielsen had previously provided to forecast 2017 growth. *Id.* at ¶ 23. Because all of these statements were

forward-looking, and because Light pleads no particularized facts to show that Andrew Nielsen actually believed the projections to be false, these statements all fall within the safe harbor. *Local 295/Local 851 IBT Emplr. Grp. Pension Trust & Welfare Fund v. Fifth Third Bank*, 732 F. Supp. 2d 689 (S.D. Ohio Aug. 10, 2010).

d.     **January 3 email**

Finally, Light alleges that a January 3, 2017 email from Andrew Nielsen, and a spreadsheet attached to that email, were misleading. Light does not allege that the email or spreadsheet contained any affirmative misrepresentations. Instead, Light alleges that the January 3 email and spreadsheet were misleading by omission because they did not include certain financial information that was provided to Plaintiff one week later, on January 10, and thereafter. The financial information sent on January 10 is alleged to have included (i) "September income loss information," (ii) November and December "gross auction revenues," (iii) "full-year revenues" for 2016, and (iv) reference to an October 2016 "reforecast." Compl. at ¶¶ 29-32.

Courts have made clear that a plaintiff cannot state a claim for securities fraud simply by alleging that material information was omitted from a communication. Rather, to adequately plead falsity, the plaintiff must <u>both</u> (i) identify <u>specific affirmative statements</u> that were rendered false or misleading by the omitted material, and (ii) "<u>specify the reason or reasons</u>" why the affirmative statements were rendered false or misleading by omission. 15 U.S.C. § 78u-4(b)(1)(B); *see also, e.g., Nicholson v. N-Viro Int'l Corp.*, 2007 U.S. Dist. LEXIS 76522, at *23-24 (N.D. Ohio Oct. 12, 2007) ("To be actionable under Rule 10(b)(5), the alleged material omissions must render an existing public statement false or misleading.").

Light does neither with respect to the January 3 email (or any other alleged misrepresentations). Light does not identify a single specific statement in the January 3 email, or the accompanying spreadsheet, that was rendered false or misleading by virtue of the "omission"

- 9 -

of the financial information. And Light does not "specify the reason or reasons" why any such statements were rendered false or misleading by omission. Instead, Plaintiff generally alleges that certain "material information" was omitted from the January 3 email and the spreadsheet, but general allegations are not enough under the PSLRA. *Nicholson*, 2007 U.S. Dist. LEXIS 76522, at *25 (dismissing securities fraud claim for failure to "satisfy the strict pleading requirements of the PSLRA" where plaintiff failed to sufficiently allege "that omission of [] information rendered any specific statements" by the defendants false or misleading); *see also In re Bank of Am. AIG Disclosures Sec. Litig.*, 980 F. Supp. 2d 564, 575 (S.D.N.Y. 2013) ("[Defendants] are not required to disclose a fact merely because the reasonable investor would very much like to know that fact."). [4] Accordingly, Plaintiff has failed to plead falsity with respect to the January 3 email and accompanying spreadsheet.

### e. July 24 Letter and the "Down Round"

While the majority of the alleged misstatements and omissions in the complaint deal with information provided prior to closing, Light also purports to identify a single alleged misstatement or omission that occurred months after closing. Specifically, Light points to a July 24, 2017 letter from Andrew Nielsen that stated the following, and alleges that it was misleading because it omitted any reference to the "down round" that would not occur until eight months later, in the spring of 2018: "We've made strong progress thus far in 2017, and I believe we've

---

[4] Independently, Light's claim should be dismissed because it fails to sufficiently allege that any of the "omitted" information was material. Information is material only if there is a "substantial likelihood" that "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Forman*, 2019 U.S. Dist. LEXIS 23120, at *25-26. While Light alleges in conclusory fashion that the "omitted" information was material, Light fails to show how disclosure would have significantly altered the total mix of information available before closing. Indeed, the fact that Light waited so long to complain after learning of the allegedly "material" information suggests that the information was not material.

created great momentum as we head into the second half of the year.  Our team is dedicated to driving a banner year for EBTH, and we truly appreciate your ongoing support."  Compl. at ¶ 40.  As with the January 3 email and spreadsheet, Light never (i) alleges any affirmative duty to disclose the "down round," nor (ii) specifies any particular statement in this July 24 letter that was rendered false or misleading because it omitted any reference to the "down round" in March 2018 (eight months after the letter), or (iii) specifies the reason or reasons why any such statement was false or misleading by omission.  Compl. at ¶¶ 40-41.  Thus, again, Light has failed to plead falsity with the particularity required by the PSLRA.

