## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LIGHT EBTH, LLC,<br><br>                  Plaintiff,<br><br>     v.<br><br>EBTH, INC., ANDREW NIELSEN,<br>JONATHAN C. NIELSEN, and MICHAEL<br>J. REYNOLDS,<br><br>                  Defendants. | Civil Action No. 1:19-CV-00011-TSB |

## FIRST AMENDED COMPLAINT

Plaintiff Light EBTH, LLC ("Plaintiff"), by and through its attorneys, Clark Hill PLC, states this Amended Complaint against Defendants EBTH, Inc., Andrew C. Nielsen, Jonathan C. Nielsen, and Michael J. Reynolds ("Defendants") for, *inter alia*, violations of state and federal securities laws, fraud and negligent misrepresentation, breach of contract, breach of fiduciary duties, and civil conspiracy.

## INTRODUCTION

1.      As alleged herein below, the Defendants fraudulently induced Plaintiff to purchase 369,130 shares of common stock of EBTH Inc. ("Company" or "EBTH") for a purchase price of $899,999.49 by repeatedly and materially misrepresenting and omitting the true (and severely deteriorating) financial condition of the Company. Accordingly, Plaintiff pursues this lawsuit to recover all appropriate relief available pursuant to the applicable federal and state securities laws and common law.

**THE PARTIES**

2.      Plaintiff is a limited liability company organized under the laws of the State of Delaware.  SLC, LLC ("SLC"), Mark Sullivan, and Ellen Schubert are among the members of Plaintiff Light EBTH LLC, which was formed at the request of the Defendants in order to avoid investments in the Company's stock by multiple individuals and in more modest amounts.

3.      Defendant EBTH Inc. (the "Company") is a company existing under the laws of the State of Delaware with a principal place of business in Cincinnati, Ohio.  The Company is the largest e-commerce marketplace for estate sales.  It operates via a two-sided auction marketplace for individuals downsizing, relocating, or experiencing other life events so that they can sell their belongings to purchasers.  The Company's registered agent is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

4.      The Company began its operations in 2007 as a full-service estate sale business with a focus on driving awareness through a web presence.  The business grew quickly and, thereafter, Andrew C. Nielsen, Jonathan C. Nielsen, and Michael J. Reynolds (collectively referred to herein as the "Individual Defendants") approached the original owners of the business about expansion and the Individual Defendants' plan to partner with the owners and take the Company global.

5.      Defendant Andrew C. Nielsen ("A. Nielsen") is an adult individual residing at 1211 Tannehill Lane, Cincinnati, Ohio, 45208.  At all relevant times, he was an officer of the Company (serving as its President/CEO from May 2012 through March 2018) and a member of the Company's Board of Directors during that period.

6.      In his role with the Company, A. Nielsen touts having "led the company to more than 1,100% growth and was instrumental in raising $84.5 million in venture capital to support the growth of the business."  Further, as reflected by his online profile, "[u]nder his leadership,

the company expanded from 1 to 27 markets, hired 650+ employees and was named one of the Cincinnati Business Courier's Fast 55 and one of Inc.'s 5000 Fastest Growing Private companies."

7.      Defendant Jonathan C. Nielsen ("J. Nielsen") is an adult individual residing at 1209 Tannehill Lane, Cincinnati, Ohio, 45208.  At all relevant times, he was an officer of the Company (serving as its Chief Business Officer from March 2017 through May 2018 and Chief Revenue Officer from May 2012 through March 2017) and a member of the Company's Board of Directors during those periods.

8.      In J. Nielsen's roles, he touts leading the Company's "rapid growth (2,000% +) over the past five years while pursuing rapid national expansion.  Originally a small 'single-store' operation with 12 employees, Jon and EBTH's management team drove EBTH to a team of nearly 1,000 people operating in over 27 cities across the nation - reaching buyers in over 150 countries."  In addition, he "transitioned into the role of Chief Business Officer in early 2017 to lead EBTH's innovation and new business division. Working cross-functionally, Jon and his team were responsible for identifying and building radical and breakthrough service offerings and revenue streams, ensuring that EBTH maintained its position as industry leader."

9.      Defendant Michael J. Reynolds ("Reynolds") is an adult individual residing at 5722 Beech Grove Lane, Cincinnati, Ohio, 45233.  At all relevant times, he was an officer of the Company (serving as its Chief Financial Officer ("CFO") from May 2012 through October 2016, and again from March 2018 forward and Chief Operating Officer ("COO") from October 2015 through March 2018 and, upon information a member of the Company's Board of Directors during those periods.

- 3 -

10. In Reynolds' roles with the Company, he was heavily involved in securing investment funding and corresponding agreements for the Company's benefit, as well as securing venture capital funding via Series A, B, and C rounds.  He also managed the Company's key business operations, including scaling of the Company's operations to a national footprint, centralized processing, fulfillment operation, shipping, and process engineering.

11. At all relevant times, the Individual Defendants controlled the Company and acted as agents on its behalf and each other as related to the Plaintiff's purchase of stock at issue herein.  As alleged below, each of the Individual Defendants was a central and primary participant in the Defendants' joint action to promote the stock sale at issue to Plaintiff, enter into agreements between Plaintiff, on the one hand, and all three Individual Defendants, on the other, and to make materially false and/or deceptive financial statements and disclosures provided to Plaintiff only through the three Individual Defendants on behalf of each other and of the Company.

## JURISDICTIONAL STATEMENT

12. The District Court has subject matter jurisdiction of this action as it raises a federal question under 15 U.S.C. § 78aa and 28 U.S.C. §1331.

13. This action is brought pursuant to Section 10(b) and Section 20(a) of the 1934 Securities Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) (hereinafter referred to as the "Exchange Act"), and Rule 10b-5 of the Securities and Exchange Commission (17 C.F.R. §240.10b-5(b)), based upon the Defendants' use of various means or instrumentalities of interstate commerce and of the mails in connection with the sale of securities, and through the use of various manipulative or deceptive devices or contrivances in contravention of rules or regulations prescribed by the Securities and Exchange Commission.

14.     This District Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 of the Plaintiff's pendent common law and statutory claims including (but not limited to) those arising under the laws of the State of Delaware as described below because such claims are part of the same case and controversy.

**VENUE**

15.     Venue lies properly in this District under 28 U.S.C. §1391(b).  In particular, but without limitation, at least one of the Defendants resides in the state in which this District is located.  Further, a substantial part of the events or omissions giving rise to the claim occurred within this District.

**FACTUAL BACKGROUND**

16.     The Plaintiff acquired its ownership interest in the Company from the Defendants pursuant to a Common Stock Purchase Agreement dated as of January ___, 2017 (the "Agreement") and signed by Mark Sullivan, on behalf of Plaintiff, and by Defendants A. Nielsen, J. Nielsen, and Reynolds, each individually.  A copy of the Agreement is attached hereto, and incorporated by reference as if set forth fully herein, as Exhibit A.  The corresponding Shareholder Agreements Joinder Signature Pages are attached hereto and incorporated by reference as if set forth fully herein, as Exhibit B; Amendment No. 1 to the Second Amended and Restated Investors' Rights Agreement is also attached hereto and incorporated by reference as if set forth fully herein as Exhibit C.

17.     The purchase reflected in the Agreement, which closed on January 9, 2017, was the result of the Defendants' collective and coordinated fraudulent inducement of Plaintiff to purchase a total of 369,130 shares of common stock of the Company for a purchase price of $899,999.49 while repeatedly and materially misrepresenting the true (and severely deteriorating) financial condition of the Company.

18. In order to induce Plaintiff to participate in the stock transaction, the Defendants represented (a) that the Company and its business were in a substantial growth mode, (b) that the Company's revenues were projected to grow year-over-year, and (c) that its expenses were projected to become more relatively manageable, leading to a projected reduction in net revenue losses year-over-year and, ultimately, profitability as the business model matured.

