**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LIGHT EBTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-00011-TSB |
| | ) | |
| v. | ) | |
| | ) | Hon. Timothy S. Black |
| EBTH INC., ANDREW C. NIELSEN, | ) | |
| JONATHAN C. NIELSEN and MICHAEL J. | ) | |
| REYNOLDS, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION OF DEFENDANTS ANDREW C. NIELSEN, JONATHAN C. NIELSEN AND**
**MICHAEL J. REYNOLDS TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds, by and

through their undersigned counsel, hereby respectfully move this Court for entry of an order

dismissing the claims asserted against them in Light EBTH's First Amended Complaint, in their

entirety and with prejudice, pursuant to the relevant provisions of the Private Securities

Litigation Reform Act, 15 U.S.C. § 78u-4, *et seq.*, and Federal Rules of Civil Procedure 9(b) and

12(b)(6). The grounds for this motion are more fully set forth in the attached memorandum of

law.

Dated: July 1, 2019

Respectfully submitted,

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein
joe.weinstein@squirepb.com
Sean L. McGrane
sean.mcgrane@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

Scott A. Kane
scott.kane@squirepb.com
Jennifer L. Dollard-Smith
jennifer.dollard-smith@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Tel: (513) 361 1200
Fax: (513) 361 1201

*Attorneys for Defendants Andrew C. Nielsen,
Jonathan C. Nielsen and Michael J. Reynolds*

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LIGHT EBTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-00011-TSB |
| | ) | |
| v. | ) | |
| | ) | Hon. Timothy S. Black |
| EBTH INC., ANDREW C. NIELSEN, | ) | |
| JONATHAN C. NIELSEN and MICHAEL J. | ) | |
| REYNOLDS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## DEFENDANTS ANDREW C. NIELSEN, JONATHAN C. NIELSEN AND
## <u>MICHAEL J. REYNOLDS TO DISMISS THE FIRST AMENDED COMPLAINT</u>

Joseph C. Weinstein
joe.weinstein@squirepb.com
Sean L. McGrane
sean.mcgrane@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

Scott A. Kane
scott.kane@squirepb.com
Jennifer L. Dollard-Smith
jennifer.dollard-smith@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Tel: (513) 361 1200
Fax: (513) 361 1201

*Attorneys for Defendants Andrew C. Nielsen,*
*Jonathan C. Nielsen and Michael J. Reynolds*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

SUMMARY OF ARGUMENTS ............................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND..............................................................4

     A.    Factual Background...............................................................................................4

     B.    Procedural Background .........................................................................................7

LAW & ARGUMENT...........................................................................................................8

I.     LIGHT FAILS TO SATISFY THE HEIGHTENED PLEADING STANDARDS
     OF THE PSLRA .........................................................................................................8

     A.    No material information was omitted prior to the sale...........................................9

     B.    The alleged omissions were not material ...............................................................9

     C.    Light does not adequately plead actionable false or misleading statements ........11

          1.    Defendants Reynolds and Jonathan Nielsen are not alleged to have
              made any representations to Light ...........................................................11

          2.    Light also fails to allege any actionable false or misleading
              statements by Andrew Nielsen..................................................................13
              a.    The "pitch deck" sent on December 3, 2016 ...............................13
              b.    December 10, 2016 email ............................................................16
               c.    December 19 Email......................................................................17
              d.    January 3 email ...........................................................................18
               e.    July 24 Letter and the "Down Round" .......................................19

     D.    Light fails to plead scienter with particularity .....................................................20

          1.    Light fails to plead scienter with respect to the financial
              information provided to it before closing.................................................21
              a.    The October "reforecast" ............................................................21
               b.    Other Financial Information........................................................22

          2.    Light has not alleged scienter with respect to the "down round." ..........22

**TABLE OF CONTENTS**
(continued)

**Page**

E.      Light fails to adequately plead loss causation......................................................23

II.     LIGHT FAILS TO STATE A CLAIM UNDER BOTH THE DELAWARE
SECURITIES ACT AND THE OHIO SECURITIES ACT ...........................................24

A.      Delaware Securities Act .................................................................................24

B.      Ohio Securities Act.........................................................................................25

III.    LIGHT'S REMAINING COMMON LAW CLAIMS FAIL AS A MATTER OF
LAW .........................................................................................................................27

A.      Light fails to state a claim for fraud under Rules 9(b) and 12(b)(6)....................27

B.      Light fails to state a claim for negligent misrepresentation................................28

C.      Light fails to state a claim for civil conspiracy ..................................................29

D.      Light fails to state a claim for breach of fiduciary duty .....................................29

E.      Light's claim for aiding and abetting a breach of fiduciary duty fails.................30

F.      Light's breach of contract claim fails ................................................................31

G.      Light fails to state a claim for unjust enrichment...............................................32

CONCLUSION..............................................................................................................33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Antonelli College*,
304 F. Supp. 3d 656, 667 (S.D. Ohio 2018) ...................................................................... 3, 28

*Albert Fadem Trust v. Am. Elec. Power Co.*,
334 F. Supp. 2d 985 (S.D. Ohio Sept. 10, 2004) ........................................................ 11, 12, 20

*Andersons, Inc. v. Consol, Inc.*,
348 F.3d 496 (6th Cir. 2003) ............................................................................................ 28

*In re Bank of Am. AIG Disclosures Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013) ................................................................................ 19

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................................................................................ 12

*Beaver County Ret. Bd. v. LCA-Vision, Inc.*,
2009 U.S. Dist. LEXIS 31375 (S.D. Ohio Mar. 25, 2009) ............................................... 14, 15

*Bihn v. Fifth Third Mortg. Co.*,
980 F. Supp. 2d 892 (S.D. Ohio 2013) ............................................................................... 32

*Borden v. Antonelli College*,
2017 U.S. Dist. LEXIS 9667 (S.D. Ohio Jan. 24, 2017) ...................................................... 6

*Bridgeforth v. Dave*,
2010 U.S. Dist. LEXIS 104105 (D. Del. Sept. 28, 2010) ...................................................... 31

*Cellular South, Inc. v. J.P. Morgan Sec., Inc. (In re JP Morgan Auction Rate Sec.*
*(ARS) Mktg. Litig.)*,
2014 U.S. Dist. LEXIS 141022 (S.D.N.Y. Sept. 30, 2014) ................................................... 21

*Cohen v. Dulay*,
2017-Ohio-6973 (9th App. Dist. 2017) ................................................................................ 30

*Concheck v. Barcroft*,
2011 U.S. Dist. LEXIS 88964 (S.D. Ohio Aug. 3, 2011) ...................................................... 27

*Darby v. Century Bus. Servs.*,
96 Fed. Appx. 277 (6th Cir. 2004) ....................................................................................... 8

*Davisson v. Ford Motor Co.*,
2014 U.S. Dist. LEXIS 122673 (S.D. Ohio Sept. 3, 2014) .................................................... 27

*DeVries Dairy, LLC v. White Eagle Cooperative Association, Inc.*,
132 Ohio St. 3d 516 (2012) ...................................................................................... 4, 30

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) ............................................................................. 2, 20, 21

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ...................................................................................................... 24

*Eastham v. Appalachia*,
2013 U.S. Dist. LEXIS 102846 (S.D. Ohio July 23, 2013) ......................................... 28

*In re Empyrean Bioscience, Inc. Sec. Litig.*,
255 F. Supp. 2d 751 (N.D. Ohio Feb. 26, 2003)........................................................... 14

*Escue v. Sequent, Inc.*,
2010 U.S. Dist. LEXIS 87043 (S.D. Ohio. Aug. 24, 2010) ......................................... 26

*Eves v. AIG, Inc.*,
2010 U.S. Dist. LEXIS 25403 (S.D. Ohio Feb. 22, 2010) ........................................... 31

*FdG Logistics LLC v. A&R Logistics Holdings, Inc.*,
131 A.3d 845 (Del. Ch. 2016) ................................................................................... 3, 25

*Forman v. Meridian Bioscience, Inc.*,
2019 U.S. Dist. LEXIS 23120 (S.D. Ohio Feb. 13, 2019).................................... 9, 15, 16

*Gerber v. EPE Holdings, LLC*,
2013 Del. Ch. LEXIS 8 (Del. Ch. Jan. 18, 2013) ...................................................... 31

*Hoover v. Langston Equip. Assocs.*,
958 F.2d 742 (6th Cir. 1992) ...................................................................................... 13

*In re Huffy Corp. Secs. Litig.*,
577 F. Supp. 2d 968 (S.D. Ohio Sept. 17, 2008) ...................................................... 17

*In re Huntington Bancshares Secs. Litig.*,
674 F. Supp. 2d 951 (S.D. Ohio Dec. 4, 2009)........................................................... 20

*IBEW Local 697 Pension Fund v. Ltd. Brands, Inc.*,
788 F. Supp. 2d 609 (S.D. Ohio March 29, 2011) ....................................................... 8

