## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **LIGHT EBTH LLC** | ) | **Case No.: 1:19-CV-00011** |
| | ) | |
| **Plaintiff,** | ) | **Judge Timothy S. Black** |
| | ) | |
| **-v-** | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| **EBTH Inc., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT EBTH INC.'S REPLY IN SUPPORT OF ITS
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

<u>*/s/ Frances Floriano Goins*</u>
Frances Floriano Goins (0018631)
Daniela Paez (0091212)
ULMER & BERNE, LLP
1600 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Phone: (216) 583-7202
Fax: (216) 583-7203
Email: fgoins@ulmer.com
      dpaez@ulmer.com

John M. Hands (0040151)
ULMER & BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 698-5122
Fax: (513) 698-5123
Email: jhands@ulmer.com

*Counsel for Defendant EBTH Inc.*

## INTRODUCTION

Plaintiff's arguments against dismissal of Defendant EBTH Inc. ("EBTH") from this lawsuit based on the First Amended Complaint ("FAC") (Doc. 23) arising from a private stock sale to which EBTH was not a party only confirm that Plaintiff has not—and cannot—state a claim upon which relief can be granted under ***any***, let alone the heightened, pleading standards that govern the majority of the causes of action it seeks to assert against EBTH. Plaintiff's claims are all based on alleged misstatements and omissions by the Individual Defendants, which Plaintiff is unable to tie to EBTH by anything beyond unsupported leaps of logics. Plaintiff defends its improper injection of EBTH into this lawsuit with misrepresentations of the relevant legal standards, presentation of bare legal conclusions as alleged facts, and new allegations that are not in the FAC.

Plaintiff's response brief begins with its admission that "this case" is about EBTH's former officers, *i.e.*, the Individual Defendants, and their alleged conduct that Plaintiff claims "induced it" to purchase the Individual Defendants' stock. (Combined Response to Defendants' Motions to Dismiss the FAC ("Resp. Br."), Doc. 29, at p. 1.) The FAC, like its predecessor, however, does not contain ***factual*** allegations indicating that EBTH (or anyone acting on its behalf) made any misstatements or caused any misstatements to be made, let alone that it did so intending to defraud and induce Plaintiff into a transaction to which EBTH was not a party. (*See* Purchase Agreement, Doc. 23-1.)

Critically, Plaintiff fails to address, much less grapple with, the fact that the crux of its claim is that it was misled by the Individual Defendants' alleged failure to provide "***projections***,"—*i.e.*, "estimate[s] or forecast[s] of a ***future*** situation" (*see* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1402 (4th ed. 2000)) while ***Plaintiff was in possession of the actual, historical results showing actual losses in excess of the "projected"***

*losses*. EBTH is at a complete loss as to how Plaintiff can claim either misrepresentation or reasonable reliance under these circumstances, and Plaintiff's response brief does nothing to address this gap.

In place of particularized factual allegations against EBTH, Plaintiff claims that it is entitled to disregard Individual Defendants' execution of the Purchase Agreement in their individual capacities (*see* Doc. 23-1), based solely on its oft-repeated allegations against "Defendants" collectively and its odd, conclusory contention that the Individual Defendants managed to both control and be controlled by EBTH. Plaintiff's only new premise for treating EBTH and the Individual Defendants interchangeably and as one is the allegation that, before Plaintiff even existed, EBTH, through its former CEO, entered into a non-disclosure agreement ("NDA") with non-party SLC, LLC ("SLC"). But neither SLC nor EBTH was a party to the Purchase Agreement. While Plaintiff makes clear that it is not alleging a breach of, a misrepresentation in, or otherwise challenging the unrelated NDA, Plaintiff nonetheless leaps to the conclusion that *every other action* undertaken by EBTH's former CEO, A. Nielsen, including those that supposedly culminated in a contract to which EBTH (unlike the Individual Defendants) is not a party, must be attributable to EBTH. The existence of the NDA, however, does not relieve Plaintiff of its burden to establish, with specific facts, that A. Nielsen was also an agent of EBTH for the unrelated purpose of selling the Individual Defendants' company shares in a private secondary market transaction.

Plaintiff utterly fails to justify its treatment of every Defendant as one, instead relying on impermissible group pleading and the FAC's bare conclusory assertions that the Individual Defendants acted "on behalf of EBTH." Yet, the FAC does not marshal a single fact to establish that EBTH had or exercised *any* control over the Individual Defendants' dealings with Plaintiff.

Tellingly, Plaintiff attempts to impute such control based on A. Nielsen's occasional use of "we" and "ours" and his alleged use of his business email account for certain communications. But, as established by the cases Plaintiff relies upon, this falls far short of creating the required involvement by EBTH.

In addition, Plaintiff entirely undercuts its efforts to establish that the Individual Defendants were acting as EBTH's agents with respect to the alleged misstatements by conversely asserting that the Individual Defendants were, in fact, in control of EBTH. Such allegations contravene the most important element of an agency relationship—the alleged principal's ability to control the agent—since, if the Individual Defendants were the ones supposedly "controlling" EBTH, then, as a matter of logic, EBTH could not be exercising control over them.