       B.     **Light fails to plead scienter with particularity.**

Even assuming that Light has pleaded falsity with particularity (and it has not), its claims still should be dismissed for the separate and independent reason that it fails to plead scienter with particularity.  "While pleading claims for fraud always required a higher level of particularity, the PSLRA requires an even higher standard for pleading scienter in a securities-fraud case."  *In re Huntington Bancshares Secs. Litig.*, 674 F. Supp. 2d 951, 967 (S.D. Ohio Dec. 4, 2009).  Specifically, the PSLRA "requires that a plaintiff 'shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind' in violating the securities laws."  *Doshi v. Gen Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (emphasis added).  The requisite "strong inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent."  *Id.*  A plaintiff can only plead this "strong inference" by alleging particularized facts showing that each defendant acted with either (i) a "knowing and deliberate intent to manipulate, deceive, or defraud," or (ii) recklessness—that is, "highly unreasonable conduct which is an extreme departure from standards of ordinary care."  *Doshi*, 823 F.3d at 1032.  Courts in the Sixth Circuit consider a

- 11 -

number of factors when analyzing scienter, including (i) the divergence between internal reports and external statements on the same subject, (ii) disregard of the most current factual information before making statements, and (iii) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication. *Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1008 (S.D. Ohio 2004).

      1.     **Light fails to plead scienter with respect to the financial information provided to it before closing.**

In order to plead the requisite "strong inference" of scienter, Light must plead particularized facts showing that <u>each</u> Individual Defendant made materially false representations with a "knowing and deliberate intent" to defraud, or with recklessness as to whether the information was true or false. *Doshi*, 823 F.3d at 1032. As stated above, neither Defendant Reynolds nor Jonathan Nielsen is alleged to have made any statements to Light in connection with the sale of EBTH stock. Because they did not make any statements, it follows that they could not have made any statements with scienter.

With respect to Andrew Nielsen, Light's principal allegation is that the "negative" financial information it received on January 10 and thereafter should have been disclosed earlier, and that Andrew Nielsen knowingly or recklessly withheld this information from Light. The fallacy with this allegation is clear: It simply speculates (without factual support) that the information that was provided on January 10, after closing, existed and/or otherwise could have been provided by Andrew Nielsen when he made the alleged misrepresentations between December 3, 2016 and January 3, 2017. However, the information that was allegedly provided on January 10 and thereafter dealt primarily with 2016 year-end financial information. *See* Compl. at ¶ 31(ii) (alleging omission of "December income loss information"); *id.* at ¶ 31(iv) (alleging omission of "2016 year to date actual income loss of $29.25 million"); *id.* at ¶ 38

(discussing "December 2016 and 2016 full year data").  Light does not allege particularized, plausible facts to show that any of this final, 2016 year-end information existed and could have been provided to Light prior to closing on January 9, and thus Light has not pleaded scienter. *See, e.g., In re PEC Solutions, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 29873, at \*16-17 (E.D. Va. May 25, 2004) ("Defendants cannot be held liable based upon a statement in October when there is no proof that the fact existed until December.").

Light's theory of scienter appears to be based exclusively on the allegation that certain of the information it received on January 10, 2017 was included in a spreadsheet that was physically created on December 23, 2016.  Compl. at ¶ 35.  Light then infers that, because the spreadsheet was created on December 23, 2016, all of the information in the spreadsheet as of January 10, 2017, must also have been available to Andrew Nielsen on December 23, 2016, and should have been disclosed at that earlier date.  This theory is facially implausible and fails for at least two reasons.

First, even accepting the theory on its face, it fails to show scienter for any alleged misstatements or omissions preceding December 23, 2016, which is when the bulk of the purported misstatements are alleged to have occurred.  *See* Compl. at ¶¶ 18-23 (alleging misstatements on December 3, 10, 19, and 20, 2016).  Second, even for the statements made to Light by Andrew Nielsen on January 3, 2017, the theory is still implausible.  Light pleads no particularized facts to show how year-end financial information for 2016 could have or would have been included in the spreadsheet on December 23, 2016—before the year had even ended.  The theory makes no sense as a temporal matter.  The more cogent, common sense explanation is that the spreadsheet was created on December 23, 2016, and updated with new financial information later.  It was sent to Light on January 3, 2017, with then-existing financial

information, and then sent again to Light on January 10, 2017, with newly-updated financial information.  Because this non-fraudulent inference is more cogent and compelling than any theory of fraud that can be drawn from the complaint, the claims should be dismissed for failure to plead scienter.  *See, e.g., In re Satyam Computer Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 469 (S.D.N.Y. 2013) (securities fraud claim should be dismissed where non-fraudulent inference is more cogent and compelling than fraudulent inference).[5]