19. Ultimately, these representations were revealed to have been false and, instead, later financial disclosures demonstrated that the Defendants had (a) concealed and misrepresented their true projections of net revenue losses, (b) conspired in a collective practice and scheme to defraud Plaintiff, (c) knowingly engaged as insiders in the stock transaction after misrepresenting the Company's anticipated performance to Plaintiff, and (d) sold their personal shares in the Company through an insider transaction in order to divest themselves of ownership positions that they knew did not support the share price and value that they were demanding from Plaintiff.

**The December 3, 2016 Representations and Defendants' Collective Action**

20. Prior to the transaction, on or about December 3, 2016, the Individual Defendants, acting on behalf of the Company but in furtherance of their collective scheme to defraud, provided a copy of an EBTH pitch deck that included the following material financial projection information about the Company:

|  | 2016 Projected | 2017 Projected |
| --- | --- | --- |
| Gross Auction Revenue | $75,919,960 | $174,738,448 |
| Net Income | ($18,548,773) | ($16,624,773) |

21. The foregoing documented projections were consistent with verbal statements made on behalf of the Defendants to Mark Sullivan, who is a member both in Plaintiff and in

SLC (itself a member in Plaintiff), by Defendant A. Nielsen, and the Defendants' overall narrative during the transaction, to the effect that the Company's revenues were growing significantly year-over-year, that projected losses were declining as a result, and that the Company's financial condition and cash position were improving as the Company progressed with the full launch of its business growth model.

22.     Specifically, on December 1, 2016, Mark Sullivan had a verbal conversation, on Plaintiff's behalf, with Defendant A. Nielsen, in which Nielsen represented that, following capital raising activities from 2014 through 2016 and continued expansion of the Company, sales revenue of the Company was expected to rise to between $140 to $180 million in 2017 following year-over-year increases over 2014, 2015, and 2016 from $13.5 million to $30 million to $62 million.

23.     The EBTH pitch deck was provided in connection with the Individual Defendants' sale of shares of the Company and attached to a December 3, 2016 email communication sent to Mark Sullivan by Defendant A. Nielsen from his Company email account and bearing the signature block of A. Nielsen as Chief Executive Officer of the Company.  The December 3, 2016 email was also copied to J. Nielsen at his Company email address, and the EBTH pitch deck itself is marked on every page with the name and logo of the Company.

24.     In the December 3, 2016 email A. Nielsen set forth certain information regarding the "Founder's Stock Offering" to sell up to 2,950,000 shares of common stock owned at that time by the principals of the Company at a price per share of $2.438164 and a minimum investment of $500,000, thereby representing a value of the Company's common stock at that price and associated with the 2016 projected financial loss of $18,548,773 presented in the EBTH pitch deck that was also provided with the December 3, 2016 email.

25. In addition to the EBTH pitch deck, the December 3, 2016 email also attached a copy of an executed Non-Disclosure Agreement (the "NDA"), which was entered into by the Company in connection with the transaction and had been signed and returned to A. Nielsen at his Company email address by Mark Sullivan on December 2, 2016. A copy of the NDA is attached hereto, and incorporated by reference as if set forth fully herein, as Exhibit D.

26. The NDA expressly recites that, "EBTH Inc. and its advisors and agents are prepared to make available to you ("Recipient") certain information about the Company, its subsidiaries and affiliates and their business that is non-pubic, confidential or proprietary in nature, including (without limitation) financial statements and certain other financial information of the Company and its subsidiaries and affiliates ("Confidential Information")."

27. The NDA then provides the terms on which "EBTH Inc. and its advisors and agents" will provide such Confidential Information for purposes of "a potential investment or other transaction with the Company" and the Recipient's obligations with respect to the use and disclosure of such Confidential Information, including with respect to potential transactions of the Company.

28. The NDA then provides the following limitations with respect to the Recipient's interactions in connection with any transaction, as follows.

> Recipient agrees that all (i) contacts by Recipient or Recipient's Representatives with the Company regarding information being provided by the Company, (ii) requests for additional information, (iii) requests for any office or other facility visits or meetings, and (iv) discussions or questions regarding procedures or process for a Transaction shall be made solely through one (1) or more of Andy Nielsen, Jon Nielsen, Mike Reynolds or Chip Nielsen (the "Principals"). Without the prior written consent of a Principal, Recipient agrees to not contact or communicate with any of the Company's employees or agents, other than the Principals, in connection with any matters related to the Confidential Information or due diligence regarding a possible Transaction.

29.     Thus, through the NDA, the Recipient of information concerning the investment transaction (here Plaintiff and its members) was required to agree that all contacts, requests, and discussions with EBTH Inc. and its advisors and agents regarding any potential investment in the Company's stock or other transaction with the Company were to occur only through the Principals of the Company (including and limited to specifically to Andy Nielsen, Jon Nielsen, Mike Reynolds or Chip Nielsen), who were specifically identified as its agents and controlling "Principals" and were thereby, without limitation, acting as express and apparent agents of the Company and of each other in connection with the transactions contemplated by the NDA and their statements and representations related thereto.

30.     The NDA was signed by A. Nielsen as Chief Executive Officer on behalf of the Company, thereby placing the Company at the center of any disclosures related to the transaction, and bound Plaintiff and its members to deal only with the Individual Defendants (or Chip Nielsen) regarding any information received regarding a potential investment in the Company, including any purchase of shares from them individually, as ultimately occurred in connection with the Common Stock Purchase Agreement.

31.     Thus – in addition to acting in concert through their joint identification in the NDA, pursuit of the transaction reflected in the Common Stock Purchase Agreement, and effort to collectively sell their individual interests as sellers of stock in connection with the "Founder's Stock Offering" – through their statements, disclosures, and dealings leading up to the stock transaction, the Individual Defendants were speaking and making statements on behalf of each other and on behalf of the Company and acting in their roles as agents of the Company and management principals thereof who directed and controlled Company policy.

32.     As attached to the December 3, 2016 email, the EBTH pitch deck and the NDA, respectively, bear the file names *EBTH.pdf* and *EBTH Confidentiality Agreement_signed.pdf*.

### The Defendants' December 10, 2016 Representations and Omissions

33.     Following the Defendants' provision of the pitch and projection information provided in the EBTH pitch deck and December 3, 2016 email, the Defendants next provided a December 10, 2016 email providing actual financial information for 2015 and for 2016 through October 31, 2016 as well as the Company's purported growth model.  The December 10, 2016 email was sent to Mark Sullivan and Ellen Schubert by A. Nielsen on behalf of all of the Defendants, who were referenced as "we" therein, and stated as follows:

*Hi Mark and Ellen,*

*I hope you're having a great weekend.*

*I've attached the following, per our conversation yesterday:*

*1. 2015 Audited Financial Statements*

*2. YTD financials through 10/31/16.*

*3. A summarized version of our growth model. It is a lot to digest, but it will show more about how the expenses and revenue build. A few notes listed below:*

- *We're working through final budgeting for 2017 right now. As such, that will adjust some of our future projections.*
- *Pay most attention to the "Summary IS" tab.*
- *The Market Pro Forma tab shows an individual location build / budget over the first three years.*
- *The projections in this model include 12 new locations per year. If you want to see the impact of launching additional (or fewer) markets, you can add locations in the yellow cells across the top of the Summary IS tab.  I've gone ahead and removed 4 locations (bringing the total new market count to 8 for 2017).*
- *You'll see Percentage Adjusters in yellow on the left-side of the Summary tab.  You can use these to dial up or down the projections for most line items and then monitor the impact per year out to the right. You'll see "Modified," "Original," and "Variance" to help you see the impact of the adjustments.*

- *We built this so we can monitor the impact of certain line items.*
- *The Cashflow sheet has inputs at the top for non-locational CapEx and funding. Each location added on the income statement adds an additional $12,500 of CapEx that is location-specific.*

*This might be more detail than you wanted, but the growth model shows how things build over the next 2 years. I'm happy to review via phone early this week if you'd like.*

*Thanks!*

*Andy*

34.     The December 10, 2016 email bears the signature block of A. Nielsen as Chief Executive Officer of the Company and attaches files entitled *EBTH Audited Financial Statements, 2015.pdf*, *EBTHModel_rev.xlsx*, and *Consolidated Monthly FS 10.31.16 EBTH Inc..xlsx*.