*JAC Holding Ents., Inc. v. Atrium Capital Partners, LLC*,
997 F. Supp. 2d 710 (E.D. Mich. 2014) ..................................................................... 24

*Jiaxi Hu v. Chan*,
2016 U.S. Dist. LEXIS 107609 (S.D. Ohio Aug. 15, 2016) ...................................... 2, 12, 13

*JSMS Rural LP v. GMG Capital Partners, III, LP*,
2006 U.S. Dist. LEXIS 54104 (S.D.N.Y. Aug. 4, 2006) ....................................................... 23

*Kemp v. Universal Am. Fin. Corp.*,
2007 U.S. Dist. LEXIS 2162 (S.D.N.Y. Jan. 10, 2007) ......................................................... 8

*Kober v. Harrington*,
2018 U.S. Dist. LEXIS 110409 (N.D. Ohio July 2, 2018) ..................................................... 30

*La. Sch. Empls. Ret. Sys. v. Ernst & Young, LLP*,
622 F.3d 471 (6th Cir. 2010) .................................................................................................. 9

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) .................................................................................................. 23

*Ley v. Visteon Corp.*,
540 F.3d 376 (6th Cir. 2008) .................................................................................................. 9

*Local 295/Local 851 IBT Emplr. Grp. Pension Trust & Welfare Fund v. Fifth
Third Bank*,
731 F. Supp. 2d 689 (S.D. Ohio Aug. 10, 2010) ........................................................ 16, 17, 26

*Macurdy v. Sikov & Love, P.A.*,
894 F.2d 818 (6th Cir. 1990) ................................................................................................ 27

*Malone v. Brincat*,
722 A.2d 5 (Del. 1998) ......................................................................................................... 30

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .................................................................................................................. 9

*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir. 2000) ................................................................................................ 29

*Murphy v. Sofamor Danek Grp.*,
123 F.3d 394 (6th Cir. 1996) ........................................................................................... 11, 12

*In re Nat'l Century Fin. Enters., Inc.*,
905 F. Supp. 2d 814 (S.D. Ohio 2012) ................................................................................. 28

*Nicholson v. N-Viro Int'l Corp.*,
2007 U.S. Dist. LEXIS 76522 (N.D. Ohio Oct. 12, 2007) ................................................... 18

*Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*,
813 F. Supp. 2d 871 (S.D. Ohio 2011) ...................................................................... 3, 25, 26

*Panella v. Tesco Corp.*,
2019 U.S. Dist. LEXIS 65844 (S.D. Tex. March 29, 2019) ................................................. 10

*Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*,
    614 Fed. Appx. 237 (6th Cir. 2015) ............................................................... 14, 15

*Ramsey v. Receivables Performance Mgmt., LLC*,
    2019 U.S. Dist. LEXIS 12670 (S.D. Ohio Jan. 25, 2019)...................................... 6

*Raskin v. Birmingham Steel Corp.*,
    1990 Del. Ch. LEXIS 194 (Del. Ch. Dec. 4, 1990) ............................................. 30

*Reinglass v. Morgan Stanley Dean Witter*,
    2006-Ohio-1542 (8th App Dist. March 30, 2006) ............................................... 25

*Representaciones E Investigaciones Medicas, S.A. De C.V. v. Abdala*,
    2017 N.Y Misc. LEXIS 2929 (Sup. Ct. N.Y. July 31, 2017)................................. 31

*Ricker v. Zoo Entm't, Inc.*,
    2012 U.S. Dist. LEXIS 105418 (S.D. Ohio July 26, 2012) ..................................... 9

*Sacksteder v. Senney*,
    2012-Ohio-4452 (2d App. Dist. 2012)  ......................................................... 30, 31

*Sanders v. Devine*,
    1997 Del. Ch. LEXIS 131 (Del. Ch. Sept. 24, 1997)........................................ 4, 29

*In re Satyam Computer Servs. Sec. Litig.*,
    915 F. Supp. 2d 450 (S.D.N.Y. 2013) ............................................................... 22

*Shoemaker v. Murdock*,
    2019 U.S. Dist. LEXIS 13662 (S.D. Ohio Jan. 29, 2019)................................... 29

*In re Tangoe, Inc. Stockholders Litg.*,
    333 F. Supp. 3d 77, 103-04 (D. Conn. 2018) .................................................... 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................... 2, 8, 20

*Valente v. University of Dayton*,
    689 F. Supp. 2d 910 (S.D. Ohio 2010) ........................................................ 3, 29

*Van Roy v. Sakhr Software Co. (K.S.C.C.)*,
    2014 U.S. Dist. LEXIS 92068 (D. Del. July 8, 2014)......................................... 24

*Wuliger v. Mfrs. Life Ins. Co. (USA)*,
    567 F.3d 787 (6th Cir. 2009)............................................................. 4, 5, 6, 32

Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds (the "Individual Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the claims asserted against them in the First Amended Complaint, in their entirety and with prejudice.

## PRELIMINARY STATEMENT

Plaintiff Light EBTH, LLC ("Light") is an "accredited investor" as defined by the Securities and Exchange Commission's governing regulations.  Accredited investors are a class of high-worth, sophisticated investors who are permitted to purchase certain securities that involve "unique risks" and thus cannot be bought by the general public.

On January 9, 2017, Light and other accredited investors participated in a private securities transaction in which they purchased shares in Defendant EBTH, Inc. ("EBTH"), a Cincinnati-based start-up company that specializes in online estate sales.  Light's overarching claim, expressed through a number of theories of recovery, is that the Individual Defendants and EBTH defrauded it by failing to disclose that EBTH would suffer losses of over $25 million in 2016.  (*See, e.g.,* First Amended Complaint ("FAC") at ¶ 67.).  Light alleges it did not learn of these losses until January 10, 2017—one day after the stock purchase closed—and accuses the Defendants of omitting this information as part of a "knowing and deliberate scheme to induce [Light] to purchase Company stock . . . ."  (*Id.* at ¶ 70.)

What Light fails to disclose to the Court, however, is that Defendant Andrew Nielsen—in a January 3, 2017 email that is referenced throughout the First Amended Complaint, but not attached to it (but which can be considered by the Court)—provided Light with EBTH's then-most current financial information.  That information showed that EBTH had suffered net losses

of $25,142,004 through November 30, 2016.  *See* Ex. A.  That information was shared six days before the sale closed.

Thus, Andrew Nielsen disclosed to Light—before Light purchased the stock—the very information that Light now claims was fraudulently withheld from it.  **There was no fraud**. Plaintiff's First Amended Complaint should be dismissed, in its entirety and with prejudice.

## SUMMARY OF ARGUMENTS

- Count I of the First Amended Complaint, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), should be dismissed because Light fails to meet the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  As a threshold matter, the "omission" of $25.1 million in losses for EBTH for 2016 is immaterial and cannot serve as the basis for a securities fraud claim because these losses were actually disclosed to Light before it purchased the stock.  *See infra* at pp 9-10. Additionally, neither Jonathan Nielsen nor Michael Reynolds is alleged to have made any statements to Light, period, and thus cannot be liable under the securities laws.  *See infra* at pp. 11-12; *see also Jiaxi Hu v. Chan*, 2016 U.S. Dist. LEXIS 107609, at *15-16 (S.D. Ohio Aug. 15, 2016).  As to Andrew Nielsen, Light fails to plead with particularity (i) that any of the statements were false or misleading; (ii) that he acted with the requisite level of intent (scienter); or (iii) that any of the alleged false and misleading statements caused the value of Light's securities to decline.  For these separate and independent reasons, Count I should be dismissed.  *See infra* at pp. 13-24; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007); *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016).

- Count II for violations of the Delaware Securities Act and the Ohio Securities Act should be dismissed.  The Delaware Securities Act claim should be dismissed because, *inter alia*, Light

- 2 -

fails to allege the requisite nexus between the underlying securities transaction and the state of Delaware. *See infra* at pp. 24-25; *see also FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 845, 857 (Del. Ch. 2016). And the Ohio Securities Act claim (which is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)) should be dismissed because, among other things, (i) Light fails to allege any actionable misstatements or omissions made with fraudulent intent; (ii) Light fails to allege that the misstatements or omissions appeared in a "printed circular, prospectus or advertisement," as required to impose liability under O.R.C. § 1707.41(A); and (iii) Andrew Nielsen was not a "seller" under the Act. *See infra* at pp. 25-27; *see also Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 813 F. Supp. 2d 871, 878 (S.D. Ohio 2011).

- Count III for common law fraud fails under Rule 9(b) for the same reasons—no misstatements and no fraudulent intent. *See infra* at pp. 27-28. Additionally, Light cannot adequately plead reliance because it did not even exist until January 3, 2017—after the alleged misstatements and omissions were made. *See infra* at p. 28.

- Count IV for negligent misrepresentation should be dismissed because, under Ohio law, such claims can only be based on affirmative misstatements. They cannot be based on omissions of material fact, as alleged by Light here. *See infra* at pp. 28-29; *see also Adams v. Antonelli College*, 304 F. Supp. 3d 656, 667 (S.D. Ohio 2018).