Plaintiff's efforts to save its Delaware Securities Act and Ohio Securities Act claims by misapplying and confusing the applicable standard also fail, as does its assertion that EBTH, which did not receive anything from Plaintiff in connection with the stock purchase, should be held liable under an unjust enrichment theory because it was not a party to the Purchase Agreement. Setting aside the irony of this argument, which apparently eludes Plaintiff, that is simply not how the equitable doctrine of unjust enrichment works.

Despite another puzzle-style complaint attempting to remedy its previous deficient pleading, Plaintiff fails to state a claim against EBTH. Further amendment would be futile. Accordingly, the claims against EBTH should be dismissed with prejudice.

## **ARGUMENT**

### I. **The FAC Fails To Allege Any False or Misleading Statement.**

Plaintiff's claim fails at the outset because the FAC does not, and cannot, identify a single statement or omission that was materially false. Plaintiff's fraud claim rests upon A. Nielsen's alleged failure to disclose projections developed in October 2016 that allegedly forecasted losses

of approximately $25 million. (Resp. Br. at p. 20.) The omission of the projections is immaterial as a matter of law, however, because, as Plaintiff does not dispute, the Individual Defendants disclosed the company's *actual* losses of $25.1 million before Plaintiff closed on its purchase. (Doc. 25-1.)

The disclosure of greater, actual losses renders the alleged omission immaterial because no reasonable investor would view the nearly identical omitted projections "as meaningfully altering the total mix of available information." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012); *IBEW Local 697 Pension Fund v. Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 632 (S.D. Ohio 2011). Plaintiff's timely receipt of actual updates over previously projected results also rendered Plaintiff's reliance on the allegedly omitted projections unreasonable. *See FIH, LLC v. Found. Capital Partners, LLC*, 176 F. Supp. 3d 52, 84 (D. Conn. 2016). *Cf., Rubke v. Capitol Bancorp Ltd.*, 551 F. 3d 1156, 1162-63 (9th Cir. 2009) (a plaintiff cannot establish falsity based on an omissions theory where the allegedly omitted information was disclosed to investors because "it is pointless and costly to compel firms to reprint information already in the public domain").

Plaintiff's failure and inability to plead an actionable misrepresentation alone warrants dismissal of the FAC with prejudice and without leave to amend.

## II. None of Statements Alleged in the FAC Are Properly Attributable to EBTH.

Plaintiff attempts to justify its failure to plead a specific misstatement that can, on its face, be attributable to EBTH based on two arguments: (1) non-party Mark Sullivan, on behalf of non-party SLC, entered into an NDA with EBTH where SLC agreed to treat all confidential information "that may be provided by or on behalf of" EBTH or "that otherwise becam[e] available to" SLC confidentially (Compl. Ex. D; Resp. Br. at pp. 26-28); and (2) the Individual Defendants' allegedly used EBTH's logo on a "pitch deck" and their "Company email account[s] and . . . [A. Nielsen's]

4

signature block [identifying him] as Chief Executive Officer." (Resp. Br. at p. 6.) But, EBTH's alleged NDA with non-party SLC—which is "not allege[d]" to have been "breached" (*Id*. at p. 28) or to contain the "false and inaccurate . . . information" that Plaintiff claims is "[t]he heart of this matter" (*Id*. at p. 25)—and the Individual Defendants' alleged use of their business email accounts and the EBTH logo in connection with the sale of their EBTH stock do not even begin to justify holding EBTH liable for the Individual Defendants' alleged wrongdoing in connection with that sale.

> **A.    The FAC Does Not Plead Sufficient Facts to Warrant Attributing Any Alleged Misstatement or Omission to EBTH Under an Agency Theory.**

The FAC does not allege any facts indicating that the Individual Defendants, or anyone, made any alleged misstatement acting as agents of EBTH. Plaintiff relies on the unremarkable fact that A. Nielsen executed the NDA on behalf of EBTH, just as Mark Sullivan executed it on behalf of SLC, attempting to morph that unrelated agency relationship to establish, as it must, that the Individual Defendants were acting as agents of EBTH *with respect to their private stock sale* to Plaintiff. That the NDA by its terms is a contract to which EBTH is a party and which was executed by A. Nielsen in a representative capacity is neither in dispute nor relevant. However, nothing about EBTH's execution of the NDA through A. Nielsen supports Plaintiff's illogical leap that other alleged acts by A. Nielsen in connection with private stock sale were also undertaken on behalf of EBTH.