### 2. **Light has not alleged scienter with respect to the "down round."**

Light similarly pleads no particularized facts to show that Andrew Nielsen knowingly or recklessly omitted any reference to the "down round" from his July 24, 2017 letter.  Indeed, Light pleads no particularized facts to show that Andrew Nielsen was even aware in July 2017 that EBTH would participate in a "down round" of financing eight months later.  Accordingly, Light has failed to plead scienter with respect to this alleged misstatement.

### C. **Light fails to adequately plead loss causation.**

A securities fraud plaintiff must separately plead loss causation—"that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  Courts have described the loss causation requirement as akin to proximate cause—the plaintiff must show that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).

---

[5] Light alleges that the updated spreadsheet was sent to it on January 10, 2017 by "the Company's then CFO."  Compl. at ¶ 30.  That CFO himself **purchased 102,536 shares of EBTH, for $249,999**, at the same time and as part of the same transaction as Light.  ECF No. 1-1 at Schedule A.  This renders any inference of fraud not cogent.  It is implausible to believe that the Company's CFO—who is alleged to have had access to the "fraudulent" information transmitted to Light on January 10—would have personally bought $249,999 in EBTH stock if the transaction was infected by fraud.

Here, Light's complaint fails to answer a simple (and dispositive) question: How did the alleged omission of financial information before closing cause its losses?  Light draws no causal connection between the information that was allegedly withheld prior to closing of the stock sale, and any losses it has suffered in the two years since.  Light does not even attempt to allege how the purportedly omitted information—relating to EBTH's 2016 financials, and projections for 2017—caused the value of Light's shares to decline, or otherwise damaged Light in any way over the course of the following two years.  Nor does Light draw any causal connection between the so-called failure to disclose EBTH's "down round" and any losses.

Indeed, the fact that Light waited so long to bring suit—two years after learning of 2016 and 2017 financial numbers, and one year after learning of the "down round"—creates a compelling inference against loss causation.  Given this lapse of time, any losses are more plausibly attributable to "changed economic circumstances . . . new industry-specific or firm-specific facts, conditions or other events, which taken separately or together account for some or all" of the drop in value of EBTH stock.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).  Because Light has failed to show that any alleged misrepresentations or omissions caused its losses, its claims should be dismissed for failure to plead loss causation as well.[6]

II.     **Light fails to state a claim under the Delaware Securities Act.**

Count II of the complaint for violations of the Delaware Securities Act should be dismissed for at least two independent reasons.  <u>First</u>, the Delaware Securities Act is to be interpreted consistent with the federal securities laws.  *See* 6 Del. Ch. § 73-201 ("[C]ourts will be guided by the interpretations given by federal courts to . . . . Rule 10b-5 [] promulgated under the

---

[6] Light must plead loss causation even to the extent it seeks rescission of the stock sale, rather than monetary damages.  *JSMS Rural LP v. GMG Capital Partners, III, LP*, 2006 U.S. Dist. LEXIS 54104, at *4 (S.D.N.Y. Aug. 4, 2006).

Securities Exchange Act of 1934 . . . .").  Where a claim under the Exchange Act fails, so too does a claim under the Delaware Securities Act.  *Van Roy v. Sakhr Software Co.*, 2014 U.S. Dist. LEXIS 92068, at *17 (D. Del. July 8, 2014) (dismissing claims under federal securities laws and under Delaware Securities Act for failure to adequately plead scienter).  Because Light's claim under the Exchange Act should be dismissed, so too should its claim under Delaware law.

Second, and independently, the Delaware Securities Act "imposes liability only where the transaction in question bears a 'sufficient nexus' to the State."  *JAC Holding Ents., Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 738 (E.D. Mich. 2014) (citing Delaware law).  Here, Light pleads only minimal connections between its claims and Delaware—that (i) EBTH is a Delaware corporation, and (ii) the Common Stock Purchase Agreement contains a choice of Delaware law provision.  Compl. at ¶ 3; ECF 1-1 at p. 5.  The Delaware Chancery Court, however, has made clear that these minimal connections are insufficient as a matter of law to create a colorable nexus to Delaware.  *FdG Logistics LLC v. A&R Logistics Holdings*, *Inc.*, 131 A.3d 842, 857 (Del. Ch. 2016).  Light's claim should accordingly be dismissed.