35.     This correspondence was devoid of any mention of recent changes or significant revisions to the 2016 budget or projections and, instead, emphasized the availability of actual 2016 financial results through the third quarter and the Company's work on the budget for 2017.

36.     Notably, the December 10, 2016 attachment of the *EBTHModel_rev.xlsx* file came with the Defendants' instruction in the body of the email to "*Pay most attention to the "Summary IS" tab*" and represented that, as of October 31, 2016, the Company's net income for 2016, before Plaintiff's investment, was projected in the file sent by the Defendants to be a loss of $19,430,571 based upon the Multi Year Projection of the Income Statement as of that point.

37.     Moreover, in the December 10, 2016 attachment of the *Consolidated Monthly FS 10.31.16 EBTH Inc..xlsx* file, the Defendants provided the Company's actual Balance Sheet and Income Statement results, as of October 31, 2016, but omitted the Company's Cash Flow Statement altogether and omitted from the Income Statement any representation or disclosure of

2016 plan information that was available or adjusted as of that time or a comparison and variance of such 2016 plan information against available actual financial results.

38.     As alleged further herein below, Income Statements of the Company such as that included in the *Consolidated Monthly FS 10.31.16 EBTH Inc..xlsx* file would later prove to contain such 2016 plan information, but on December 10 the plan information was omitted from the Income Statement – likely because any such 2016 plan information available in December would have directly conflicted with the fraudulent 2016 projection information previously provided to Plaintiff on December 3 and also the fraudulent 2016 projection information contained in the *EBTHModel_rev.xlsx* file sent on December 10 to which Plaintiff was encouraged to "*Pay most attention*" – demonstrating the Defendants' contemporaneous awareness of the fraud and willful intent to induce Plaintiff's participation in the stock transaction through the presentation of an outdated or fabricated growth model to which Defendants claimed to be privy as insiders of the Company.

### The Defendants' December 19 and 22, 2016 Representations and Omissions

39.     The Defendants next provided a December 19, 2016 email sent to Mark Sullivan by A. Nielsen from his Company email on behalf of all of the Defendants, again referenced as "we" therein, including the following assurance: "***In an effort to make sure you're operating off of the most current info****, we're currently working through 2017 planning and believe that the top line revenue projection will likely be in the $130-140MM range as we focus on growth in many of our existing cities and launching more distribution centers. The final budget will be approved at the next board meeting in early 2017*."  (emphasis added).

40.     Thus, while disclosing actual financial results and 2017 projection information, the Defendants again made no mention of changes or significant revisions to the 2016 budget or projections and, instead, emphasized the Company's work only on the budget for 2017, while expressly stating that the information was provided to "*make sure you're operating off of the most current info.*"

41.     In a December 22, 2016 email to Mark Sullivan, sent from a Company email address on behalf of the Defendants, A. Nielsen again described the proposed transaction as a "Founder's Stock Offering" to sell up to 2,950,000 shares of common stock owned at that time by the principals of the Company at a price per share of $2.438164 and a minimum investment of $500,000, thereby again representing a value of the Company's common stock at that price and in light of the disclosed 2016 projected financial loss presented in the EBTH pitch deck, updated in the attachments to the December 10, 2016 email, but otherwise presented as "*the most current info.*"

42.     Later on December 22, 2016, A. Nielsen provided a second email to Sullivan attaching the Company's Summary Capitalization Table for all shares of the Company authorized and outstanding, which was sent from A. Nielsen's Company email account and address like all of the foregoing emails described above.

**The Defendants' January 3, 2017 Representations and Omissions**

43.     On January 3, 2017, considering the substantial investment it was about to make and in response to pressure from the Defendants with respect to participation, via email, SLC requested on behalf of Plaintiff that the Defendants send "*financial statements for yearend or*

*whatever is the most up-to-date that you can send*" in order to facilitate the final assessment of the Defendants' proposed transaction.

44.     In the January 3, 2017 email, SLC also specifically raised concerns for the Company's SG&A expenses, and thereby its resulting loss expectations for 2016 and 2017, and raised various questions regarding the Company's required transaction size, profitability, and performance.

45.     In response to this specific inquiry concerning the Company's 2016 and 2017 expenses, operations, and profitability, A. Nielsen sent a January 3, 2017 email from his Company email address and on behalf of the Defendants, again referenced as "we" therein, addressed to Sullivan, Schubert, and SLC, on behalf of Plaintiff, stating as follows:

> *I've attached financials through November.*
>
> *As it pertains to the jump in SG&A for 2017: Much of the jump can be attributed to sales and marketing spends. That said, we're actually in the process of working through 2-3 different growth scenarios for the board for 2017 (for instance, less growth focus and focus on profitability vs. more growth). As we look to this year, the conversation is around how much we want to drop into the sales and marketing engine while building the necessary infrastructure. This year will be a balance of growth and profitability in core cities.*
>
> *Re: the size of the market: We currently target sales > $15,000 (unless a client has a small collection of items that are each of relatively high value that is easy to process). We monitor factors such as operational throughput (how fast our teams are processing inventory), condition of the estate (between Level 1 and Level 5), average price per item, number of local bidders, and many other KPI's across each of our cities. Our sales reps target an average price per item > $75. We are more lenient when we first enter a market to increase brand awareness, local demand, etc. As such, new locations pull the aggregate average estate value down to ~ $18,000; then as a market matures, this number climbs (as mentioned, we look at this across each city over time). It would be hard to pick an actual % of the available market that is above a certain threshold, but as our older cities have shown us, there are plenty of opportunities that meet this criteria. I'll also point out that we haven't specifically focused on the high-end of the market. We just processed one of our largest curated, single sales to date in December (click here), and will be processing more of those as we head into this year.*

46.     With his January 3, 2017, A. Nielsen also attached a document called *Consolidated Monthly vs. Plan FS 11.30.16 – EBTH Inc. (Q4 REV PLAN).xlsx*.  The file contains a sheet created on 12/23/2016 at 3:29 PM reflecting a Company Balance Sheet as of 11/30/2018 and a sheet created on 12/23/2016 at 3:34 PM reflecting a Company Income Statement Summary vs Plan as of 11/30/2018.

47.     Despite the name of the file provided by Defendants on January 3, 2017, the file attached to the January 3 email contained only the Company's actual Balance Sheet and Income Statement results, as of November 30, 2016, but omitted the Company's Cash Flow Statement altogether and omitted from the Income Statement any representation or disclosure of 2016 plan information that was available or adjusted as of that time or a comparison and variance of such 2016 plan information against available actual financial results.

48.     As Plaintiff later learned, and as addressed below, the information provided by the Defendants as of the consummation of the stock transaction did not include the detailed, most up-to-date financial information as had been requested, the most current projection information for the Company's 2016 financial performance, or accurate information available to the Defendants as of the time of the parties' interactions that was necessary to make the Defendants' prior disclosures accurate, corrected, complete, and not misleading under the circumstances.

49.     To the contrary, the facts revealed later would show that the Defendants had deliberately provided only selected information, had knowingly failed to provide updated information available to them prior to the consummation of the transaction, and had intentionally withheld material information, including accurate projections reflecting the Defendants' own business model and expectations as of the time of the Defendants' representations concerning the transaction.