- Count V for civil conspiracy also fails as a matter of law because (i) there is no well-pleaded underlying wrong upon which the claim can be based; and (ii) a corporation and its officers and directors cannot conspire between and among themselves under Ohio's "intra-corporate conspiracy" doctrine. *See infra* at p. 29; *see also Valente v. University of Dayton*, 689 F. Supp. 2d 910, 929 (S.D. Ohio 2010).

- Count VI for breach of fiduciary duty also fails: The Individual Defendants did not owe Light (which did not even exist) any fiduciary duties as a prospective stockholder. *See infra* at pp. 29-30; *see also Sanders v. Devine*, 1997 Del. Ch. LEXIS 131, at \*16 (Del. Ch. Sept. 24, 1997).

- Count VII for aiding and abetting a breach of fiduciary duty is likewise deficient because no such claim exists under Ohio law, and there was no underlying breach of fiduciary duty, in any event. *See infra* at pp. 30-31; *see also DeVries Dairy, LLC v. White Eagle Cooperative Association, Inc.*, 132 Ohio St. 3d 516 (2012).

- Count VIII for breach of contract should also be dismissed. Light alleges that the Individual Defendants breached the Common Stock Purchase Agreement by failing to disclose a "material adverse event"—but Light never actually pleads what this event was (and it could not have been the $25 million in losses suffered by EBTH in 2016, since that information was disclosed to Light prior to the sale). *See infra* at pp. 31-32. Additionally, Andrew Nielsen cannot be liable to EBTH for breach of contract because he did not sell Light any stock, and thus was not in privity with Light. *See id.*

- Finally, the throwaway claim for unjust enrichment (Count IX) should be dismissed because the subject of the dispute is governed by the express terms of a contract. *See infra* at p. 32; *see also Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. **Factual Background**

Defendant EBTH is a Delaware corporation based in Cincinnati, Ohio. (FAC at ¶ 3.) EBTH—an acronym for "Everything But The House"—is "the largest e-commerce marketplace for estate sales" and other online sales of personal, household property. (*Id.*)

Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds all reside in Cincinnati.  (*Id.* at ¶¶ 5, 7, 9.)  Andrew Nielsen is alleged to have served as EBTH's CEO between May 2012 and March 2018.  (*Id.* at ¶ 5.)  Jonathan Nielsen is alleged to have served as EBTH's Chief Revenue Officer from May 2012 through March 2017, and as its Chief Business Officer from March 2017 through May 2018.  (*Id.* at ¶ 7.)  Mr. Reynolds is alleged to have served as EBTH's Chief Financial Officer and/or its Chief Operating Officer between May 2012 and March 2018.  (*Id.* at ¶ 9.)  Each of the Individual Defendants also is alleged to have served on EBTH's board during certain time periods.  (*Id.* at ¶¶ 5-9.)

Plaintiff Light is a Delaware limited liability company managed by a Connecticut-based financial professional, Mark Sullivan.  (*Id.* at ¶ 2; ECF No. 23-1 at p. 20.)  Light was formed on January 3, 2017.  (ECF No. 20-1 at p. 4.)  Light self-identifies as an "accredited investor" under applicable Securities and Exchange Commission ("SEC") regulations.  (ECF No. 23-1 at ¶ 5(e).)  As described by the SEC, accredited investors are "financially sophisticated" and "able to fend for themselves."  Accordingly, accredited investors are allowed to participate in high risk securities offerings that involve "unique risks," which the general public is prohibited from participating in.[1]

In early 2017, five individuals—including each of the Individual Defendants—agreed to sell a certain number of EBTH shares to ten different accredited investors.  (ECF No. 23-1 (Common Stock Purchase Agreement).)  Light purchased (i) 328,581 EBTH shares from Mr. Reynolds, for $801,134.37, and (ii) 40,549 EBTH shares from Jonathan Nielsen, for $98,865.12.

---

[1] *See* SEC UPDATED INVESTOR BULLETIN: ACCREDITED INVESTORS, *available at* https://www.investor.gov/additional-resources/news-alerts/alerts-bulletins/updated-investor-bulletin-accredited-investors (last accessed July 1, 2019).

(ECF No. 23-1 at p. 21.) Light did not purchase any shares from Andrew Nielsen. (*Id.*) The remaining nine buyers collectively purchased 2.56 million shares of EBTH for approximately $6.24 million. (*Id.*) None of those other buyers has sued over the stock transaction.

The stock sale closed on or around January 9, 2017. (FAC at ¶ 51.) In the preceding weeks, Andrew Nielsen provided Mr. Sullivan and analysts employed by his investment firm with comprehensive updates regarding EBTH's actual financial performance and future projections. (*Id.* at ¶¶ 20-47.) Among other things, on January 3, 2017, Andrew Nielsen sent Mr. Sullivan and one of these analysts an email and an attached spreadsheet that disclosed that EBTH had suffered actual net losses of $25,142,004 through November 30, 2016. *See* Exhibit A at p. 3 & 4.[2]

Light incorrectly alleges in its First Amended Complaint that it only learned of EBTH's "true (and severely deteriorating) financial condition" one day after closing, on January 10, 2017. (*Id.* at ¶ 1; *see also* attached Exhibit B.) As shown above, however, Light actually had this information (including the fact of $25.1 million in losses in 2016) prior to purchasing the EBTH stock. The information it received on January 10 was thus not new—as evidenced by the fact that Light did <u>nothing</u> after receiving the information on January 10. It did not seek to rescind the stock purchase, which had closed only 24 hours earlier. It did not demand a refund of some

---

[2] The January 3 email and the attached spreadsheet are referenced by Light throughout the First Amended Complaint. *See, e.g.,* FAC at ¶¶ 45, 46, 47, 59, 60, 61, 62. Accordingly, the email and attachment are properly considered by this Court on the pending Motion to Dismiss. *See, e.g., Ramsey v. Receivables Performance Mgmt., LLC*, 2019 U.S. Dist. LEXIS 12670, at *164 (S.D. Ohio Jan. 25, 2019) (on motion to dismiss, courts may consider "documents incorporated into the complaint by reference"); *Borden v. Antonelli College*, 2017 U.S. Dist. LEXIS 9667, at *8 (S.D. Ohio Jan. 24, 2017) (Black, J.) ("The law provides several exceptions to the general rule that matters outside the pleadings are not to be considered on a Rule 12(b)(6) or Rule 12(c) motion. For example, if referred to in the complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.") (citations omitted).

or all of the purchase price. It did not bring a lawsuit, or accuse the Individual Defendants or EBTH of fraud. It did none of these things because it had the information **before** it closed the stock purchase. Instead, Light waited two years to sue, after the value of its shares apparently declined as a result of a "down-round" of financing in 2018.[3] The First Amended Complaint offers no explanation for this two-year delay, but the most plausible explanation is that the information was not omitted and did not cause any of Light's losses. This suit is nothing more than a pretext by Light—an accredited investor owned by financial professionals—to recoup some of its investment losses not caused by the transaction at issue.

B.    **Procedural Background**

Light filed its original complaint on January 3, 2019. (ECF No. 1.) The Individual Defendants filed a motion to dismiss on April 11, 2019. (ECF No. 19-20.) Among other things, the Individual Defendants argued for dismissal because (i) Light's claim for securities fraud was not supported by particularized factual allegations of falsity, scienter or loss causation, as is required under the PSLRA, and its state-law statutory securities fraud claims failed for similar reasons; (ii) Light's common law fraud claims failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); and (iii) Light's other common law claims failed as a matter of law.

Light did not oppose the Individual Defendants' motion to dismiss. Instead, Light effectively conceded the deficiencies in its original complaint and filed its First Amended Complaint on June 3, 2019. (ECF No. 23.) As explained more fully below, however, the First

---

[3] A "down round" is a financing in which the valuation of the issuing company at the time of the issuance is less than the valuation of the issuing company at the time of its most recent prior issuance. For example, if Company A is valued at $100 million at the time it issues shares on January 1, 2019, and is valued at $50 million at the time it issues shares on April 11, 2019, the second issuance is a "down round." Typically, a down round dilutes the value of the shares owned by the existing shareholders.

Amended Complaint suffers from precisely the same deficiencies as the original complaint— which deficiencies have not been cured (and cannot be cured) by Light. Accordingly, the First Amended Complaint should be dismissed in its entirety and with prejudice.

## LAW & ARGUMENT

## THE MOTION SHOULD BE GRANTED

I.      **Light fails to satisfy the heightened pleading standards of the PSLRA.**

Count I of the First Amended Complaint is for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. FAC at ¶¶ 90-102.[4] To state a claim for violations of Section 10(b), "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury [loss causation]." *Darby v. Century Bus. Servs.*, 96 Fed. Appx. 277, 280-81 (6th Cir. 2004).