As a threshold matter, and contrary to Plaintiff's assertion, the NDA does not even apply to the Individual Defendants' private stock sale to Plaintiff. By substituting the word "in" for the word "with," and redefining "Transaction" as used and defined in the NDA, Plaintiff deliberately distorts the actual language and stated purpose of the NDA between SLC and EBTH. Plaintiff repeatedly, and incorrectly, states that the NDA applies to a potential investment "*in* the Company"

(*e.g.*, ". . . regarding any potential investment *in the Company's* stock or other transaction with the Company,"; and ". . . any information received regarding a potential investment *in the Company*, including any purchase of shares from them individually," (Resp. Br. at p. 8) (emphasis added)), and that the NDA applies to the secondary sale transaction between SLC and EBTH (*e.g.*, "[the NDA] was entered into by the Company in connection with *the transaction* . . . ," (Resp. Br. at p. 7) (emphasis added); and "Company . . . is making available the information that was provided in connection with *the potential investment*." (Resp. Br. at p. 27) (emphasis added)).  In fact, the NDA actually states that **SLC** "will not use the Confidential Information for any purpose other than considering a potential investment or other transaction **with the Company (the** "**Transaction**")." (Doc. 23-4, NDA (emphasis added).)  That is, the NDA unambiguously applies only to a potential transaction **with EBTH**.  The secondary sale between the Individual Defendants and Plaintiff was not such a transaction.  Therefore, the NDA is irrelevant to Plaintiff's agency theory.[1]

To be clear, as established in EBTH's motion to dismiss, "agency" is a legal concept and, as with any legal theory, a plaintiff seeking to hold an alleged principal liable for the alleged conduct of its purported agent cannot simply rely on "a formulaic recitation of the elements" of agency or on "naked assertion[s] devoid of further factual enhancement." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations omitted). While Plaintiff may have offered "factual enhancement" for its conclusion that the NDA between

---

[1] Moreover, as explained in EBTH's opening brief, Plaintiff was not a party to the NDA, and did not even exist at the time the NDA was executed by Mark Sullivan for SLC or when the Confidential Information was communicated by A. Nielsen to Sullivan or SLC. (EBTH'S Motion at pp. 4, 6, and 17; Goins Decl., Ex. 1, 2.) Neither Mark Sullivan nor SLC could have been agents for a principal that did not yet exist. "One cannot be an agent for a nonexistent principal; there is no agency. This situation frequently arises where a corporate promoter enters into contracts prior to the time the corporation is actually incorporated." *Re/Max Crossroads Properties v. Roberts*, 2013-Ohio-5575, ¶ 14 (Ohio App. 8th Dist. Dec. 19, 2013); *M. Steel, Inc. v. Seltzer*, 2011-Ohio-2522, ¶ 11 (Ohio App. 8th Dist. May 26, 2011).

SLC and EBTH (neither of which was a party to the Purchase Agreement) was explicitly executed by A. Nielsen on behalf of EBTH, the same is not true with respect to the allegations that actually relate to the Individual Defendants' alleged dissemination of the "false and inaccurate . . . information" that Plaintiff claims is "[t]he heart of this matter." (Resp. Br. at p. 25.)

To the contrary, the allegations purporting to attribute the Individual Defendants' alleged wrongdoing to EBTH are, in their entirety, vague, garbled, and conclusory,[2] including that: "[a]t all relevant times, the Individual Defendants controlled the Company and acted as agents on its behalf . . ." (Compl. ¶ 11); "each of the Individual Defendants was a central and primary participant in the Defendants' joint action . . . to make materially false and/or deceptive financial statements and disclosures provided to Plaintiff only through the three Individual Defendants on behalf of each other and of the Company" (*id.*); "[t]he . . . projections were consistent with verbal statements made on behalf of the Defendants to Mark Sullivan" (*id*. at ¶ 21); "the Individual Defendants were speaking and making statements on behalf of each other and on behalf of the Company and acting in their roles as agents of the Company and management principals thereof who directed and controlled Company policy." (*See id*. at ¶ 31.)

These are precisely the types of insufficient "conclusory statement[s] of a legal proposition without any supporting factual allegations to demonstrate its plausibility" that have been rejected as support for liability based on an agency theory. *See Kendall v. Phoenix Home Health Care Servs. Ltd.,* S.D.Ohio No. 2:15-CV-3009, 2016 WL 5871506, *3 (dismissing all claims against defendant who was not a party to the agreement at issue because, *inter alia*, "no . . . agency relationship [was] adequately pled"). Plaintiff's over-reliance on the NDA highlights the FAC's

---

[2] They are also contradictory. Indeed, in its response, Plaintiff admits that "The Company is not alleged to have participated in the conspiracy" with the Individual Defendants to engage in "numerous acts of fraud, misrepresentation and breach." (Resp. Br. at 43-44).

lack of factual support establishing that A. Nielsen's undertook any act related to the private sale of stock to Plaintiff—*i.e.*, the crux of the FAC—as EBTH's agent.[3]

Tellingly, Plaintiff misplaces reliance on *Lorenzo v. Securities and Exchange Commission*, 139 S.Ct. 1094, 203 L. Ed. 2d 484 (2019), as somehow supporting the notion that a non-participant in the transaction at issue—such as EBTH—can nonetheless be held liable. In *Lorenzo*, however, the Supreme Court simply held that a person or entity who—unlike EBTH—"disseminat[es] false or misleading statements ***with intent to defraud***" can violate the anti-fraud provisions of federal securities law, "even if [it] did not 'make' the statements." *Lorenzo*, 139 S. Ct. 1094 at 1101 (emphasis added). Notably, the petitioner in *Lorenzo* sought review of an order holding him liable for knowingly and intentionally sending emails with false information even though he was not the drafter, yet—again, unlike EBTH—he did not dispute "that he sent the e-mails with 'intent to deceive, manipulate, or defraud' the recipients." *Id*. Far from being analogous to this case, *Lorenzo* too shows on how far afield the FAC is from adequately pleading a federal securities or common law fraud claim.