III.  **Light's remaining common law claims fail as a matter of law.**

A.  **Light fails to state a claim for fraud under Rules 9(b) and 12(b)(6).**

Light also asserts a claim for common law fraud.  Like the federal securities laws, claims for common law fraud are subject to the heightened pleading requirements of Rule 9(b).  These heightened requirements apply equally to fraud claims based on alleged omissions of material fact, and the plaintiff must plead, among other things, that the defendant knew or should have known that its statements were misleading by omission.  *See, e.g., Davisson v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 122673, at *28 (S.D. Ohio Sept. 3, 2014).[7]

---

[7] Unless otherwise noted, the Individual Defendants respectfully submit that Ohio law governs Light's common law claims, because Ohio is the place where the Individual Defendants are

Light's common law fraud claim fails for the same reasons as its statutory securities fraud claims. Light fails to allege any actionable misrepresentations or omissions, *see supra* at Part II.A, and also fails to allege that any of the Individual Defendants acted with intent to defraud. *Supra* at Part II.B. For these reasons, the common law fraud claim should be dismissed.

Light's common law fraud claim should separately be dismissed because it is based on alleged representations and omissions made prior to and outside of the Stock Purchase Agreement, and is thus barred by the agreement's merger clause, in which Light expressly stated that "[t]here are no representations, warranties, agreements or undertakings of the Sellers with respect to the transactions contemplated by this Agreement other than those set forth in this Agreement." ECF No. 1-1 at ¶ 5(d). Given this provision, Light cannot as a matter of law plead that it reasonably relied on any representations made outside the agreement. *See, e.g., Eastham v. Appalachia*, 2013 U.S. Dist. LEXIS 102846, at *12-13 (S.D. Ohio July 23, 2013) ("[W]hen a written contract is integrated, 'it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution.'"). While this provision may not bar Light's claims under the federal securities laws (which generally cannot be waived), it does bar Light's common law fraud claims to the extent they rely upon extra-contractual representations made prior to closing.

**B.     Light fails to state a claim for negligent misrepresentation.**

As this Court has held: "Under Ohio law, a claim for negligent misrepresentation arises when one supplies false information; it does not provide a cause of action based on an omission. . . . [T]here must be some affirmative false statement." *Adams v. Antonelli College*, 304 F. Supp. 3d 656, 667 (S.D. Ohio 2018) (Black, J.); *see also Andersons, Inc. v. Consol, Inc.*, 348

---

alleged to have committed the acts alleged in the Complaint. *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820-22 (6th Cir. 1990).

F.3d 496, 506 (6th Cir. 2003) ("[A] negligent misrepresentation claim only lies for an affirmative false statement, not an omission."). Light's claim fails because it is based exclusively on alleged omissions regarding (i) EBTH's financial condition before the stock sale, and (ii) the "down round" of financing.

C.     **Light fails to state a claim for civil conspiracy.**

"An action for civil conspiracy cannot be maintained unless an underlying unlawful act, which would be actionable in the absence of the conspiracy, is committed." *Shoemaker v. Murdock*, 2019 U.S. Dist. LEXIS 13662, at *15 (S.D. Ohio Jan. 29, 2019). Here, since Light has failed to plead any underlying unlawful acts, the civil conspiracy claim should be dismissed.

The conspiracy claim also fails for the independent reason that, under Ohio law, "[a] corporation cannot conspire with its own agents or employees." *Valente v. University of Dayton*, 689 F. Supp. 2d 910, 929 (S.D. Ohio 2010). Light alleges that each of the Individual Defendants was, "[a]t all relevant times[,] an officer of the Company," Compl. at ¶¶ 5, 7, 9, and further alleges that each of the Individual Defendants was acting within his role as an officer of the company in connection with the stock sale. *Id.* at ¶ 11 ("[The] Individual Defendants controlled the Company and acted as agents on its behalf . . . as related to the Plaintiff's purchase of stock"). Because the Individual Defendants are alleged to have been acting in their corporate capacities, they cannot have conspired with EBTH as a matter of law.