**The January 6 and 9, 2017 Funding and Closing of the Transaction**

50.     On January 6, 2017, in reliance upon the Defendants' oral and written misrepresentations and omissions, Plaintiff wired its funds to purchase Company shares and complete the transaction contemplated by the Agreement.

51.     On January 9, 2017, at a closing attended by each of the Individual Defendants, Plaintiff then closed on the purchase of the Company's shares pursuant to the Agreement, paying a total of $899,999.49 for 369,130 shares of the Company's common stock – a price of $2.438164 per share.

52.     As reflected in the Agreement, the transaction was part of an overall offering by which multiple founders of the Company sold an aggregate of 2,927,752 shares of their common stock interests for an aggregate price of $7,138,339.61 to multiple buyers of the stock, including Plaintiff, and in doing so reduced their total interest in the Company, and their risk associated therewith, at the agreed price and based upon the information and disclosures that had occurred.

53.     As reflected in the signature pages of the Agreement, the sellers in the transaction specifically included the Company's then-current Chief Executive Officer Defendant A. Nielsen, Chief Revenue Officer Defendant J. Nielsen, and Chief Operating Officer Defendant Reynolds. Moreover, as reflected in the Agreement, the buyers in the aggregate sale of common stock of the Company sold by these insiders specifically included Plaintiff.

54.     Despite the misrepresentations and omissions described herein above, and violations of law alleged herein below, in Section 4(b) of the Agreement, the respective sellers represented and warranted to the buyers that consummation of the transaction contemplated by the Agreement would not violate any governmental statute, regulation, or rule.

55.     Moreover, despite the failure to provide full, accurate, and corrected information concerning the financial affairs of the Company, in Section 4(h) of the Agreement, the respective sellers represented and warranted to the buyers only that there had been no material adverse effect on the business of the Company since October 19, 2016, implying that full disclosure of the business's financial projections and results through that point in time had been made.

56.     In fact, as alleged herein, the Company and Individual Defendants had made their false and misleading statements and omissions to Plaintiff, including through Mark Sullivan, Ellen Schubert, and SLC, to further their fraudulent scheme, statements, and practices and to induce Plaintiff to rely thereon, to execute the Agreement, and to invest in the stock of the Company based upon the false information provided by the Defendants.

**The January 10, 2017 Financial Disclosure**

57.     The very next day following the closing on the stock sale – on January 10, 2017 – the then-current Chief Financial Officer of the Company, who was not a permitted communication participant under the NDA and is not a party to this action, provided the first routine distribution of financial information provided by the Company to Plaintiff and other stockholders after the closing on the Agreement.

58.     On that date, the Company's then-current CFO sent an email with a subject line of "EBTH November 2016 Financials" that was addressed to Defendants A. Nielsen, J. Nielsen, and Reynolds and to himself, and apparently blind copied to investors in the Company, and to which he attached a file named *Consolidated Monthly vs. Plan FS 11.30.16 – EBTH Inc. (Q4 REV PLAN).xlsx*.

59. The attached file, unlike the one with the exact same name that the Defendants had provided to Plaintiff through A. Nielsen on January 3, 2017, includes more complete and detailed financial information than what Plaintiff had received from the Defendants before the closing.

60. Specifically, while the attachments to the December 10 and January 3 emails sent by the Defendants had omitted the Company's Cash Flow Statement altogether and omitted from the Income Statement any disclosure of newly available or adjusted 2016 plan information or a comparison and variance of such 2016 plan information against available actual financial results, the attachments to the January 10 contained the Company's actual Cash Flow Statement along with the Balance Sheet and Income Statement and included in the Income Statement an express representation and disclosure of 2016 plan information and a comparison and variance of that 2016 plan information against available actual financial results.

61. Despite these differences, the more detailed document attached to the January 10, 2017 post-closing email contains a sheet created on 12/23/2016 at 3:29 PM reflecting a Company Balance Sheet as of 11/30/2018 and a sheet created on 12/23/2016 at 3:34 PM reflecting a Company Income Statement Summary vs Plan as of 11/30/2018 – the same dates and times of creation as are identified in the more limited document bearing the exact same file name and attached to the Defendants' January 3, 2017 email.

62. Thus, while both the document provided on January 3 and the document provided on January 10 are identically named *Consolidated Monthly vs. Plan FS 11.30.16 – EBTH Inc. (Q4 REV PLAN).xlsx* – and reflect exactly identical creation dates and times for overlapping portions – the 2016 projection and variance information contained in the document both in an *Income Stmt* sheet and in an entirely missing *Intacct* sheet appears to have been removed from

- 18 -

the Excel spreadsheet document provided by the Defendants on January 3 prior to its transmission to Plaintiff.

63.    Moreover, the January 10, 2017 email from the Company's then-current CFO demonstrated that the Defendants had, in fact, completed a financial reforecast in October 2016 and that in October 2016 they had projected the 2016 net income of the Company to be a loss of $25,098,245, materially greater than $18,548,773 as had been represented by the Defendants on December 3, 2016 or $19,430,571 as had been represented by the Defendants on December 10, 2016.

64.    Specifically, in the text of the January 10, 2017 email attaching the complete and unadulterated version of *Consolidated Monthly vs. Plan FS 11.30.16 – EBTH Inc. (Q4 REV PLAN).xlsx*, Plaintiff received the following material information from the Company's CFO:

> *Gross Auction Revenue rose to $6.7 million in November, a record month for EBTH but slightly below our **reforecast completed in early October**. December GAR also is expected to come in at $6.7 million, bringing our full-year revenue to a projected $61.8 million. The net loss for November was $2.8 million, consistent with October's performance but an improvement over the $3.3 million loss in September.*

(Emphasis added).

65.    The January 10, 2017 information described above was the first reference provided to Plaintiff of the "reforecast" of the Company's 2016 budgeted figures that had in fact occurred in October 2016.  Through January 10, 2017, the only reference provided to Plaintiff by the Defendants regarding forecast adjustments was the potential adjustment to the Company's 2017 forecast – not its 2016 forecast numbers.

66.    The foregoing information provided on January 10, 2017 included a more detailed spreadsheet that Defendants had created on December 23, 2016 but was not provided to Plaintiff in its complete form prior to the closing.  In fact, Defendants did not provide that full document

- 19 -

to Plaintiff until the day after it had closed on the Agreement and after it had provided the funds to purchase the Company common stock in the transaction.

67.     Thus, the January 10, 2017 email revealed: (a) that the Company had reforecast its 2016 projected losses in October 2016 and materially increased them over the loss numbers that had been provided to Plaintiff; (b) that the Defendants knew of this October 2016 reforecast as insiders and management of the Company; (c) that the revised but concealed October 2016 reforecast projected a 2016 net revenue loss of $25,098,245; (d) that, after the Defendants were aware of the October 2016, reforecast they represented to Plaintiff on December 3, 2016 a projected 2016 net revenue loss of only $18,548,773 that they contemporaneously knew was false when represented; and (e) that, after they were aware of the October 2016 reforecast, Defendants then represented to Plaintiff on December 10, 2016 a projected 2016 net revenue loss of only $19,430,571 that they contemporaneously knew was false when represented; but (f) never prior to the closing did the Defendants disclose or update the 2016 projected net revenue loss amounts to correct their knowingly false representations to reflect the known October 2016 projection of net revenue loss of $25,098,245 off of which they were themselves operating the Company as insiders and valuing their own shares of stock therein.

68.     Moreover, information received after the closing demonstrated that despite Plaintiff's January 3, 2017 request for financial statements for the year-end 2016 and the most up-to-date information available, the Defendants' January 3, 2017 provision of information omitted any disclosure of the Company's losses for 2016 year-end or the detailed financial information provided only seven days later on January 10, 2016 by the Company's then-CFO, with whom Plaintiff had been barred from communicating by the NDA and who, on information, departed the Company later in 2017.