This claim is governed by the PSLRA's heightened pleading standards. Congress prescribed these heightened standards to weed out frivolous, opportunistic securities fraud claims —where a sophisticated investor loses money in the ordinary course of business, and then attempts to manufacture a securities fraud claim in order to recoup some or all of its losses. *See Tellabs,* 551 U.S. at 313 (2007); *see also Kemp v. Universal Am. Fin. Corp.*, 2007 U.S. Dist. LEXIS 2162, at *26 (S.D.N.Y. Jan. 10, 2007) ("Congress enacted the PSLRA to weed out frivolous lawsuits brought by unlucky or unwise investors looking for someone to blame."). The heightened pleading standards require Light to plead underlined particularized facts showing both (i)

---

[4] A claim under Section 20(a) is "derivative" in nature and should be dismissed where (as here) the primary claim under Section 10(b) also fails. *See, e.g., IBEW Local 697 Pension Fund v. Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 636 (S.D. Ohio March 29, 2011). Thus, because Light's claim under Section 10(b) fails for all of the reasons stated herein, so too does the claim under Section 20(a).

- 8 -

actionable, material false or misleading statements and (ii) that the defendant acted with "scienter, *i.e.,* the defendant's intention to deceive, manipulate or defraud." *Ley v. Visteon Corp.*, 540 F.3d 376, 381 (6th Cir. 2008) (internal citations omitted); *see also Ricker v. Zoo Entm't, Inc.*, 2012 U.S. Dist. LEXIS 105418, *7-8 (S.D. Ohio July 26, 2012) ("[W]hen a plaintiff pleads securities fraud, the complaint is subjected to heightened scrutiny.").

In addition to the PSLRA, Light's claims for securities fraud are also subject to Federal Rule of Civil Procedure 9(b), which requires the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *La. Sch. Empls. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010).

### A.    **No material information was omitted prior to the sale.**

The January 3, 2017 email and spreadsheet sent by Andrew Nielsen to Mr. Sullivan and others six days before the sale closed contains all the material financial information that Light claims was omitted. *See* Ex. A. Both the Income Statement and Balance Sheet sent on January 3, 2017 show actual losses of $25.1 million for EBTH through November 30, 2016. *Id.* at p. 3 & 4. Light had this information before it purchased the EBTH stock and cannot credibly identify any other financial information that would have in any way altered its decision to purchase. There was no fraud.

### B.    **The alleged omissions were not material.**

In order to state a claim for securities fraud based on an omission of fact, the omitted fact must be material. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). The "materiality requirement" is only satisfied "when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Id.* at 38 (internal citations omitted); *see also*

- 9 -

*Forman v. Meridian Bioscience, Inc.*, 2019 U.S. Dist. LEXIS 23120, at *29-30 (S.D. Ohio Feb. 13, 2019).

Light tries to manufacture a securities fraud claim by alleging that Andrew Nielsen failed to disclose "reforecasted" financial projections created in October 2016, which projected net losses of $25,098,245 for 2016. FAC at ¶¶ 65-67, 70. But Light undisputedly knew on January 3, 2017—six days before closing—that EBTH had suffered <u>actual net losses</u> of $25,142,004 through November 30, 2016. *See* Exhibit A. The October 2016 projections had been superseded by actual results—and Light had those actual results before it closed on the stock sale. Since Light had these actual results, the October 2016 projections were immaterial, as they could not alter the "total mix of information" available to Light. *See, e.g., Panella v. Tesco Corp.*, 2019 U.S. Dist. LEXIS 65844, at *11 (S.D. Tex. March 29, 2019) (granting motion to dismiss where "[p]laintiffs complaint furnishes no basis to plausibly conclude that [] financial projections. . . were substantially likely to have been viewed by reasonable investors as having significantly altered the total mix of information….").

The other alleged "omissions" are immaterial for precisely the same reasons. Light alleges that a spreadsheet it received on January 10, 2017 (after closing) contained additional financial information beyond what was included in the spreadsheet it received on January 3, 2017 (before closing). FAC at ¶¶ 59-62. Specifically, Light alleges that the January 10 spreadsheet (attached hereto as Exhibit B) contained a "comparison" of actual financial results through November 2016 against projected results through November 2016. The "comparison" showed actual losses through November 2016 in an amount of approximately $25.1 million, and projected losses for 2016 in an amount of approximately $25.1 million. Since the actual losses (which Light had before closing) were essentially identical to the projected losses (which Light

- 10 -

claims to have received in the "comparison" table), Light cannot plausibly allege that the projections would have been in any way material to its decision to purchase stock. In reality, Light has cherry-picked this comparison and other immaterial financial information and tried to manufacture a hindsight securities fraud violation based on its "omission"—but this is not a permissible theory of recovery under the PSLRA. *See, e.g, Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1020 (S.D. Ohio Sept. 10, 2004) (dismissing claims where plaintiff failed to plausibly allege that "the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available").

Because Light has not alleged any <u>material</u> misstatements or omissions, its federal securities fraud claims against each of the Individual Defendants should be dismissed.

C.      **Light does not adequately plead actionable false or misleading statements.**

Not only has Light failed to plead materiality—it has failed to even plead with particularity an actionable false or misleading statement, and its claims should be dismissed for this separate and independent reason. In order to satisfy this first and most basic element of a securities fraud claim, Light must plead with particularity either (1) an affirmative representation that is materially false or misleading or (2) an omission of material fact that the defendant was under a duty to disclose. *See Murphy v. Sofamor Danek Grp.*, 123 F.3d 394, 400 (6th Cir. 1996). Light must also "specify the reason or reasons" the representation or omission is false and misleading. 15 U.S.C. § 78u-4(b)(1)(B).

1.      **Defendants Reynolds and Jonathan Nielsen are not alleged to have made any representations to Light.**

The thrust of Light's claims is that the financial information it received between December 1, 2016 and January 3, 2017, was misleading. But neither Defendant Reynolds nor

- 11 -

Jonathan Nielsen is alleged to have communicated any of this financial information to Light or made any other representations to Light; they were silent as to Light. *See* FAC at ¶¶ 20-56.

As the United States Supreme Court has explained, "silence" cannot be "misleading under Rule 10b-5" unless the defendant had an affirmative duty to disclose information to the plaintiff. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *see also Murphy*, 123 F.3d at 400 ("Before liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure."). Affirmative duties of disclosure under the securities laws are narrow and arise only where: (i) the duty is created by statute or SEC rule; (ii) the defendant is bound to disclose the fact that he or she is engaging in insider trading; or (iii) the undisclosed information must be disclosed in order to render a prior affirmative statement by the defendant not materially false or misleading. *Albert Fadem*, 334 F. Supp. 2d at 1004.

Here, Light has not plausibly alleged that Mr. Reynolds or Jonathan Nielsen owed it any affirmative duty of disclosure—and, as a matter of law, they did not. Light alleges that a Non-Disclosure Agreement ("NDA") entered into between EBTH and Light imposed some individual duty of disclosure on Mr. Reynolds and Jonathan Nielsen. *See* FAC at ¶ 95. But the NDA (attached to the First Amended Complaint as Exhibit D, ECF No. 23-4) says nothing about any duties of disclosure; instead, the NDA simply obliges Light to keep confidential any material non-public information that it received from EBTH in advance of the sale. Light's conclusory allegation that the NDA imposes some affirmative duty of disclosure is unsupported by the plain text of the NDA and therefore implausible. Nor was Mr. Reynolds or Jonathan Nielsen under any other affirmative duty of disclosure. Accordingly, the securities fraud claims against them should be dismissed, in full, for failure to allege that they made any actionable false or misleading statements or omissions of fact. *See Jiaxi*, 2016 U.S. Dist. LEXIS 107609, at *15-16

- 12 -

(dismissing securities fraud claims where complaint failed to identify "any fraudulent statements made" by certain defendants).

> 2. **Light also fails to allege any actionable false or misleading statements by Andrew Nielsen.**

In the weeks preceding the stock sale, investment analysts working at the direction of Mark Sullivan (Light's principal) regularly requested and received financial information regarding EBTH from Defendant Andrew Nielsen.  *See* FAC at ¶¶ 20, 24; *see also* ECF No. 20-1, p. 6.   Light now alleges that Andrew Nielsen made certain misstatements or omissions in these pre-closing communications.  None, however, is actionable under the PSLRA—most were "forward-looking" projections that are insulated from liability under the PSLRA, or are otherwise not actionable under the federal securities laws.

> a. **The "pitch deck" sent on December 3, 2016**

Light alleges that it received a "pitch deck" containing certain financial projections from "the Individual Defendants" on December 3, 2016, without specifying which Defendants sent the pitch deck or made statements therein.  FAC at ¶ 20.  The Sixth Circuit has held that this type of "group pleading" is insufficient to state a claim for securities fraud—to avoid dismissal, Light would have had to identify the specific speaker, rather than simply "group" the defendants together.  *See Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992) (dismissing claims where complaint "alleges misrepresentations without sufficiently identifying which defendants made them"); *see also Jiaxi*, 2016 U.S. Dist. LEXIS 107609, at \*16 ("The complaint's generalized allegations as to the  . . . identity of the speaker . . .  are insufficient to meet the requirements of Rule 9(b).").  Thus, any statements in the pitch deck are not actionable under the federal securities laws because they are attributed generically to the "Individual Defendants," and not to any specific individual.