Simply put, nothing in the FAC or in Plaintiff's brief establishes that the Individual Defendants were in any way acting as agents of EBTH ***with respect to their private stock sale transaction***.[4] *See, e.g., Carter v. Gerbec*, 9th Dist. Summit No. 27712, 2016-Ohio-4666, ¶ 34 (an

---

[3] As established in EBTH's opening brief, "[t]he most important element in determining whether an agency exists i[s] the presence of some control over the conduct of the agent." *Barrett-O'Neill v. Lalo, LLC*, No. 2:14-CV-194, 2014 WL 3895679, at *3 (S.D.Ohio Aug. 8, 2014). Plaintiff makes no effort to address, let alone grapple with, its failure to establish that EBTH "controlled" the Individual Defendants with respect to their private sale of stock to Plaintiff. Instead, Plaintiff's brief—ironically—claims that the FAC "contains specific allegations of [EBTH's] specific role," yet fails to list even one such "specific" factual allegation. Plaintiff merely reiterates the FAC's vague and conclusory assertion that "all of the Defendants were making [allegedly fraudulent disclosures] through A. Nielsen," and posits that EBTH's role is evident from the use of the word "we." Plaintiff, however, does not—and cannot—cite any authority to support its theory that an alleged agent's use of the word "we" establishes control or supports agency liability.

[4] If anything, Plaintiff's brief underscores that the FAC does not allege that EBTH "engaged" or "acted… to commit the . . . claims stated [in the FAC] (including federal and state statutory fraud, common law fraud and negligent misrepresentation)." (Resp. Br. at 43-44.)

alleged principal is not liable where, as here, there are no facts establishing "that the agent's actions were intended to or did facilitate or promote the [principal's] business").  Try as it may, Plaintiff cannot establish that the Individual Defendants' private stock transaction was anything more than that: a private stock transaction not involving EBTH.  Thus, to the extent Plaintiff's Exchange Act Section 10(b) or state law fraud claims against EBTH is premised on an agency-liability theory, the FAC fails as a matter of law.

> **B.    Plaintiff's Treatment of Its Section 20(a) Claim Further Abrogates Its Claim That the Individual Defendants Acted as Agents of EBTH.**

In Count I of the FAC, Plaintiff insists that the Individual Defendants "controlled" EBTH, notwithstanding that Plaintiff's entire theory of liability against EBTH rests on its (inadequately pled) contention that the Individual Defendants were acting as EBTH's agents.  Plaintiff's claim that the Individual Defendants were, instead, the ones controlling EBTH, requires accepting the notion that EBTH somehow acted as both agent **and** principal with respect to the Individual Defendants' sale of their privately owned stock.[5]

As EBTH explained in its opening brief, "Section 20(a) claims are predicated upon at least one underlying violation committed by a controlled party." *Frank v. Dana Corp.*, 646 F.3d 954, 962 (6th Cir. 2011).  Plaintiff's circular attempt to plead a claim under Section 20 completely abrogates its agency-based claims: Plaintiff alleges that the Individual Defendants "controlled" EBTH, whose alleged primary violation is dependent on the allegation that the Individual

---

[5] "*Cf. Culhane v. Aurora Loan Services of Nebraska*, 826 F.Supp.2d 352, 369 (D.Mass. 2011) ("Courts and scholars alike have expressed reservation, even bewilderment, as to MERS's claim to be both mortgagee and nominee or, as it has been generalized, both principal and agent"); *In re Agard,* 444 B.R. at 254 ("MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best"); Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory,* 53 Wm. & Mary L. Rev. 111, 118 (2011) ("On the one hand, MERS purports to act purely as . . . [a mortgagee's] agent. On the other hand, MERS also claims to be an actual mortgagee . . . . ***That a company cannot be both an agent and a principal with respect to the same right is axiomatic***.").

Defendants' were acting as agents of EBTH—*i.e.*, that EBTH controlled them. *See Barrett-O'Neill, supra.* at *3 ("[t]he most important element in determining whether an agency exists i[s] the presence of some control over the conduct of the agent."). This approach has no foothold in the statutory scheme or in common sense.