D.     **Light fails to state a claim for breach of fiduciary duty.**

Light's claim for breach of fiduciary duty also should be dismissed. To the extent this claim is based on any alleged failure to disclose information prior to the stock sale, the claim fails because the Individual Defendants did not owe any duties to Light, which at the time was only a prospective stockholder. *See, e.g., Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 407 (7th Cir. 2000) ("prospective stockholders are not owed fiduciary duties") (citing Delaware

- 18 -

law); *Sanders v. Devine*, 1997 Del. Ch. LEXIS 131, at *16 (Del. Ch. Sep. 24, 1997) (no fiduciary duty because "plaintiff was not a stockholder").[8]

The claim also should be dismissed even to the extent it is based on the Individual Defendants' alleged failure to provide information relating to EBTH's "down round" financing. Under Delaware law, directors do not owe a fiduciary duty to disclose information unless "the board elects to or has a duty to seek shareholder action." *Raskin v. Birmingham Steel Corp.*, 1990 Del. Ch. LEXIS 194, at *15 (Dec. 4, 1990); *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) ("In the absence of a request for stockholder action, the Delaware General Corporation Law does not require directors to provide shareholders with information concerning the finances or affairs of the corporation."). Thus, because the Individual Defendants and EBTH were not seeking any action or approval from Light in connection with the "down round," there was no affirmative fiduciary duty to disclose it.

E.     **Light's breach of contract claim fails.**

Light also asserts a claim for breach of the Stock Purchase Agreement against Jonathan Nielsen and Michael Reynolds. In the stock purchase agreement, Jonathan Nielsen and Mr. Reynolds represented that "[t]o each [of their] knowledge, since October 19, 2016, there has not been a material adverse effect on the business" of EBTH. Compl. at ¶ 99. Plaintiff then alleges in conclusory fashion that Jonathan Nielsen and Mr. Reynolds "fail[ed] to disclose to [Light] various material adverse effects on the business of the Company resulting in the actual financial losses in 2016 . . . ." *Id.* at ¶ 101. Light, however, never identifies what these "material adverse effects on the business of the Company" were—it simply concludes such effects occurred and

---

[8] Under the internal affairs doctrine, Light's claim for breach of fiduciary duty is governed by Delaware law because EBTH is a Delaware corporation. *Kober v. Harrington*, 2018 U.S. Dist. LEXIS 110409, *8 n.5 (N.D. Ohio July 2, 2018).

should have been disclosed. This is insufficient to state a claim under Rule 12(b)(6), as Light has failed to plead any facts to support its conclusory legal allegation that "material adverse effects" occurred or were within the knowledge of Jonathan Nielsen and/or Mr. Reynolds.

F.     **Light fails to state a claim for unjust enrichment.**

Finally, Plaintiff's throwaway claim for unjust enrichment also fails as a matter of law. Light's unjust enrichment claim is based on the allegation that the Individual Defendants received an unjust benefit in the form of the "substantial amount of money for the purchase of its common stock in the company." Compl. at ¶ 106. But the stock purchase transaction was undisputedly governed by the Stock Purchase Agreement, attached as Exhibit A to the Complaint. "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment [. . .] when an express contract covers the same subject." *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009). An unjust enrichment claim that is covered by an express contract should be dismissed even where the plaintiff attempts to plead the claim in the alternative. *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 905 (S.D. Ohio 2013). And since Andrew Nielsen received no money from Light (because he sold them no stock), Light cannot claim that he was unjustly enriched at Light's expense.

## CONCLUSION

For these reasons, the Individual Defendants respectfully request that Light's claims be dismissed, in their entirety and with prejudice.

Dated: April 11, 2019     Respectfully submitted,

             */s/ Joseph C. Weinstein*
             Joseph C. Weinstein
             joe.weinstein@squirepb.com
             Sean L. McGrane
             sean.mcgrane@squirepb.com
             SQUIRE PATTON BOGGS (US) LLP
             4900 Key Tower, 127 Public Square
             Cleveland, OH 44114
             Tel: (216) 479-8500
             Fax: (216) 479-8780

             Scott A. Kane
             scott.kane@squirepb.com
             Jennifer L. Dollard-Smith
             jennifer.dollard-smith@squirepb.com
             SQUIRE PATTON BOGGS (US) LLP
             201 E. Fourth St., Suite 1900
             Cincinnati, OH 45202
             Tel: (513) 361 1200
             Fax: (513) 361 1201

             *Attorneys for Defendants Andrew C. Nielsen,*
             *Jonathan C. Nielsen and Michael J. Reynolds*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion to Dismiss and supporting

Memorandum of Law was served on all counsel of record through this Court's ECF system on

April 11, 2019.


/s/ Joseph C. Weinstein

*One of the attorneys for Andrew C. Nielsen,*
*Jonathan C. Nielsen and Michael J. Reynolds*