69.     All of the foregoing projections, financial assessments, and representations were made by insiders, engaged in the management of the Company, who had completed access to and responsibility for the Company's financial projections and reporting, who were knowledgeable regarding the accurate information at the time that inaccurate projections were provided to Plaintiff, and who failed to provide updated and corrected information to Plaintiff (including through the apparent adulteration of financial documents) during the ongoing communications of the parties prior to the closing of the stock sale transaction.

70.     Thus, the facts show that the Defendants, as corporate insiders and participants in the stock transaction, acted through a knowing and deliberate scheme to induce Plaintiff to purchase Company stock from them in a reckless and highly unreasonable manner given their positions as informed insiders who were presenting a false narrative and statement of the Company's financial condition and failing to update and correct that deceptive depiction.

71.     Ultimately, the financial plan figures and information provided post-closing by the Defendants to Plaintiff are substantially different from the projected net income (loss) figures that Defendants provided to Plaintiff prior to its execution of the Agreement, and the price of $2.438164 per share paid by Plaintiff was based upon a valuation of the Company that preceded and took no account for the Defendants' concealed October 2016 reforecast of the Company's projected performance.

### Further Revelation of the Defendants' Deceitful Statements and Practices

72.     As revealed by the information provided to Plaintiff post-closing, Defendants knew (or should have known) that the Company's financial projection and performance figures had been materially adjusted in October 2016.  Moreover, the Defendants knew (or should have

known) at the time that representations were made to Plaintiff concerning the Company's financial projection and performance that those representations were false, inaccurate, and outdated.

73. Nonetheless, despite various discussions and written communications with Plaintiff prior to closing regarding the Company's financial performance, Defendants failed to correct those misstatements and inaccuracies, failed to relay true and accurate material information to Plaintiff, and failed to relay other material information accurately (or at all) to Plaintiff in a timely and proper fashion.

74. For example, on February 15, 2017, Plaintiff received the Company's actual December 2016 and 2016 full year data attached to an email sent by the Company's then-current CFO that also disclosed, among other things, December 2016 actual SG&A expenses that were "over the reforecast" that Plaintiff was not provided prior to the closing, including expenses for the Company's legal counsel in the transaction itself, recruiting costs to replace Defendant J. Nielsen as CRO as of March 2017, and charges to corporate credit cards.

75. The February 15, 2017 email also provided information reflected in attached files entitled *Consolidated Monthly vs. Plan FS FINAL 12.31.16 – EBTH Inc. (Q4 REV PLAN).xlsx* and *Consolidated Cash Flow Statement 12.31.16 Final.xlsx*, which disclosed that 2016 full year loss was actually $29,257,466 and that the 2016 Q4 revised plan loss was $27,815,172 – figures that Plaintiff never saw before the January 9, 2017 closing and that were greatly at odds with the actual and projected information that had been provided by the Defendants.

76. As with the prior revelations provided immediately after the closing of the transaction, these figures revealed that the actual and projected 2016 results of $29,257,466 and $27,815,172, respectively, were materially different from the projected 2016 loss figures of

$18,548,773 and $19,430,571 that had been provided to Plaintiff prior to the closing and even the actual and projected loss figures of $25,142,004 and $25,098,245, respectively, that had been provided immediately following the closing.

77.     In any event, despite being aware of the October reforecast and the financial results experienced by the Company at the time of their representations to Plaintiff, at no time prior to the closing of the stock transaction did the Defendants ever disclose to Plaintiff that the Company's net 2016 loss would be or was projected to be substantially different than as had been represented to Plaintiff prior to closing.

78.     In addition to the misrepresentations described above, the Company engaged in financing practices in the middle to late 2017 time-period that were in direct conflict with the growth narrative presented by the Defendants in 2016 prior to the closing of the stock transaction.

79.     While in 2016, the Defendants emphasized the Company's available equity capital from prior fund raising activities and the projection of growing revenues and controlled costs, these representations proved to be false at the time they were made and were replaced in late 2017 by a theme of lowered projections and downward-adjusted financial performance for the Company.

80.     On July 24, 2017, A. Nielsen sent a letter to investors stating that the Defendants were focused on key areas for the third quarter of the year but made no mention of raising capital for the Company through additional stock, debt, or other financial transactions.  Instead, he concluded the letter with the following:

> "We've made strong progress thus far in 2017, and I believe we've created great momentum as we head into the second half of the year. Our team is dedicated to driving a banner year for EBTH, and we truly appreciate your ongoing support."

- 23 -

An attachment to the July 24, 2017 email discloses a projected 2017 loss of only $14,139,000 – an improvement over both the 2017 projected figures disclosed before the stock transaction and the projected and actual results of 2016.

81.     Neither the Company nor any of the Individual Defendants made any mention of capital raising activity in any updates until December 26, 2017.  At that point, however, Defendants disclosed a projected 2017 loss that had soared to $22,391,000 and announced an arrangement to take on venture debt and that the Company would be seeking additional equity capital.

82.     Just as they had done in 2016 through the same pattern and practice, the Defendants had announced favorable 2017 net revenue projections for the business early in the year, low-balled the projected losses of the Company to investors including Plaintiff, and then revised and increased the projected loss in the fourth quarter.

83.     While, in 2016 the Defendants had concealed their reforecast of the projected losses in order to induce Plaintiff to purchase the Company stock in the January 2017 transaction, four days before 2017 year-end, in conflict with the 2017 projected loss of only $16,624,773, the Defendants' disclosed a significantly revised 2017 projected loss at year-end in order to justify additional venture debt and equity transactions.

84.     In sum, in 2016, Defendants fraudulently lured the Plaintiff to invest in the common stock of the Company, and to thereby financially support the Company and its operations, by knowingly misrepresenting the Company's true financial model and knowingly misstating and failing to correct their projection of the Company's rapidly deteriorating financial condition.

- 24 -

85.     Then, in 2017, Defendants again misrepresented the Company's true financial condition by misstating its projected net revenue for the year, only to revise the projection at the financial eleventh hour to justify additional and previously undisclosed debt and capital fundraising efforts.

86.     Defendants engaged in this deception while being aware of their own prior reforecast of the 2016 anticipated losses and knowing that the 2017 anticipated losses were also understated and would be reforecast to justify anticipated capital raising activity in 2017.

87.     Each of the Defendants was specifically aware that Plaintiff and its members were seeking and relying upon their provision of current and accurate financial information concerning the Company; and yet, through their fraudulent scheme, statements, and practices, each of them induced Plaintiff's reliance and execution of the Common Stock Purchase Agreement, which provides no relief or protection to any of the Defendants for the consequences of their legal wrongdoing.

88.     The Defendants' false scheme, practices, statements, and omissions caused Plaintiff to engage in the stock transaction based upon the false, inaccurate, and outdated information provided and thereby caused Plaintiff's loss (a) of the full transaction price of $899,999.49, (b) of the projected growth of the stock's value under the false projections and growth model represented to Plaintiff, and (c) of the difference in the value of the stock as calculated under the Defendants' false projections and growth model contrasted with its value under the true facts that were intentionally withheld from Plaintiff and omitted from the Defendants' disclosures.

89.     Prior to filing this lawsuit, Plaintiff attempted to recoup its fraudulently induced investment from the Individual Defendants, including through the transmission of a Demand

Notice requesting the reimbursement of the purchase price for the stock sold under the Agreement; however, the Individual Defendants have not made the Plaintiff whole despite the egregiousness of their actions and omissions.