- 13 -

Even assuming that the "pitch deck" could be attributed to Andrew Nielsen, it cannot give rise to liability under the PSLRA. The PSLRA contains a safe harbor provision that insulates forward-looking statements from liability under the securities laws. 15 U.S.C. § 78u-5(i)(1). As the Sixth Circuit has held, this safe harbor encompasses forward-looking "projections of revenues, income, and earnings-per-share; statements concerning a company's future economic performance; and statements about the assumptions underlying forward-looking statements." *Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 Fed. Appx. 237, 242 (6th Cir. 2015). If a forward-looking statement is accompanied by "meaningful cautionary" statements about the projections and the potential for actual results to differ, then the speaker "is immune from liability and state of mind is irrelevant." *Beaver County Ret. Bd. v. LCA-Vision, Inc.*, 2009 U.S. Dist. LEXIS 31375, at *31-32 (S.D. Ohio Mar. 25, 2009). "If the statement is not accompanied by meaningful cautionary language, the plaintiff must allege specific facts giving rise to a strong inference that the misleading statement was made with actual knowledge that the statement was misleading." *Id.* (emphasis added). The statement or omitted fact must also be material. *In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp. 2d 751, 765 (N.D. Ohio Feb. 26, 2003).

Light (again) does not attach the "pitch deck" to its First Amended Complaint, and instead excerpts only a small portion. FAC at ¶ 20. Accordingly, it is not clear from the First Amended Complaint whether Andrew Nielsen even represented that the projections were current as of December 3, 2016. In any event, Light alleges that the projections were misleading because EBTH had projected losses of $25 million in October 2016—larger than the $18 million projected for 2016 in the pitch deck. FAC at ¶¶ 20, 63.

Light's allegations, however, are insufficient to overcome the broad protections of the

safe harbor for at least three reasons.  First, although Light excerpts only a small portion of the pitch deck, even the excerpted portion shows that the pitch deck was accompanied by cautionary language sufficient to warn an investor (and especially a sophisticated investor like Light) that the projected losses were in fact projections; indeed, they are clearly identified as projections ("2016 Projected" and "2017 Projected").  Moreover, the NDA provided to Light on December 1, 2016 (before the "pitch deck" was sent) also contained meaningful cautionary language governing all future information to be shared with Light: "All estimates or projections with respect to the Company's future performance included within the Confidential Information . . . are not to be relied upon as a representation or assurance of future results."  *See* ECF No. 23-4 at ¶ 2.  Accordingly, the projections in the pitch deck (and all subsequent projections) are not actionable and are "immune from liability."  *See Beaver County,* 2009 U.S. Dist. LEXIS 31375 at *31-32.

Second, even if the pitch deck and NDA did not include meaningful cautionary language, the pitch deck projections are still not actionable because Light has failed to plead particularized facts showing that Andrew Nielsen communicated the pitch deck projections "with actual knowledge" that they were false or misleading.  *See Pension Fund*, 614 Fed. Appx. at 242.  Light's theory is that the pitch deck projections were misleading because they were different from the projections allegedly made in October 2016.  But Light pleads no particularized facts to show that Andrew Nielsen actually knew that the pitch deck projections were false or misleading.  Light fails to plead, for example, that the October projections had not simply been revised in good faith over the passage of time and in the ordinary course of business, or that Andrew Nielsen even represented that the pitch deck projections were current.  In the absence of particularized factual allegations showing that Andrew Nielsen actually knew that the pitch deck

- 15 -

projections were false or misleading, the pitch deck projections fall within the safe harbor. *See, e.g., Forman*, 2019 U.S. Dist. LEXIS 23120, at \*29-30 (claims based on "projections for fiscal year 2017" were dismissed under safe harbor).[5]

Third, neither the October 2016 "reforecasted" projections nor the pitch deck projections were material, as Light had the actual $25.1 million loss figures on January 3, 2017, before it purchased the stock. Ex. A at p. 3 & 4. Accordingly, the "pitch deck" and the projections therein cannot serve as the basis for liability under the securities laws.

b. **December 10, 2016 email**

Light next points to a December 10, 2016 email from Andrew Nielsen that contained or attached "actual financial information for 2015 and for 2016 through October 31, 2016, as well as the Company's purported growth model." FAC at ¶ 33. The growth model was in the form of a spreadsheet that could be manipulated by the recipient to run various projections for EBTH's future performance. *Id.* Light does not allege that the "actual" 2015 financial information or the actual financials through October 2016 were false or misleading in any way, and thus they cannot serve as the basis for liability.

Light does allege that the projections within the interactive "growth model" were somehow false or misleading because they "represented" a future, projected loss of "$19,430,571." *Id.* at ¶ 36. But any projections within the interactive growth model also fall within the PSLRA's safe harbor. Again, the projections were accompanied by meaningful cautionary language—including (i) an express warning from Mr. Nielsen that EBTH was "working through final budgeting for 2017 right now. As such, that will adjust some of our

---

[5] For the same reasons, the alleged "verbal conversation" between Mr. Sullivan and Andrew Nielsen on December 1, 2019, cannot give rise to liability under the securities laws. FAC at ¶ 22. As alleged in the First Amended Complaint, that conversation dealt with sales revenue projections for 2017, which projections are also protected by the PSLRA's safe harbor.

future projections," *id.* at ¶ 33, and (ii) a recitation of factors that could affect the projections. *Id.*

These forward-looking projections are thus absolutely immune from liability under the securities

laws. *In re Huffy Corp. Secs. Litig.*, 577 F. Supp. 2d 968, 1015 (S.D. Ohio Sept. 17, 2008).

And, even if the accompanying language was not "meaningfully cautionary," the forward-

looking projections in the December 10, 2016 email still cannot give rise to liability for the same

reasons as the earlier pitch deck projections—(i) Plaintiff fails to plead particularized facts

showing that Andrew Nielsen actually knew they were false or misleading at the time they were

communicated to Light; and (ii) the omitted October 2016 projections were immaterial as a

matter of law, given Andrew Nielsen's disclosure on January 3, 2017 of EBTH's actual losses of

$25.1 million. *See* Exhibit A.

### c.      **December 19 email**

Light next points to a December 19, 2016 email from Andrew Nielsen as purportedly

being misleading. FAC at ¶¶ 39-40. In this email, Andrew Nielsen wrote that EBTH was

"currently working through 2017 planning and believe[s] that the top line revenue projection will

likely be in the $130-140MM range." *Id.* at ¶ 39 (emphasis added). He stressed that the

projections were still being adjusted and that the final budget for 2017 would not be approved

until the "next board meeting in early 2017." *Id.* These projections fall within the safe harbor

because (i) all of these statements were forward-looking and accompanied by cautionary

language, and/or (ii) Light pleads no particularized facts to show that Andrew Nielsen actually

believed the projections to be false, and/or (iii) any omitted projections were immaterial, in any

event. *See Local 295/Local 851 IBT Emplr. Grp. Pension Trust & Welfare Fund v. Fifth Third

Bank*, 731 F. Supp. 2d 689 (S.D. Ohio Aug. 10, 2010).[6]

---

[6] Light also suggest that Andrew Nielsen made misrepresentations on December 19 and
December 22 by stating that he was attempting to provide Light with the "most current info."

### d.      **January 3 email**

Finally, Light alleges that the January 3, 2017 email and attachment from Andrew Nielsen—the damning email that Light did not attach to the First Amended Complaint—was somehow misleading because it did not include "the Company's Cash Flow Statement" and "omitted" other "plan information" from the income statement.  FAC at ¶¶ 43-49.  Courts have repeatedly made clear that this theory of liability—generalized complaints that not enough information was provided to a plaintiff—is not cognizable under the PSLRA.   Rather, to adequately plead falsity, the plaintiff must both (i) identify specific affirmative statements that were rendered false or misleading by the omitted material, and (ii) "specify the reason or reasons" why the affirmative statements were rendered false or misleading by omission.  15 U.S.C. § 78u-4(b)(1)(B); *see also, e.g., Nicholson v. N-Viro Int'l Corp.*, 2007 U.S. Dist. LEXIS 76522, at *23-24 (N.D. Ohio Oct. 12, 2007) ("To be actionable under Rule 10(b)(5), the alleged material omissions must render an existing public statement false or misleading.").