### C. EBTH Made No Representations to Plaintiff.

Plaintiff suggests, throughout its brief and in the FAC, that it need not make particularized allegations as to each Defendant based on its oft-repeated claim that the Individual Defendants somehow "controlled" and were also "agents" of EBTH. Plaintiff is wrong, and its attempt to satisfy PSLRA's pleading requirements or dodge the specificity requirements of Fed. R. Civ. 9(b) through "group pleading" (*see* Resp. Br. at 30) is unavailing. Plaintiff "cannot meet [its] burden under Rule 9(b) by relying, as [it] do[es], on group pleading." *Jiaxi Hu v. Chan,* S.D.Ohio No. 1:15-CV-709, 2016 WL 4269065, *6, *amended*, S.D.Ohio No. 1:15CV7092018 WL 3242306. Where, as here, a complaint asserting fraud claims asks "the court to ignore contractual and corporate formalities and essentially . . . consider all of the [d]efendants as a single entity for purposes of stating [its] claims," it is properly dismissed for failure to state a claim upon which relief can be granted. *Id*.

### III. The FAC Does Not Plead a Strong Inference of Scienter By EBTH.

Plaintiff asserts that it does not need to make particularized allegations, because A. Nielsen's use of the words "we" and "our" and his alleged use of his business email account, inexplicably impute to EBTH the Individual Defendants' purported desire "to unload ***their*** stock onto Plaintiff." (*See* Resp. Br. at pp. 33-34.) Plaintiff, however, is obliged to allege facts "giving rise to a strong inference that" ***EBTH*** "acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (2010). In fact, attributing to EBTH "a mental state embracing intent to deceive, manipulate, or defraud," on the grounds that A. Nielsen used his business email address and the

words "we" and "ours," and on the Individual Defendants' desire to sell their stock, is neither "plausible [n]or reasonable"—let alone "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999); *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2018 WL 3723712, at *3 (E.D. Tenn. Aug. 2, 2018) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).

Plaintiff does nothing to grapple with the fact that the more logical inference, in light of Plaintiff's failure to set forth factual allegations of scienter *on the part of EBTH*, is that the details of the Individual Defendants' communications with Plaintiff in their individual capacities as stock owners and sellers related to and leading up to a private transaction to which EBTH was not a party and from which it did not derive any benefit cannot be attributed to EBTH. (*See, e.g.,* FAC Ex. A, Purchase Agreement at Schedule A.)

Plaintiff's reliance on *Brown v. Earthboard Sports USA, Inc.* as supporting its claim that A. Nielsen's use of "we" and "ours" and his use of his business email address sufficiently establishes scienter is, at best, misplaced. In *Brown*, the court specified that, in order to find scienter based on misrepresentations of present or past facts (which, in any event, did not occur here) the plaintiff must establish "knowledge or recklessness," *i.e.,* "an extreme departure from the standards of ordinary care, such that the danger of misleading buyers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Brown*, 481 F.3d 901, 917-18 (6th Cir. 2007). Nothing in the FAC suggests such an "extreme departure" by EBTH. Equally misplaced is Plaintiff's reliance in *In re Lason, Inc. Securities Litigation*, 143 F.Supp.2d 855, 859-60 (E.D. Mich. 2001), where, again, unlike here, the plaintiffs "identified a number of false and misleading statements in the prospectus" and "statements in press releases that followed," both made *on behalf of the company*, not the individual speaker. *In re Lason,* 143 F.Supp.2d 855,

859.  Stated otherwise, the misleading statements were made by the company to the public in publicly available, widely disseminated sources—not in a handful of private emails sent by one individual to, at most, two other individuals.[6]  The FAC points to nothing—no documents, emails, or public information—that supposedly confirm that EBTH both knew of, and controlled the Individual Defendants' communications with SLC. Plaintiff's failure to allege facts giving rise to a strong inference of scienter is fatal to its fraud-based claims against EBTH.

## IV.    The FAC Fails to Establish Reliance and Loss Causation.

Plaintiff's response brief identifies the avenues available to a party seeking to plead loss causation (*see* Resp. Br. at p. 35), but Plaintiff fails to actually satisfy its burden to plead, with specificity, how any of the alleged misstatements and omissions "caused the loss for which [it] seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).

Plaintiff explains its loss causation theory as boiling down to the idea that Plaintiff purchased the Individual Defendants' stock and paid them a certain price because of alleged misrepresentations with respect to "the growth model for the Company." (Resp. Br. at pp. 35-36.) As a matter of well settled law, however, Plaintiff cannot establish causation unless it sufficiently alleges both, that (1) but for the allegedly fraudulent statement it would not have entered into the transaction for a purchase or sale of a security (*i.e.,* "transaction causation" or reliance), ***and*** (2) that the alleged misrepresentation was "in some reasonably direct, or proximate, way responsible for [its] loss." *See D.E. & J L.P. v. Conaway*, 284 F. Supp. 2d 719, 747 (E.D. Mich. 2003) (quoting

---

[6] Plaintiff also misplaces reliance on *City of Monroe Employees Retirement System v. Bridgestone Corp.,* 399 F.3d 651, 683 (6th Cir. 2005), where allegations that ***a company's*** public annual statements contained false information were found to support an inference of scienter—*i.e.*, knowledge or recklessness with respect to their public dissemination.  Here, however, Plaintiff does not, and cannot, identify a single representation (false or otherwise) disseminated by EBTH. Likewise, *In re FirstEnergy Corp. Securities Litigation,* 316 F.Supp.2d 581, 597-601 (N.D. Ohio 2004), dealt with claims arising under Section 15 of the Securities Act based on officers' signing a securities registration statement issued ***by the company*** containing inaccurate statements of fact.