**COUNT I**
**VIOLATIONS OF FEDERAL SECURITIES LAW**
**(AGAINST ALL DEFENDANTS)**

90. Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

91. Rule 10b-5 promulgated under the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b-5, states that: "*It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,*

> (a) *To employ any device, scheme or artifice to defraud,*
>
> (b) *To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or*
>
> (c) *To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.*

92. Defendants are liable under Rule 10b-5 and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), because, in interstate commerce and in connection with the purchase or sale of a security, (1) the Defendants made a false statements and omissions of material fact and engaged in schemes and practices operating as a fraud, (2) with scienter and intent to defraud, (3) upon which statements, schemes, and practices Plaintiff justifiably relied, and (4) that proximately caused loss and damage to Plaintiff.

- 26 -

93.      The Individual Defendants are liable under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), because (1) the Company was a controlled person that violated the Exchange Act as set forth above, (2) each Individual Defendant was a controlling person who possessed direct or indirect power to direct or cause the direction of the management and policies of the Company as a controlled person, and (3) each Individual Defendant as a controlling person acted as a culpable participant in the Company's unlawful acts under the Exchange Act.

94.      As stated with specificity above, each of the Defendants herein engaged in material omissions and material misrepresentations of material facts, including by knowingly (a) misrepresenting the true financial information of the Company, (b) omitting and concealing the Company's rapidly deteriorating financial condition and performance projections, and (c) failing to disclose the extent of anticipated capital raising activity (i.e. taking on venture debt and/or additional equity capital) or the extent to which such activity may be necessary less than a year after Plaintiff purchased its stock in the Company.

95.      Moreover, given the extent of the Individual Defendants' respective roles with the Company, and their actions on its behalf exposing it and themselves to Section 10(b) liability, Defendants knowingly made the above-stated false statements and/or omissions of material fact in conflict with their duties to disclose arising from the NDA, in violation of the duty of disclosure arising from their insider positions and the requirement to make their false statements and omissions not misleading, and in violation of their duties as controlling persons under Section 20.

96.      Each of the Defendants engaged in the above-referenced conduct with knowledge and an intent to deceive Plaintiff, including as shown by their clear motive to induce the stock transaction in order to sell their shares and thereby reduce their own risk of investment in the

Company, in the case of the Individual Defendants, or to maintain the stock price and diversify equity capitalization, in the case of the Company.

97. Each of the Individual Defendants engaged and agreed to engage in a primary violation and conspiracy to violate the Exchange Act, as well as violations as controlling persons and insiders directing the Company's violation thereof, through their agreement to and identification in the NDA as sources of transaction information, their collective and fraudulent communications with Plaintiff and its principals and their omission of information therefrom, and their collective execution and performance of the Common Stock Purchase Agreement through which each Individual Defendant sold common stock and through which shares of stock owned by Defendants J. Nielsen and Reynolds were transferred to Plaintiff.

98. Moreover, as the issuer of the stock on behalf of whom the statements and omissions were made under the NDA, and as the controlling persons who participated in both the disclosure process and the stock transaction, each of the Company and the Individual Defendants had the opportunity to engage in the deceptive schemes, statements, and practices to which Plaintiff was exposed and by which it was deceived and induced into purchasing Company stock.

99. Plaintiff justifiably relied as a reasonable investor upon the Defendants' material false statements and/or omissions of material fact, and upon the Defendants' overarching deceptive schemes and practices, which proximately caused the Plaintiff's loss and damages.

100. As a result of the Defendants' fraudulent conduct, Plaintiff has suffered substantial monetary damages regarding the entire, or at least the vast majority, of the value of Plaintiff's shares in the Company.

101. As a result, the Defendants' fraudulent conduct entitles Plaintiff to restitution of the purchase price paid for the Company's stock, rescission of the Common Stock Purchase

Agreement, and an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, all of which Plaintiff hereby pursues as relief.

102. Alternatively, and at a minimum, Plaintiff is entitled to the difference between the price it paid for Company stock and the true value of that common stock at the time of purchase transaction under the Agreement and/or the current value of such stock.

**WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

## COUNT II
### VIOLATIONS OF DELAWARE'S SECURITIES ACT §73-201 ET SEQ. AND OHIO'S SECURITIES ACT §§1707.41,44 ET SEQ. (AGAINST ALL DEFENDANTS)

103. Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

104. Defendants' actions violated the provisions of the Delaware Securities Act at Section 73-201, which provides:

> *It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:*
>
> *(1) To employ any device, scheme or artifice to defraud;*
>
> *(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or*
>
> *(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.*

105.    Defendants' actions violated the provisions of the Ohio Revised Code at Section

1707.41, which provides:

> *(A) In addition to the other liabilities imposed by law, any person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts, unless the offeror or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the omitted facts to be not material.*

> *(B)(1) Whenever a corporation is liable as described in division (A) of this section, each director of the corporation is likewise liable unless the director shows that the director had no knowledge of the publication complained of, or had just and reasonable grounds to believe the statement therein to be true or the omission of facts to be not material.*

> *(2) Any director, upon the payment by the director of a judgment so obtained against the director, shall be subrograted [sic] to the rights of the plaintiff against the corporation, and shall have the right of contribution for the payment of the judgment against the director's fellow directors as would be individually liable under this section.*

> *(C) For purposes of this section, lack of reasonable diligence in ascertaining the fact of a publication or the falsity of any statement contained in it or of the omission of a material fact shall be deemed knowledge of the publication and of the falsity of any untrue statement in it or of the omission of material facts.*

> *(D) No action brought against any director, based upon the liability imposed by this section, shall be brought unless it is brought within two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or the director were unlawful, or within five years after the purchase of the securities, whichever is the shorter period, or, in the case of an action to enforce a right of contribution under this section, the action is brought within two years after the payment of the judgment for which contribution is sought.*

106.    Defendants' actions also violated the provisions of the Ohio Revised Code at Section 1707.44, which provides:

\* \* \* \* \*

*(B) No person shall knowingly make or cause to be made any false representation concerning a material and relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes:*

*(1) Registering securities or transactions, or exempting securities or transactions from registration, under this chapter;*

*(2) Securing the qualification of any securities under this chapter;*

*(3) Procuring the licensing of any dealer, salesperson, investment adviser, investment adviser representative, bureau of workers' compensation chief investment officer, or state retirement system investment officer under this chapter;*

*(4) Selling any securities in this state;*

*(5) Advising for compensation, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities;*

*(6) Submitting a notice filing to the division under division (X) of section 1707.03 or section 1707.092 or 1707.141 of the Revised Code.*

\* \* \* \* \*

*(G) No person in purchasing or selling securities shall knowingly engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited.*

\* \* \* \* \*

*(J) No person, with purpose to deceive, shall make, issue, publish, or cause to be made, issued, or published any statement or advertisement as to the value of securities, or as to alleged facts affecting the value of securities, or as to the financial condition of any issuer of securities, when the person knows that the statement or advertisement is false in any material respect.*

* * * * *

*(L) No dealer shall engage in any act that violates the provisions
of section 15(c) or 15(g) of the "Securities Exchange Act of 1934,"
48 Stat. 881, 15 U.S.C.A. 78o(c) or (g), or any rule or regulation
promulgated by the securities and exchange commission
thereunder.*

* * * * *

107.    Defendants violated the foregoing provisions by knowingly (a) misrepresenting the true financial information of the Company, (b) otherwise omitted/concealing the Company's rapidly deteriorating financial condition, (c) failing to disclose the extent of potential capital raising activity (i.e. taking on venture debt and/or additional equity capital) – or extent that such activity may be necessary/desired less than a year after Plaintiff purchased its stock in the Company.

108.    As stated with specificity above, each of the Defendants herein engaged in material omissions and material misrepresentations of material facts, including by knowingly (a) misrepresenting the true financial information of the Company, (b) omitting and concealing the Company's rapidly deteriorating financial condition and performance projections, and (c) failing to disclose the extent of anticipated capital raising activity (i.e. taking on venture debt and/or additional equity capital) or the extent to which such activity may be necessary less than a year after Plaintiff purchased its stock in the Company.