Light does neither with respect to the January 3 email (or any other alleged misrepresentations).  Just as it failed to do in its original complaint, Light fails to identify a single specific statement in the January 3 email, or the accompanying spreadsheet, that was rendered false or misleading by virtue of the "omission" of the cash flow statement or other information.  And Light does not "specify the reason or reasons" why any such statements were rendered false or misleading by omission.  Instead, Light generally alleges that certain "material

---

FAC at ¶¶ 40.  There is nothing to suggest that this statement was false or misleading; to the contrary, Light's complaint is that Andrew Nielsen should have provided "non-current" information as well, like the superseded October 2016 projections.  Additionally, Light's suggestion that Andrew Nielsen made misrepresentations by pricing the EBTH stock at $2.438 per share, FAC at ¶ 41, is also implausible.  As a highly-sophisticated accredited investor that was provided all material financial information before the stock sale, Light was capable of making its own determination as to whether the stock price was appropriate or not.

information" was omitted from the January 3 email and the spreadsheet, but general allegations are not enough under the PSLRA. *Nicholson*, 2007 U.S. Dist. LEXIS 76522, at *25 (dismissing securities fraud claim for failure to "satisfy the strict pleading requirements of the PSLRA" where plaintiff failed to sufficiently allege "that omission of [] information rendered any specific statements" by the defendants false or misleading); *see also In re Bank of Am. AIG Disclosures Sec. Litig.*, 980 F. Supp. 2d 564, 575 (S.D.N.Y. 2013) ("[Defendants] are not required to disclose a fact merely because a reasonable investor would very much like to know that fact.") (internal citations omitted).

Indeed, it bears noting that the information sent to Light on January 10, 2017 by EBTH's CFO showed the same actual financial results as contained in the January 3, 2017 email and spreadsheet. *Compare* Exhibit A and Exhibit B. Both, for example, showed the same $25.1 million in losses for EBTH through November 2016. This clearly undercuts any suggestion that the January 3, 2017 communications were somehow exposed as "false" or "misleading" by virtue of the information contained in the January 10, 2017 email and spreadsheet, as both contained materially the same financial information.

e.    **July 24 Letter and the "Down Round"**

While the majority of the alleged misstatements and omissions in the First Amended Complaint deal with information provided prior to closing, Light also purports to identify a single alleged misstatement or omission that occurred months after closing. Specifically, Light points to a July 24, 2017 letter from Andrew Nielsen that stated the following, and alleges that it was misleading because it omitted any reference to the "down round" that would not occur until eight months later, in the spring of 2018: "We've made strong progress thus far in 2017, and I believe we've created great momentum as we head into the second half of the year. Our team is dedicated to driving a banner year for EBTH, and we truly appreciate your ongoing support."

- 19 -

FAC at ¶ 80.  Light never (i) alleges any affirmative duty to disclose the "down round," nor (ii) specifies any particular statement in this July 24 letter that was rendered false or misleading because it omitted any reference to the "down round" in March 2018 (eight months after the letter), or (iii) specifies the reason or reasons why any such statement was false or misleading by omission.  *Id.*  Thus, again, Light has failed to plead falsity with the particularity required by the PSLRA.

> D.  **Light fails to plead scienter with particularity.**

Even assuming that Light has pleaded materiality or falsity with particularity (and it has not), its claims still should be dismissed for the separate and independent reason that it fails to plead scienter with particularity.

"While pleading claims for fraud always required a higher level of particularity, the PSLRA requires an even higher standard for pleading scienter in a securities-fraud case." *In re Huntington Bancshares Secs. Litig.*, 674 F. Supp. 2d 951, 967 (S.D. Ohio Dec. 4, 2009).  Specifically, the PSLRA "requires that a plaintiff 'shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind' in violating the securities laws." *Doshi v. Gen Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (emphasis added).  The requisite "strong inference" of scienter must be more than "merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  A plaintiff can plead this "strong inference" only by alleging particularized facts showing that each defendant acted with either (i) a "knowing and deliberate intent to manipulate, deceive, or defraud," or (ii) recklessness—that is, "highly unreasonable conduct which is an extreme departure from standards of ordinary care." *Doshi*, 823 F.3d at 1039.  Courts in the Sixth Circuit consider a number of factors when analyzing scienter,

- 20 -

including (i) the divergence between internal reports and external statements on the same subject, (ii) disregard of the most current factual information before making statements, and (iii) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication.  *Albert Fadem,* 334 F. Supp. 2d at 1008.

> 1.  **Light fails to plead scienter with respect to the financial information provided to it before closing.**

In order to plead the requisite "strong inference" of scienter, Light must plead particularized facts showing that <u>each</u> Individual Defendant made materially false representations with a "knowing and deliberate intent" to defraud, or with recklessness as to whether the information was true or false.  *Doshi*, 823 F.3d at 1039.  As stated above, neither Defendant Reynolds nor Jonathan Nielsen is alleged to have made any statements to Light in connection with the sale of EBTH stock.  Because they did not make any statements, it follows that they could not have made any statements with scienter.  The claims against them should be dismissed for failure to plead scienter.

With respect to Andrew Nielsen, Light relies primarily on two allegations to attempt to show scienter:

> a.  **The October "reforecast"**

Light points to the so-called "reforecast" in October 2016 showing projected losses of $25 million, and alleges that Andrew Nielsen "knowingly" withheld this reforecast from Light in December 2016 and January 2017.  For the reasons stated above, however, this allegation fails to show scienter.  It is implausible (nonsensical even) to allege that Andrew Nielsen was fraudulently concealing the October 2016 projected losses of $25.1 million for 2016, when he shared with Light prior to closing the fact that EBTH <u>had actually lost</u> $25.1 million through

- 21 -

November 2016. This disclosure completely undercuts any inference of fraudulent intent. *See, e.g., Cellular South, Inc. v. J.P. Morgan Sec., Inc. (In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.)*, 2014 U.S. Dist. LEXIS 141022, at *43 (S.D.N.Y. Sept. 30, 2014) ("JP Morgan disclosed . . . the very practices that plaintiff now claims were fraudulently and intentionally omitted. Plaintiff therefore does not allege a compelling inference of scienter."). The more cogent, non-fraudulent inference is that the October 2016 projections were not disclosed because they had been superseded by actual results that were disclosed. *See, e.g., In re Tangoe, Inc. Stockholders Litg.*, 333 F. Supp. 3d 77, 103-04 (D. Conn. 2018) (no securities fraud where defendant disclosed current projections, but did not disclose "prior, superseded projections"). Because this non-fraudulent inference is more plausible than any fraudulent inference, this Court should decline to find scienter. *See, e.g., In re Satyam Computer Servs. Sec. Litig.*, 915 F. Supp. 2d 450, 469 (S.D.N.Y. 2013) (securities fraud claim should be dismissed where non-fraudulent inference is more cogent and compelling than fraudulent inference).

### b. Other Financial Information

Light also offers a convoluted theory of scienter based on the allegation that certain of the information it received on January 10, 2017 was omitted from the spreadsheet that was sent on January 3, 2017, but should have been provided because it was created on December 23, 2017. FAC at ¶¶ 61-62. The theory is confusing and hard to follow. The most important point, however, is that the allegedly omitted information relates to comparisons between 2016 projections and 2016 actual results. *See* Exhibit B. But Light had the actual loss information before its purchase, so there is no scienter.[7]

---

[7] Light alleges that the updated spreadsheet was sent to it on January 10, 2017 by "the then-current Chief Financial Officer." FAC at ¶ 57. That CFO himself *purchased 102,536 shares of EBTH, for $249,999*, at the same time and as part of the same transaction as Light. ECF No. 23-1 at Schedule A. This renders any inference of fraud not cogent. It is implausible to believe that

2. **Light has not alleged scienter with respect to the "down round."**

Light similarly pleads no particularized facts to show that Andrew Nielsen knowingly or recklessly omitted any reference to the "down round" from his July 24, 2017 letter. Indeed, Light pleads no particularized facts to show that Andrew Nielsen was even aware in July 2017 that EBTH would participate in a "down round" of financing eight months later. Accordingly, Light has failed to plead scienter with respect to this alleged misstatement.

E. **Light fails to adequately plead loss causation.**

A securities fraud plaintiff must separately plead loss causation—"that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). Courts have described the loss causation requirement as akin to proximate cause—the plaintiff must show that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).[8]

Here, Light's First Amended Complaint fails to answer a simple (and dispositive) question: How did the alleged omission prior to closing of the October 2016 projections and other financial information cause its losses? Light draws no causal connection between the information that was allegedly withheld prior to closing of the stock sale, and any losses it has suffered in the two years since. Light does not even attempt to allege how the purportedly omitted information caused the value of Light's shares to decline, or otherwise damaged Light in

---

the Company's CFO—who is alleged to have had prior access to the "fraudulent" information transmitted to Light on January 10—would have personally bought $249,999 in EBTH stock if the transaction was infected by fraud.

[8] Light must plead loss causation even to the extent it seeks rescission of the stock sale, rather than monetary damages. *See JSMS Rural LP v. GMG Capital Partners, III, LP*, 2006 U.S. Dist. LEXIS 54104, at *4 (S.D.N.Y. Aug. 4, 2006).

- 23 -

any way over the course of the following two years. Nor does Light draw any causal connection between the so-called failure to disclose EBTH's "down round" and any losses.