*Campbell v. Shearson/American Express Inc.*, 829 F.2d 38, at *2 (6th Cir. 1987)); *see also May v. Apricus Biosciences, Inc.,* No. 3:13-CV-00554, 2014 WL 4897938, at *9 (M.D. Tenn. Sept. 30, 2014), *aff'd,* 650 F.App'x 893 (6th Cir. 2016) ("a plaintiff" must "allege ***both*** (1) transaction causation (*i.e.,* that but for the defendant's fraudulent statement or omission, the plaintiff would not have entered into the transaction for the purchase or sale of a security) ***and*** (2) loss causation (*i.e.,* that the subject of the fraudulent statement relied upon was the cause of the actual loss suffered).") (emphasis added).

Plaintiff's claim that it "would not have closed on the" private stock sale but for the Individual Defendants' alleged representations regarding the "growth model," only addresses transaction causation or reliance, not loss causation. At best, Plaintiff disingenuously claims that it may not have purchased the stock had the Individual Defendants reported anticipating more significant losses, but it does not plead that "the ***subject*** of the fraudulent statement or omission was the cause of the actual loss suffered." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis added). While creative, Plaintiff's attempt to obfuscate the distinction between reliance and loss causation is ineffective because there is no logical connection whatsoever between the alleged failure to provide the "growth model" and any purported subsequent decline in "the shares' value." (Resp. Br. at p. 36.) Indeed, Plaintiff does not allege at any point that the purported "value" of the shares declined ***because of*** the allegedly omitted projections. Rather, taking Plaintiff's allegations as true, the supposed "value" of the stock was and would have remained the same regardless of what was (or was not) shared with Plaintiff. In short, Plaintiff sets forth no facts plausibly linking the alleged misrepresentation to its purported losses.

Further denigrating its theory of loss causation, Plaintiff asserts that the price it paid the

Individual Defendants for their stock was "associated with the 2016 projected financial loss of $18,548,773" presented on December 3, 2016. (Resp. Br. at p. 36.) Plaintiff's alleged reliance on that projection when it was provided with greater, actual loss figures, however, is not only implausible but, in fact, impossible. Plaintiff does not dispute that before it paid the price reflected in the Purchase Agreement, A. Nielsen disclosed *actual*—not projected—losses in excess of $25.1 million. Plaintiff's failure to establish either reliance or loss causation dooms its claim.[7]

## V.     The Ohio Securities Act Does Not Apply to the Stock Sale Transaction.

With respect to Count II of the FAC, Plaintiff misconstrues or primarily relies on authority that does not address the constitutional defense that EBTH raised. Plaintiff conflates the separate tests that courts use to determine: (1) if the Ohio Securities Act applies to a sale, and (2) if it violates the constitutional extraterritoriality principle. As noted by this Court, however, even if "the Ohio Securities Act would apply to the sales here, *a different question* is whether the Commerce Clause permits it. *In re: National Century Financial Enterprises, Inc.* 755 F.Supp.2d 857, 875 (S.D. Ohio 2011). There, the Court held that even though there was a sufficient nexus to apply the Act based on the issuer's Ohio residence and the defendant's points of contract with the Ohio-based fraud, applying the Ohio Securities Act "would violate the extraterritoriality principle of the Commerce Clause" because the transaction occurred wholly outside of Ohio. *Id.* at 888.

Furthermore, the Court's discussion of *Howard v. Rowley and Brown Petroleum Corp.*, No. 78-AP-113, 1978 WL 217030 (Ohio Ct. App. Aug. 15, 1978), and *Federated Management Co., et al. v. Coopers & Lybrand, et al.*; *Fleet Bank, NA*, 137 Ohio App. 3d 366 (Ohio Ct. App. 2006), was limited to the question of whether the Act applied; not whether applying it would

---

[7] Inexplicably, page 36 of Plaintiff's brief alleges that "EBTH has refused [its] demands for . . . information." This is not alleged in the FAC, and, in any event, does not remedy Plaintiff's failure to establish *loss causation*.

violate the Commerce Clause. Thus, Plaintiff's reliance on those cases is completely misplaced.[8]

As explained in EBTH's opening brief, the "commerce" or "conduct" regulated by the Act is the "sale" and "purchase," not the fraud. *See In re: National Century* at 882, 888. Here, the FAC is conspicuously silent as to where the transaction occurred, although the Purchase Agreement indicates that the closing (*i.e.*, the shares' title transfer) was to be in Massachusetts. Plaintiff relies merely on allegations that all Defendants are located in Ohio (FAC, ¶¶ 3, 5, 7, 9), but this does not suffice. *Eric M. Berman P.C. v. City of N.Y.*, 895 F.Supp.2d 453, 483 (E.D.N.Y. 2012), *vacated and remanded on other grounds*, 796 F.3d 171 (2nd Cir. 2015) ("if the transaction is consummated out of state, a state may not regulate it without violating the dormant Commerce Clause—*regardless of whether . . . one of the parties is a state resident*.").