109.    Given the extent of the Individual Defendants' respective roles with the Company, and their actions on its behalf, Defendants knowingly made the above-stated material false statements and/or omissions of material fact.

110.    Plaintiff justifiably relied as a reasonable investor upon Defendants' material false statements and/or omissions of material fact, which proximately caused the Plaintiff's damages.

111.    Based upon the foregoing, Plaintiff has suffered substantial monetary damages regarding the entire, or at least the vast majority, of the value of Plaintiff's shares in the Company.

112.    As a result, the Defendants' fraudulent conduct entitles Plaintiff to restitution of the purchase price paid for the Company's stock, rescission of the Common Stock Purchase Agreement, and an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, all of which Plaintiff hereby pursues as relief.

113.    Alternatively, and at a minimum, Plaintiff is entitled to the difference between the price it paid for Company stock and the true value of that common stock at the time of purchase transaction under the Agreement and/or the current value of such stock.

**WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

## COUNT III
### CLAIM OF COMMON LAW FRAUD
### (AGAINST ALL DEFENDANTS)

114.    Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

115.    As alleged herein above, the Defendants misrepresented, omitted, and concealed material facts as set forth above, in conflict with their duties to disclose arising from the NDA and their inaccurate and incomplete statements, and with the intent of causing Plaintiff to rely upon their misrepresentations, omissions, and concealments.

116.    As stated with specificity above, each of the Defendants herein engaged in material omissions and material misrepresentations of facts, including by knowingly (a) misrepresenting the true financial information of the Company, (b) omitting and concealing the Company's rapidly deteriorating financial condition and performance projections, and (c) failing to disclose the extent of anticipated capital raising activity (i.e. taking on venture debt and/or additional equity capital) or the extent to which such activity may be necessary less than a year after Plaintiff purchased its stock in the Company.

117.    Plaintiff justifiably relied upon the statements and communications of the Defendants made to Plaintiff through the date of the Agreement and thereafter, particularly in light of the Defendants' positions of superior knowledge, authority, and control over the Company and its financial reporting and disclosures, including to Plaintiff.

118.    Plaintiff had no knowledge of, nor way of knowing, the accuracy and truthfulness of the information that the Defendants provided to Plaintiff beyond the assurances and disclosures which Defendants represented to them.

119.    In direct and foreseeable reliance upon the disclosures and omissions of the Defendants, Plaintiff was induced to fund the acquisition of Company stock, sign the Common Stock Purchase Agreement, and close on the stock purchase transaction.

120.    As a proximate result of Plaintiff's justifiable reliance upon the Defendants' misrepresentations and concealments, Plaintiff paid a purchase price for the stock under the Agreement that was unsupported given the inaccuracy of the information provided to Plaintiff, and Plaintiff lost the value of the purchase price and the lost opportunities associated with its participation in the stock sale transaction.

121.    The Defendants committed their acts of fraud maliciously and in reckless disregard for the injuries they caused Plaintiff to suffer, as a result of which Plaintiff is entitled to recover punitive damages and reasonable attorney's fees.

122.    As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages, including through the rescission of Plaintiff's stock purchase in the Company, restitution of the purchase price to Plaintiff, an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, and/or the difference between the price Plaintiff paid and the true value of the common stock of the Company at the time of the stock purchase.

123.    **WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

124.    Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

125.    As a result of their special relationship developed in the course of the transaction, including in connection with the NDA by which the Company was to provide information specifically through the Individual Defendants to facilitate the transaction, the Defendants owed a duty to use reasonable care to provide Plaintiff with accurate and truthful information and not to omit, misrepresent, or fail to correct such information.

- 35 -

126. Pursuant to this duty Defendants were required to use reasonable care to include, and not omit, information about the Company and its true financial condition and projections, the Company's deteriorating financial condition, the factual accuracy of the growth model and projections that were represented to Plaintiff, and the extent and necessity of the Company's anticipated capital raising activity (i.e. taking on venture debt and/or additional equity capital).

127. The Defendants were negligent and breached their duties to use reasonable care to provide to Plaintiff, and not omit, accurate and truthful material information about the Company including the information reference herein above, including by failing to honor their duties to Plaintiff and by not exercising reasonable care in obtaining and/or communicating information they knew was material to Plaintiff's decision to purchase Company stock.

128. Plaintiff justifiably relied upon the statements and communications of the Defendants made to Plaintiff through the date of the Agreement and thereafter, particularly in light of the Defendants' positions of superior knowledge, authority, and control over the Company and its financial reporting and disclosures, including to Plaintiff.

129. Plaintiff had no knowledge of, nor way of knowing, the accuracy and truthfulness of the information that the Defendants provided to Plaintiff beyond the assurances and disclosures which Defendants represented to them.

130. In direct and foreseeable reliance upon the disclosures and omissions of the Defendants, Plaintiff was induced to fund the acquisition of Company stock, sign the Common Stock Purchase Agreement, and close on the stock purchase transaction.

131. As a result of Defendant's inducement, Plaintiffs paid the purchase price for the stock under the Agreement that was unsupported given the inaccuracy of the information provided to Plaintiff, and Plaintiff has lost value equivalent to the purchase price, and lost

opportunities associated with its participation in the stock sale transaction, as a proximate result of Plaintiff's justifiable reliance upon the Defendants' misrepresentations and concealments.

132. As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages, including through the rescission of Plaintiff's stock purchase in the Company, restitution of the purchase price to Plaintiff, an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, and/or the difference between the price Plaintiff paid and the true value of the common stock of the Company at the time of the stock purchase.

133. **WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

## COUNT V
### CLAIM OF CIVIL CONSPIRACY
### (AGAINST THE INDIVIDUAL DEFENDANTS)

134. Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

135. The Individual Defendants, through their independent conduct and their control of the Company, combined and agreed between them to engage in concerted action and through an improper scheme and practice designed to defraud and induce Plaintiff to sign the Common Stock Purchase Agreement and to purchase shares of the Company.

136. In doing so, the Individual Defendants conspired, agreed, engaged, and overtly acted with a common purpose to commit the improper and unlawful acts alleged in the remaining claims stated herein (including federal and state statutory fraud, common law fraud and negligent

misrepresentation, and breach of fiduciary duty and contract) and through the unlawful means and for the unlawful purposes alleged herein.

137. The Individual Defendants, through their independent conduct and their control of the Company, willfully, maliciously, and with reckless indifference caused harm to Plaintiff, including damage in the form of its fraudulent induced investment in the Company; and, accordingly, the Defendants' conduct was outrageous and warrants and award of compensatory and punitive damages.

138. As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages, including through the rescission of Plaintiff's stock purchase in the Company, restitution of the purchase price to Plaintiff, an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, and/or the difference between the price Plaintiff paid and the true value of the common stock of the Company at the time of the stock purchase.

WHEREFORE, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY**
**(AGAINST THE INDIVIDUAL DEFENDANTS)**

139. Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

140. Plaintiff brings this claim as a shareholder for the Individual Defendants' breach of their fiduciary duties owed to the Company and resulting from their provision of false and

inaccurate information on behalf of the Company but in the furtherance of their individual sales of Company stock and, thereby, exposing the Company to the legal violations and liabilities alleged herein.

141.    By virtue of their positions as members of the Company's Board of Directors and/or officers of the Company, the Individual Defendants owed fiduciary duties to the Company (including, without limitation, duties of due care, good faith, loyalty, and honesty) at all times material hereto and particularly during and after the sale of the Company's stock to Plaintiff.