Indeed, the fact that Light waited so long to bring suit—two years after allegedly learning of 2016 and 2017 financial numbers, and one year after learning of the "down round"—creates a compelling inference against loss causation. Given this lapse of time, any losses are more plausibly attributable to "changed economic circumstances . . . new industry-specific or firm-specific facts, conditions or other events, which taken separately or together account for some or all" of the drop in value of EBTH stock. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005). Because Light has failed to show that any alleged misrepresentations or omissions caused its losses, its claims should be dismissed for failure to plead loss causation as well.

II.      **Light fails to state a claim under both the Delaware Securities Act and the Ohio Securities Act.**

A.       **Delaware Securities Act**

Count II of the First Amended Complaint is for violations of the Delaware Securities Act. This claim should be dismissed for at least two independent reasons. First, the Delaware Securities Act is to be interpreted consistent with the federal securities laws. *See* 6 Del. Ch. § 73-201 ("[C]ourts will be guided by the interpretations given by federal courts to . . . . Rule 10b-5 [] promulgated under the Securities Exchange Act of 1934 . . . ."). Where a claim under the Exchange Act fails, so too does a claim under the Delaware Securities Act. *Van Roy v. Sakhr Software Co. (K.S.C.C.)*, 2014 U.S. Dist. LEXIS 92068, at *17 (D. Del. July 8, 2014) (dismissing claims under federal securities laws and under Delaware Securities Act for failure to adequately plead scienter). Because Light's claim under the Exchange Act should be dismissed, so too should its claim under Delaware law.

Second, and independently, the Delaware Securities Act "imposes liability only where

the transaction in question bears a 'sufficient nexus' to the State." *JAC Holding Ents., Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710, 738 (E.D. Mich. 2014) (citing Delaware law). Here, Light pleads only minimal connections between its claims and Delaware—that (i) EBTH is a Delaware corporation, and (ii) the Common Stock Purchase Agreement contains a Delaware choice of law provision. FAC at ¶ 2; ECF 23-1 at ¶ 14. The Delaware Chancery Court, however, has made clear that these minimal connections are insufficient as a matter of law to create a colorable nexus to Delaware. *See FdG Logistics LLC*, 131 A.3d 842 at 857. Light's claim should accordingly be dismissed.

B.     **Ohio Securities Act**

Count II for violations of the Ohio Securities Act should also be dismissed. Like its claims under the federal securities laws, Light's claims for violations of the Ohio Securities Act are subject to the heightened pleading requirements of Rule 9(b)—"the circumstances constituting the fraud must be stated with particularity," including the "content of the alleged misrepresentation" on which the plaintiff relied and "the fraudulent intent of the defendants." *See Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 813 F. Supp. 2d 871, 878 (S.D. Ohio Sept. 26, 2011); *Reinglass v. Morgan Stanley Dean Witter*, 2006-Ohio-1542 (8th App Dist. March 30, 2006) (claims under Ohio Securities Act must be pleaded with particularity). Light's claims fail under this standard for at least the following reasons.

First, just as with its federal securities laws claim, Light fails to plead any actionable misstatements or omissions. Both provisions of the Ohio Securities Act invoked by Light— O.R.C. §§ 1707.41 and 1707.44—and Rule 9(b) require the plaintiff to plead material misstatements or omissions with particularity. *See* O.R.C. § 1707.41(A) (applying to "loss or damage sustained by the relying person by reason of the falsity of any material statement . . . ."); O.R.C. § 1707.44(B) ("No person shall knowingly make or cause to be made any false

- 25 -

representation concerning a material and relevant fact . . . .").  As shown above, Jonathan Nielsen and Michael Reynolds made no statements to Light, let alone any materially false statements. Thus, they cannot be liable under the Ohio Securities Act.  Likewise, Andrew Nielsen cannot be liable under the Ohio Securities Act because none of the statements he made to Light is alleged with particularity to be materially false or misleading.  This is especially so given that the information Light claims was fraudulently withheld—$25 million in losses—was in fact disclosed to Light prior to the sale.  *See* Ex. A.

Second, liability under Section 1707.41 is limited to misstatements or omissions contained in "a written or printed circular, prospectus or advertisement."  O.R.C. § 1707.41(A). Light does not allege in the First Amended Complaint that Andrew Nielsen (or any of the Individual Defendants) made misstatements or omissions of material fact in any "written or printed circular, prospectus or advertisement," and therefore liability cannot be imposed under Section 1707.41.

Third, in order to state a claim for violations of Section 1707.44, Light must plead with particularity that the Individual Defendants made misstatements "knowingly" or "with purpose to deceive."  O.R.C. § 1707.44(B), (G), (J).  Again, Light fails to meet this standard for the same reasons it failed to plead scienter under the federal securities laws.

Fourth, relatedly, a defendant can be held liable for violations of Section 1707.44 only if the defendant made affirmative misrepresentations of fact; a defendant cannot be held liable for omissions of material fact.  *Escue v. Sequent, Inc.*, 2010 U.S. Dist. LEXIS 87043, at *38 (S.D. Ohio. Aug. 24, 2010).  Light's claims are based on the allegation that the Individual Defendants omitted certain material financial information from the disclosures provided in December 2016 and 2017.  Thus, Light cannot recover under Section 1707.44.

Fifth, and finally, Light cannot hold Andrew Nielsen liable for violating the Ohio Securities Act because Andrew Nielsen did not sell any securities to Light. The Ohio Securities Act "prohibits sellers of securities" from making materially false or misleading statements. *Ohio Police & Fire Pension Fund*, 813 F. Supp. 2d at 876-77. Here, the First Amended Complaint and attached Common Stock Purchase Agreement show that Andrew Nielsen did not sell any EBTH securities to Light; only Jonathan Nielsen and Mr. Reynolds did. ECF No. 23-1 at Schedule A. Thus, Andrew Nielsen cannot be liable under the Ohio Securities Act as a matter of law. *See Ohio Police & Fire Pension Fund*, 813 F. Supp. 2d at 876-77 (dismissing claim under Ohio Securities Act where defendant was not a "seller" of securities to plaintiff).

III. **Light's remaining common law claims fail as a matter of law.**

A. **Light fails to state a claim for fraud under Rules 9(b) and 12(b)(6).**

Light also asserts a claim for common law fraud. Like the federal securities laws, claims for common law fraud are subject to the heightened pleading requirements of Rule 9(b). These heightened requirements apply equally to fraud claims based on alleged omissions of material fact, and the plaintiff must plead, among other things, that the defendant knew or should have known that its statements were misleading by omission. *See, e.g., Davisson v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 122673, at *28 (S.D. Ohio Sept. 3, 2014).[9]

Light's common law fraud claim fails for the same reasons as its statutory securities fraud claims. Light fails to allege any actionable misrepresentations or omissions, and also fails to

---

[9] Unless otherwise noted, the Individual Defendants respectfully submit that Ohio law governs Light's common law claims, because Ohio is the place where the Individual Defendants are alleged to have committed the acts alleged in the First Amended Complaint. *See Macurdy v. Sikov & Love*, *P.A.*, 894 F.2d 818, 820-22 (6th Cir. 1990). The narrow Delaware choice of law clause applies only to the breach of contract claims against Jonathan Nielsen and Mr. Reynolds. If, however, this Court were to determine that Delaware law applies more broadly, then Light's Ohio Securities Act claim would be barred by that clause. *See Concheck v. Barcroft*, 2011 U.S. Dist. LEXIS 88964 (S.D. Ohio Aug. 3, 2011).

- 27 -

allege that any of the Individual Defendants acted with intent to defraud. For these reasons, the common law fraud claim should be dismissed.

Light's common law fraud claim should separately be dismissed because it is based on alleged representations and omissions made prior to and outside of the Common Stock Purchase Agreement, and is thus barred by the agreement's merger clause, in which Light expressly stated that "[t]here are no representations, warranties, agreements or undertakings of the Sellers with respect to the transactions contemplated by this Agreement other than those set forth in this Agreement." ECF No. 23-1 at ¶ 5(d). Given this provision, Light cannot as a matter of law plead that it reasonably relied on any representations made outside the agreement. *See, e.g., Eastham v. Appalachia*, 2013 U.S. Dist. LEXIS 102846, at *12 (S.D. Ohio July 23, 2013) ("[W]hen a written contract is integrated, 'it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution.'"). While this provision may not bar Light's claims under the federal securities laws (which generally cannot be waived), it does bar Light's common law fraud claims to the extent they rely upon alleged extra-contractual representations made prior to closing. *See id.*

Finally, Light's common law fraud claim should be dismissed because it has not pleaded the requisite element of actual reliance on the purported misrepresentations and omissions. *See, e.g., In re Nat'l Century Fin. Enters., Inc.*, 905 F. Supp. 2d 814, 823 (S.D. Ohio 2012). Light did not exist until January 3, 2017, *see* ECF No. 20-1 at p. 4, after the allegedly false and misleading representations had been made by Andrew Nielsen, and thus could not have "actually relied" upon any of the alleged misrepresentations.