The FAC's failure to plead sufficient facts demonstrating that the transaction occurred in Ohio and that application the Act does not violate the Commerce Clause is fatal to Plaintiff's claim under the Ohio Securities Act.[9]

## VI. The Delaware Securities Act Does Not Apply to the Stock Sale Transaction.

Similarly, with respect to what is also pled as Count II of the FAC, Plaintiff argues that the Delaware Securities Act applies because Plaintiff and EBTH were incorporated in Delaware, and EBTH originally issued the shares in Delaware. (Resp. Br. at p. 38.) The FAC, however, does not allege where EBTH issued the shares. This is for good reason: EBTH did not issue any shares in connection with the Individual Defendants' secondary sale of their personally owned stock to

---

[8] *Ohio Police & Fire Pension Fund v. Standard & Poor's*, 813 F.Supp.2d 871 (S.D. Ohio 2011) (cited in Resp. Br. at 39-40), likewise did not address the extraterritoriality principle in the Commerce Clause under the transactional test.

[9] Plaintiff's Ohio Securities Act Claim also fails for the reasons set forth in the Individual Defendants' Reply Memorandum of Law in Support of Motion of Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds to Dismiss the First Amended Complaint filed today, which are incorporated by reference herein.

Plaintiff. Moreover, this Court has specifically considered—and flatly rejected—that argument: "a sale of securities does not 'originate' in Oklahoma merely because the security was originally issued [t]here. Some nexus between the 'sale'—not merely the security—and the state is required." *In re: National Century* at 880 (internal citations omitted).

Plaintiff's reliance on EBTH's and its own status as Delaware entities is also unavailing because, while the "Delaware Securities Act governs transactions . . . subject to Delaware jurisdiction under traditional tests," the Act does not "introduce Delaware commercial law into the internal affairs of corporations merely because they are chartered there." *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 852 (Del. Ch. 2016). Rather, "a Delaware corporation is bound by the Act, *if it is otherwise applicable. But it is not bound simply because the company is incorporated here*." *Id.* (emphasis added).

Thus, Plaintiff's claims under the Delaware Securities Act also fail as a matter of law.

## VII. The FAC Does Not States Common Law Fraud Claims Against EBTH.

Plaintiff's response brief asserts that the FAC "clearly alleged" Plaintiff's "reliance on the statements and participation in the stock transaction." (Resp. Br. at p. 40.) Yet, nowhere does Plaintiff even address the fact that, on January 3, 2017, seven days before the alleged closing, its members received *actual financial results*, which reflected *a greater loss* than the allegedly misleading projections. Against that backdrop, Plaintiff's claim of reliance on omitted projections is at odds with the well established rule that, to be justifiable, reliance must be reasonable. Setting aside the merits of Plaintiff's contention that the projections it received were optimistic, its alleged reliance on forward-looking estimates when confronted with *actual* losses of $25.1 million is simply not reasonable. *Harrison v. Dean Witter Reynolds, Inc.,* 79 F.3d 609, 618 (7th Cir. 1996) ("The fact of reliance . . . is not enough by itself; that reliance must be justifiable, or reasonable.").

Additionally, Plaintiff attempts to sidestep the express disclaimer and non-reliance

16

language in the NDA by claiming that it is inapplicable because "Defendants allegedly presented outdated projections as 'most current'." (Resp. Br. at p. 28.)  The FAC, however, does not allege that A. Nielsen, or anyone, stated that the purported projections were "the most current projections."[10]  But, even if Plaintiff had pled anything to that effect, such allegedly outdated projections are precisely the type of forward-looking information covered by the disclaimer. Plaintiff is, in fact, asserting that it relied upon the allegedly "false" "projection information" (Resp. Br. at p. 23) as a representation or assurance with respect to EBTH's future performance. (*See, e.g.*, FAC ¶¶ 71, 99, 110, 117 and 128.)  Indeed, based on the language of the disclaimer and non-reliance provision, Plaintiff was not entitled to rely upon any "estimates or projections," including any forward-looking growth model, it received pursuant to the NDA.[11]

Moreover, Plaintiff's effort to discard its representations in the Purchase Agreement as "mere boilerplate language" that precludes "parole [*sic*] evidence" is unavailing.  Contrary to Plaintiff's assertion, in Ohio, such integration clauses do prohibit fraud claims based on extra-contractual representations. *Eastham v. Chesapeake Appalachia*, 2013 WL 3818549, *4 (S.D. Ohio July 23, 2013).  Plaintiff, a sophisticated investor, acknowledged and represented that it was not relying on any representations outside the four corners of the Purchase Agreement.  It cannot now seek to, on the one hand, hold EBTH liable because the investment did not turn out as Plaintiff had hoped, while, on the other hand, ignoring the material terms of the agreement governing that transaction as legally irrelevant boilerplate.

---

[10] *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) (plaintiff "cannot amend his claim in his memorandum in opposition").

[11] Further, even if Plaintiff (as opposed to SLC) had been the "Recipient" and the NDA somehow applied to the secondary sale (which it does not) the "Recipient" expressly represented and warranted that it would not rely on any Confidential Information received absent "**a mutually agreed definitive agreement . . . executed by the Company**." (NDA at ¶ 2) (emphasis added).  There was no such agreement.  Plaintiff's brief completely fails to address, much less explain away, this additional, specific non-reliance warranty in the NDA.

Finally, Plaintiff does not dispute that, as this Court has stated, "Ohio federal courts have long recognized, silence, even in the face of foreseeable injury, is not actionable unless there is a fiduciary or quasi-fiduciary relationship between the parties which mandates full disclosure." *Nelson v. Am. Power & Light*, No. 2:08-CV-549, 2010 WL 3219498, at *10 (S.D.Ohio Aug. 12, 2010). Plaintiff makes no effort to identify any such relationship or any duty EBTH allegedly owed it to disclose, and instead accuses EBTH of "misconstru[ing]" the FAC because, Plaintiff argues, the provision of outdated projections—which necessarily entails the omission of ***updated*** projections—means that their claim is not "based solely on the omission of relevant information." (Resp. Br. at p. 43.) That circular argument, too, fails to save Plaintiff's fraud claims.

## VIII. Plaintiff Fails to State a Claim for Unjust Enrichment Against EBTH.

Plaintiff all but concedes that its Unjust Enrichment claim, as pled, fails as a matter of law by attempting to salvage it by crafting a series of new allegations not found in the FAC. Plaintiff's attempt to amend its FAC through argument in its response brief confirms that it has not, and cannot, establish that it conferred any benefit ***on EBTH***. *Poston on behalf of Poston v. Shelby-Love*, 8th Dist. Cuyahoga No. 104696, 2017 WL 3189249 at *3, 95 N.E.3d 659 (July 27, 2017) (noting that the first element of unjust enrichment is "a benefit conferred by a plaintiff upon a defendant").[12] Moreover, in arguing that its unjust enrichment claim against EBTH is proper because EBTH is not a party to the Purchase Agreement, Plaintiff misses the mark—its unjust enrichment claim is barred because the transaction at issue, *i.e.*, "the exact same subject matter," is governed by an express contract. *Bihn v. Fifth Third Mortg. Co.*, 980 F.Supp.2d 892, 905 (S.D. Ohio 2013). Thus, Plaintiff's unjust enrichment claim also fails as a matter of law.

---

[12] Plaintiff's brief suggests that EBTH somehow benefitted by "maintain[ing] an inflated valuation and the private diversification and ownership of its equity shares" (Resp. Br. at p. 47), but this is yet another example of an allegation that is nowhere in the FAC.

## <u>CONCLUSION</u>

For the foregoing reasons and for those set forth in its Motion to Dismiss, Defendant EBTH Inc. requests that the Court dismiss each of Plaintiff's claims asserted against it in the First Amended Complaint with prejudice and without leave to amend.

Dated: August 5, 2019

*/s/ Frances Floriano Goins*
Frances Floriano Goins (0018631)
Daniela Paez (0091212)
ULMER & BERNE, LLP
1600 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Phone: (216) 583-7202
Fax: (216) 583-7203
Email: fgoins@ulmer.com
       dpaez@ulmer.com

John M. Hands (0040151)
ULMER & BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 698-5122
Fax: (513) 698-5123
Email: jhands@ulmer.com

*Counsel for Defendant EBTH Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2019, a true and correct copy of *Defendant EBTH Inc.'s Reply In Support Of Its Motion to Dismiss Plaintiff's First Amended Complaint* was filed electronically and served via the Court's CM/ECF System upon:

Peter Blume, Esq.
Vincent M. Roskovensky, Esq.
CLARK HILL PLC
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
Email: pblume@clarkhill.com
Email: vroskovensky@clarkhill.com

***Counsel for Plaintiff***

Joseph C. Weinstein
Sean L. McGrane
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Email: joe.weinstein@squirepb.com
Email: sean.mcgrane@squirepb.com

***Counsel for Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds***

Anthony A. Agosta, Esq.
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
Email: aagosta@clarkhill.com

***Counsel for Plaintiff***

Scott A. Kane
Squire Patton Boggs (US) LLP
201 E. Fourth Street
Suite 1900
Cincinnati, OH 45202
Email: scott.kane@squirepb.com

***Counsel for Defendants Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds***

*/s/ Frances Floriano Goins*
Frances Floriano Goins
***One of the Attorneys for Defendant EBTH Inc.***

2576803v1