142.    Given the above, the Individual Defendants also owed fiduciary duties to fully and fairly provide all material information to Plaintiff regarding the Company within their control and so as to avoid exposing the Company to liability to Plaintiff as alleged herein.

143.    The Individual Defendants breached those duties through their actions and omissions alleged herein above, without limitation, by failing to use due care to conduct the Company's business in an honest manner and in conformity with its legal and contractual duties, failing to act in good faith in the course of the Company's interactions with Plaintiff, failing to act in a manner loyal to the Company in pursuing a fraudulently induced sale of the Company's stock to Plaintiff, and failing to act in an honest manner in their dealings with the Company, with its third party principals or employees, or with Plaintiff.

144.    The Individual Defendants acted contrary to their fiduciary duties to the Company when they provided materially inaccurate and/or incomplete financial information to Plaintiff as set forth above and exposed the Company to resulting liability.

145.    Notably, the Individual Defendants breached their duties for their own personal benefit and acted improperly to enrich themselves at the expense of Plaintiff and in breach of

their duties of due care and loyalty to the Company; and, as a result, the Individual Defendants have the burden to prove the entire fairness of their transactions, actions, and omissions.

146. Since the Individual Defendants controlled the Company at all relevant times, the Individual Defendants had a material conflict of interest and were not independent of others who had material conflicts of interest; and, accordingly, the Individual Defendants have the burden to prove the entire fairness of their actions and omissions.

147. To the extent that this claim for the Individual Defendants' breach of their fiduciary duties to the Company would otherwise require Plaintiff or other investors to make demand for suit upon the managers, officers, or directors of the Company, such demand has been made, is futile because demand would be made on the Defendants themselves, or is unrequired due to the participation of the Company in these proceedings.

148. Specifically, the Individual Defendants are comprised of the Company's President/CEO and board member (Defendant A. Nielsen), the Company's Chief Revenue Officer and board member (Defendant J. Nielsen), and the Company's Chief Operating Officer and, upon information, board member (Defendant Reynolds).

149. Together with the Nielsen's brother Chip Nielsen, who was also identified in the NDA and, upon information, was a board member, it is believed that the Individual Defendants and Nielsen brothers had sufficient and insurmountable control and authority, as members of the board and management, to render any demand by Plaintiff for a Company suit against them futile, including as to this claim for breach of fiduciary duty.

150. As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages, including through the rescission of Plaintiff's stock purchase in the Company, restitution of the purchase price to Plaintiff, an award of the expected value of Plaintiff's shares

fraudulently projected by the Defendants in the course of their fraudulent acts, and/or the difference between the price Plaintiff paid and the true value of the common stock of the Company at the time of the stock purchase.

**WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

**COUNT VII**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(AGAINST THE INDIVIDUAL DEFENDANTS)**

151. Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

152. By virtue of their positions as members of the Company's Board, and/or officers of the Company, the Individual Defendants owed fiduciary duties as set forth and alleged herein above.

153. The Individual Defendants acted contrary to and breached their fiduciary duties as set forth herein above.

154. Each of the Individual Defendants knowingly aided and abetted and/or directed the other Individual Defendants to breach their fiduciary duties to the Company.

155. Plaintiff suffered monetary damages as the result of the Individual Defendants' aiding and abetting of the breach of fiduciary duties owed to the Company by the other Individual Defendants.

156.    As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages, including through the rescission of Plaintiff's stock purchase in the Company, restitution of the purchase price to Plaintiff, an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, and/or the difference between the price Plaintiff paid and the true value of the common stock of the Company at the time of the stock purchase.

**WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, compensatory, punitive or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

**COUNT VIII**
**BREACH OF CONTRACT**
**(AGAINST THE INDIVIDUAL DEFENDANTS)**

157.    Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

158.    Pursuant to the terms of the Agreement, the Individual Defendants made various representations and warranties without which Plaintiff would not have entered into the Agreement.  These included, without limitation, that (a) "the consummation of the transactions contemplated" by the Agreement would not "violate any constitution, statute, regulation, rule, … or other restriction of any government, governmental agency, or court to which such Seller is subject" and (b) "[t]o each [of their] knowledge, since October 19, 2016, there has not been a material adverse effect on the business of the Company."  *See* Exhibit A (Agreement).

159. Plaintiff performed all of the material terms of the Agreement, including payment of the full purchase price required, but the Individual Defendants breached the aforementioned representations and warranties, without limitation, as alleged herein.

160. The Individual Defendants breached the terms of the Agreement including, *inter alia*, by (a) the violation of the Securities Exchange Act and Rule 10b-5 promulgated thereunder resulting from the Defendants' collective failure to make true, accurate, and complete disclosures of material information as alleged herein above and (b) their failure to disclose to Plaintiff various material adverse effects on the business of the Company resulting in the actual financial losses in 2016 and resulting actions undertaken thereafter as set forth herein above.

161. Plaintiff has suffered monetary damages as the result of the foregoing breaches of the Agreement for which it is entitled to relief in the form of contractual remedies including consequential damages, the rescission of Plaintiff's stock purchase in the Company, restitution of the purchase price to Plaintiff, an award of the expected value of Plaintiff's shares fraudulently projected by the Defendants in the course of their fraudulent acts, and/or the difference between the price Plaintiff paid and the true value of the common stock of the Company at the time of the stock purchase.

**WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available loss, expectation, restitution, rescission, consequential, or other damages, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

## COUNT IX
### UNJUST ENRICHMENT - IN THE ALTERNATIVE
### (AGAINST ALL DEFENDANTS)

162. Plaintiff repeats and re-alleges the preceding and subsequent allegations as if fully set forth herein.

163. In the alternative to the above counts, and in the event that this Court were to determine that no contract or contracts exist between Plaintiff and any one or more of the Defendants, Plaintiff brings a cause of action of quantum meruit / unjust enrichment against all Defendants.

164. Plaintiff's payment and contributions, most notably Plaintiff's contribution of substantial funds purportedly in exchange for common stock of the Company valued as fraudulently represented by the Defendants, have enriched the Defendants.

165. Due to Defendants' actions and omissions described above, Plaintiff paid money for the purchase of its common stock in the Company in an amount that was unsupported by the consideration received from the Individual Defendants or as described and disclosed by the statements and representations of the Individual Defendants or of the Company.

166. Defendants have retained such benefits conferred by Plaintiff without justification in the form of the money paid for the stock and the stock price support and diversification purportedly substantiated thereby.

167. Should any of the above claims not provide an adequate remedy at law, then Plaintiff is entitled to relief pursuant to this claim in equity for the unjust enrichment of the Defendants as a result of the foregoing facts and occurrences.

168. It would be inequitable and unconscionable for Defendants to retain the benefit of the funds Plaintiff provided to them, warranting an award to Plaintiff of all value conferred.

**WHEREFORE**, Plaintiff Light EBTH LLC respectfully requests that this Court enter judgment against EBTH Inc. and the Individual Defendants for an amount in excess of $75,000 for all available unjust enrichment, attorney's fees, interest and costs, and such other relief as the Court deems just and proper.

## JURY DEMAND

A trial by jury is hereby demanded on all claims and issues so triable.


Respectfully submitted,

CLARK HILL PLC


 /s/ Peter K. Blume
Anthony A. Agosta, Esq.
500 Woodward Avenue
Suite 3500
Detroit, MI  48226
(313) 965-8300

Peter K. Blume, Esq.
*Admitted Pro Hac Vice*
J. Alexander Hershey, Esq.
*Pro Hac Vice To Be Forthcoming*
One Oxford Centre
301 Grant St., 14th Floor
Pittsburgh, PA 15219
(412) 394-7711

*Counsel for Plaintiff*
*Light EBTH LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2019, a true and accurate copy of the foregoing

First Amended Complaint was filed and served via the Court's CM/ECF System.


/s/ Peter K. Blume