B.     **Light fails to state a claim for negligent misrepresentation.**

As this Court has held: "Under Ohio law, a claim for negligent misrepresentation arises when one supplies false information; it does not provide a cause of action based on an omission.

- 28 -

. . . [T]here must be some affirmative false statement." *Adams v. Antonelli College*, 304 F. Supp. 3d 656, 667 (S.D. Ohio 2018) (Black, J.); *see also Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir. 2003) ("[A] negligent misrepresentation claim only lies for an affirmative false statement, not an omission."). Light's claim fails because it is based on alleged omissions regarding (i) EBTH's financial condition before the stock sale, and (ii) the "down round" of financing.

### C.     **Light fails to state a claim for civil conspiracy.**

"An action for civil conspiracy cannot be maintained unless an underlying unlawful act, which would be actionable in the absence of the conspiracy, is committed." *Shoemaker v. Murdock*, 2019 U.S. Dist. LEXIS 13662, at *12 (S.D. Ohio Jan. 29, 2019). Here, since Light has failed to plead any underlying unlawful acts, the civil conspiracy claim should be dismissed.

The conspiracy claim also fails for the independent reason that, under Ohio law, "[a] corporation cannot conspire with its own agents or employees." *Valente v. University of Dayton*, 689 F. Supp. 2d 910, 929 (S.D. Ohio 2010). Light alleges that each of the Individual Defendants was, "[a]t all relevant times[,] an officer of the Company," FAC at ¶¶ 5,7,9, and further alleges that each of the Individual Defendants was acting within his role as an officer of the company in connection with the stock sale. *Id.* at ¶ 11 ("[The] Individual Defendants controlled the Company and acted as agents on its behalf . . . as related to the Plaintiff's purchase of stock"). Because the Individual Defendants are alleged to have been acting in their corporate capacities, they cannot have conspired with EBTH as a matter of law.

### D.     **Light fails to state a claim for breach of fiduciary duty.**

Light's claim for breach of fiduciary duty also should be dismissed. To the extent this claim is based on any alleged failure to disclose information prior to the stock sale, the claim fails because the Individual Defendants did not owe any duties to Light, which at the time was

- 29 -

only a prospective stockholder (and, in fact, did not even exist until January 3, 2017). *See, e.g., Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 407 (7th Cir. 2000) ("prospective stockholders are not owed fiduciary duties") (citing Delaware law); *Sanders v. Devine*, 1997 Del. Ch. LEXIS 131, at \*16 (Del. Ch. Sep. 24, 1997) (no fiduciary duty because "plaintiff was not a stockholder").[10]

The claim also should be dismissed even to the extent it is based on the Individual Defendants' alleged failure to provide information relating to EBTH's "down round" of financing. Under Delaware law, directors do not owe a fiduciary duty to disclose information unless "the board elects to or has a duty to seek shareholder action." *Raskin v. Birmingham Steel Corp.*, 1990 Del. Ch. LEXIS 194, at \*15 (Dec. 4, 1990); *Malone v. Brincat*, 722 A.2d 5, 11 (Del. 1998) ("In the absence of a request for stockholder action, the Delaware General Corporation Law does not require directors to provide shareholders with information concerning the finances or affairs of the corporation."). Thus, because the Individual Defendants and EBTH were not seeking any action or approval from Light in connection with the "down round," there was no affirmative fiduciary duty to disclose it.

E.     **Light's claim for aiding and abetting a breach of fiduciary duty fails.**

Light's claim for aiding and abetting a breach of fiduciary duty also fails because no such claim exists under Ohio law. *See, e.g. DeVries Dairy, LLC v. White Eagle Cooperative Association, Inc.*, 132 Ohio St. 3d 516 (2012); *Cohen v. Dulay*, 2017-Ohio-6973, at ¶ 27 (9th App. Dist. 2017) (affirming dismissal of claim for aiding and abetting a breach of fiduciary duty because "such a cause of action is not cognizable under Ohio law"); *Sacksteder v. Senney*, 2012-

---

[10] Under the internal affairs doctrine, Light's claim for breach of fiduciary duty is governed by Delaware law because EBTH is a Delaware corporation. *See Kober v. Harrington*, 2018 U.S. Dist. LEXIS 110409, \*8 n.5 (N.D. Ohio July 2, 2018).

- 30 -

Ohio-4452, at ¶¶ 73-76 (2d App. Dist. 2012) (Ohio courts do not recognize claim for aiding and abetting a breach of fiduciary duty).

Moreover, even if such a claim existed (or if Delaware law applies to the claim), it would still fail because there was no underlying breach of fiduciary duty, as shown above, and there can be no claim for aiding and abetting in the absence of an underlying breach.  *Gerber v. EPE Holdings, LLC*, 2013 Del. Ch. LEXIS 8, at *45-46 (Del. Ch. Jan. 18, 2013).

F. **Light's breach of contract claim fails.**

Light also asserts a claim for breach of the Common Stock Purchase Agreement against "the Individual Defendants."  As a threshold matter, no claim for breach of contract can be asserted against Andrew Nielsen because he did not sell any stock to Light, and thus was not in contractual privity with Light.  *See, e.g., Eves v. AIG, Inc.*, 2010 U.S. Dist. LEXIS 25403, at *4 (S.D. Ohio Feb. 22, 2010) ("To maintain a cause of action for breach of contract, Ohio law requires privity of contract.").

As to Jonathan Nielsen and Mr. Reynolds, they represented in the Common Stock Purchase Agreement that "[t]o each [of their] knowledge, since October 19, 2016, there has not been a material adverse effect on the business" of EBTH.  FAC at ¶ 158.  Light alleges in conclusory fashion that Jonathan Nielsen and Mr. Reynolds "fail[ed] to disclose to [Light] various material adverse effects on the business of the Company resulting in the actual financial losses in 2016 . . . ."  *Id.* at ¶ 160.  Light, however, never identifies what these "material adverse effects on the business of the Company" were—it simply concludes such effects occurred and should have been disclosed. This is insufficient to state a claim under Rule 12(b)(6), as Light has failed to plead any facts to support its conclusory legal allegation that "material adverse effects" occurred—especially where, as here, it is undisputed that Light had disclosed to it EBTH's $25.1 million in actual losses in 2016.  *See, e.g., Bridgeforth v. Dave*, 2010 U.S. Dist. LEXIS 104105,

at \*9-10 (D. Del. Sept. 28, 2010) (applying *Iqbal* and *Twombly* and dismissing breach of contract claim based on "conclusory allegations"); *Representaciones E Investigaciones Medicas, S.A. De C.V. v. Abdala*, 2017 N.Y Misc. LEXIS 2929, at \*42-43 (Sup. Ct. N.Y. July 31, 2017) (dismissing breach of contract claim based on "material adverse effect" representation where plaintiffs "have not pled sufficient facts to show this representation was false at the time of the transaction").

The breach of contract claim should also be dismissed to the extent it is based on the representations in the Common Stock Purchase Agreement that Jonathan Nielsen and Mr. Reynolds had not violated any applicable "statute, regulation or rule." FAC at ¶ 158. Light alleges that Jonathan Nielsen and Mr. Reynolds breached this provision by violating the Exchange Act and Rule 10b-5 promulgated thereunder, but as shown above, neither defendant violated these provisions. The breach of contract claim thus fails.

G.     **Light fails to state a claim for unjust enrichment.**

Finally, Light's throwaway claim for unjust enrichment also fails as a matter of law. Light's unjust enrichment claim is based on the allegation that the Individual Defendants received an unjust benefit in the form of the "money paid for the stock" and "stock price support." FAC at ¶ 166. But the stock purchase transaction was governed by the Stock Purchase Agreement, attached as Exhibit A to the First Amended Complaint. "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment [. . .] when an express contract covers the same subject." *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009). An unjust enrichment claim that is covered by an express contract should be dismissed even where the plaintiff attempts to plead the claim in the alternative. *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 905 (S.D. Ohio 2013). And since Andrew Nielsen received no money from Light (because he sold them no stock), Light cannot claim that he was unjustly enriched at

- 32 -

Light's expense.

## CONCLUSION

For these reasons, the Individual Defendants respectfully request that Light's claims be dismissed, in their entirety and with prejudice.

Dated: July 1, 2019

Respectfully submitted,

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein
joe.weinstein@squirepb.com
Sean L. McGrane
sean.mcgrane@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

Scott A. Kane
scott.kane@squirepb.com
Jennifer L. Dollard-Smith
jennifer.dollard-smith@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Tel: (513) 361 1200
Fax: (513) 361 1201

*Attorneys for Defendants Andrew C. Nielsen,*
*Jonathan C. Nielsen and Michael J. Reynolds*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Dismiss and supporting Memorandum of Law, and the accompanying exhibits, were served on all counsel of record through this Court's ECF system on July 1, 2019.

*/s/ Joseph C. Weinstein*

*One of the attorneys for Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds*