# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LIGHT EBTH, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-00011-TSB |
| ) | |
| v. ) | |
| ) | Hon. Timothy S. Black |
| EBTH INC., ANDREW C. NIELSEN, ) | |
| JONATHAN C. NIELSEN and MICHAEL J. ) | |
| REYNOLDS, ) | |
| ) | |
| Defendants. ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION OF
## DEFENDANTS ANDREW C. NIELSEN, JONATHAN C. NIELSEN AND
## MICHAEL J. REYNOLDS TO DISMISS THE FIRST AMENDED COMPLAINT

Joseph C. Weinstein
joe.weinstein@squirepb.com
Sean L. McGrane
sean.mcgrane@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Tel: (216) 479-8500
Fax: (216) 479-8780

Scott A. Kane
scott.kane@squirepb.com
Jennifer L. Dollard-Smith
jennifer.dollard-smith@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Tel: (513) 361 1200
Fax: (513) 361 1201

*Attorneys for Defendants Andrew C. Nielsen,
Jonathan C. Nielsen and Michael J. Reynolds*

## PRELIMINARY STATEMENT

In the very first paragraph of its First Amended Complaint, Plaintiff Light EBTH ("Light") alleges that Andrew Nielsen, Jonathan Nielsen and Michael Reynolds (the "Individual Defendants") committed fraud by "repeatedly and materially misrepresenting and **omitting the true (and severely deteriorating) financial condition**" of Defendant EBTH. FAC at ¶ 1. The FAC goes on to allege that the Individual Defendants failed to disclose "the Company's losses for 2016 year-end" and intentionally misstated "the Company's financial condition." *Id.* at ¶¶ 68, 70.

However—as shown in the January 3, 2019 email that Light references throughout the FAC, but chose not to attach to the FAC—Defendant Andrew Nielsen did in fact disclose the true financial condition of EBTH to Light prior to the stock sale. Specifically, one week before the stock sale, Andrew Nielsen disclosed to Light that EBTH had suffered more than $25 million in actual losses through November 2016. ECF No. 25-1. This is precisely the information that Light claimed in the FAC had been fraudulently withheld from it. *See* FAC at ¶ 63.

With its theory of fraud in the very first paragraph of the FAC exposed as false, Light now offers a new, convoluted theory of fraud. Ignoring EBTH's **actual** financial condition and results, which were disclosed to it, Light now argues that the Individual Defendants should have disclosed a set of financial projections developed in October 2016 that projected net revenue losses for 2016 of $25 million. But the implausibility of this new theory is obvious: It is nonsensical to argue that the Individual Defendants fraudulently withheld *projections* of a loss of $25 million for 2016, only to soon disclose (prior to the sale) that EBTH had *actually* suffered a loss of $25 million in 2016.

In short, **there was no fraud**. Light may have lost money on its investment—as often happens when sophisticated parties invest in start-up companies—but it cannot use litigation as a

tool to recoup its losses. Its claims should be dismissed. *See, e.g., Kemp v. Universal Am. Fin. Corp.*, 2007 U.S. Dist. LEXIS 2162, at *26 (S.D.N.Y. Jan. 10, 2007) (granting motion to dismiss and warning against "frivolous lawsuits brought by unlucky or unwise investors looking for someone to blame").

I.   **Light's federal securities law claims fail under the PSLRA.**

Count I for violations of the federal securities laws fails for each of the following separate and independent reasons.

A.   **The alleged omissions are not material.**

The fundamental premise of Light's new, revised theory of fraud is that the Individual Defendants failed to disclose projections developed in October 2016 that showed projected losses of over $25 million for 2016. *See* Opposition ("Opp.") at p. 20. But Light does not dispute that, prior to the closing of the stock sale, Defendant Andrew Nielsen disclosed to Light that EBTH had actually suffered $25.1 million in losses in 2016. ECF No. 25-1.

This disclosure of actual losses renders the alleged non-disclosure of identical projected losses completely immaterial, not significantly altering the total mix of information available to Light. *See IBEW Local 697 Pension Fund v. Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 632 (S.D. Ohio 2011). Plus, courts have held that projections are immaterial—and continued reliance on them misplaced—when they are superseded by later disclosures. *See, e.g., FIH, LLC v. Found. Capital Partners, LLC*, 176 F. Supp. 3d 52, 84 (D. Conn. 2016); *Panella v. Tesco Corp.*, 2019 U.S. Dist. LEXIS 65844, at *11 (S.D. Tex. March 29, 2019).

Because Light fails to plausibly plead that the October 2016 projections or any other "omitted" information was material, Light's claim should be dismissed. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 626 (S.D.N.Y. March 28, 2005) (holding that "the

materiality of the alleged misstatements or omissions cannot be pled in a conclusory or general fashion").[1]

### B. Jonathan Nielsen and Michael Reynolds cannot be liable because they made no representations to Light.

Light does not dispute that neither Defendant Jonathan Nielsen nor Defendant Michael Reynolds made any communications or statements, or had any affirmative disclosure obligations to Light, in connection with the stock sale. Since "silence" cannot be "misleading under Rule 10b-5" in the absence of an affirmative disclosure duty, Jonathan Nielsen and Michael Reynolds cannot be liable under the federal securities laws. *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).

Light tries to circumvent this obvious result by arguing that Andrew Nielsen's use of the phrase "we" in certain emails should be attributed to Jonathan Nielsen and Michael Reynolds. Opp. at p. 30. But Light cites no cases supporting this argument, which is antithetical to the PSLRA's requirement that a securities fraud plaintiff identify with particularity the "identity of the speaker of the alleged false and misleading statements." *Jiaxi Hu v. Chan*, 2016 U.S. Dist. LEXIS 107609, at *15 (S.D. Ohio Aug. 15, 2016).

Light also cites old, superseded cases allowing plaintiffs to rely on the so-called "group-published information doctrine." Opp. at pp. 29-30. But even those cases would not apply here, as this doctrine created a narrow presumption that allowed "plaintiffs to hold a corporation's

---

[1] For the same reasons, Light's argument that the Individual Defendants omitted "cash flow statements" and other "2016 plan information" from a spreadsheet sent on January 3, 2018 fails. Opp. at p. 9. Light fails to plead (and cannot plead) that disclosure of this information would have significantly altered the total mix of information available to Light, given that the actual financial losses were disclosed. Light is simply trying to manufacture a securities fraud violation by identifying immaterial information and arguing it should have been disclosed—an impermissible exercise under the securities laws. *See, e.g., Albert Fadem Trust v. Am. Elec. Power. Co.*, 334 F. Supp. 2d 985, 1020 (S.D. Ohio Sept. 10, 2014) (dismissing claims where plaintiff failed to allege materiality of omitted information).

officers and directors liable for false statements *found in collectively published documents*," which this case does not involve. *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 743 (S.D. Ohio 2006). More recent decisions from courts in this District have held that group pleading—including the "group-published information doctrine"—does "not survive the PSLRA." *Local 295/Local 851 IBT Emplr. Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 719 (S.D. Ohio 2010); *see also In re Huffy Corp. Secs. Litig.*, 577 F. Supp. 2d 968, 984-86 (S.D. Ohio 2008); *Jiaxi Hu*, 2016 U.S. Dist. LEXIS 107609, at *16-17 ("The Court, however, agrees with Defendants that Plaintiffs' reliance on group pleading is not proper.").[2]

### C. **Light fails to adequately plead scienter**.

Light does not plead "with particularity facts giving rise to a *strong* inference" of scienter. *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016) (emphasis in original). The requisite "strong inference" must be more than "merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

While Light argues that the Individual Defendants hid their view of the Company's prospects, Opp. at p. 33, it is impossible to square this argument with the pre-sale disclosure to Light of EBTH's actual $25.1 million in losses for 2016. It is both illogical and implausible that the Individual Defendants specifically intended to defraud Light by withholding ***projections*** of

---

[2] Light's citation to *JAC Holding Enters., Inc. v. Atrium Capital Partners*, 997 F. Supp. 2d 710, 728 (E.D. Mich. 2014), is similarly inapposite, as there, the court held that the complaint included "extensive specific allegations" tying each individual defendant to the acts and misstatements alleged in the complaint. Here, there are no allegations in the FAC that Michael Reynolds or Jonathan Nielsen made any statements or representations to Light in connection with the stock sale.

losses of $25.1 million for 2016, while disclosing *actual losses* of the same amount prior to the sale. This undercuts any inference—let alone the requisite compelling inference—of scienter. *See, e.g., In re Merrill Lynch Auction Rate Secs. Litig.*, 765 F. Supp. 2d 375, 387 (S.D.N.Y. 2011) ("MLPFS disclosed the very practices that [plaintiff] now claims were fraudulently and intentionally omitted. [Plaintiff] therefore does not allege a 'compelling' inference of scienter on this ground.").

Even ignoring the disclosure of actual losses, the FAC would still fail to plead scienter. Because Defendants Jonathan Nielsen and Michael Reynolds made no representations to Light, they clearly cannot be found to have made representations with scienter. And the FAC contains no particularized facts to show that Andrew Nielsen knew, or was reckless in not knowing, that any representations he made were false or misleading by virtue of the non-disclosure of the October 2016 projections. In fact, Light fails to plead particularized facts showing that Andrew Nielsen even knew about the October 2016 projections. Light argues in the Opposition that Andrew Nielsen should have known about the projections because he was "a high-ranking and financially-oriented officer and director of EBTH." Opp. at p. 32. But the Sixth Circuit has expressly rejected this method of attempting to plead scienter: "Contrary to [p]laintiff's assertions, fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the [c]ompany and alleged access to information . . . .[T]he [c]omplaint must allege **specific facts or circumstances** suggestive of their knowledge." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) (emphasis added). Light fails to allege such specific facts and circumstances, and thus fails to plead scienter.

D.  **Light fails to adequately plead loss causation**.

Light also fails to adequately plead loss causation—that "the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).

In its Opposition, Light argues that it has pleaded loss causation because: "[H]ad the Defendants not misrepresented the growth model for the Company Plaintiff would not have closed on the stock transaction, would not have paid the . . . stock price, and would not have lost its value as a result." Opp. at pp. 35-36. But Light has confused the element of *loss causation* with the separate element of *transaction causation (or justifiable reliance)*. As one district court in the Sixth Circuit has explained:

> Both prior to and after the passage of the PSLRA, courts have bifurcated the causation pleading requirement, and require that plaintiff allege facts establishing both 'transaction causation' and 'loss causation.' Transaction causation, another way of describing reliance, is established when the misrepresentations or omissions cause the plaintiff to engage in the transaction in question. As such, transaction causation is akin to actual or but for causation . . . . To establish loss causation, the plaintiff must show that the untruth was in some reasonably direct, or proximate, way responsible for his loss . . . . The loss causation requirement is satisfied in a Rule 10b-5 case only if the misrepresentation touches upon the reasons for the investment's decline in value. If the investment decision is induced by misstatements or omissions that are material and that were relied upon by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted.

*D.E. & J L.P. v. Conaway*, 284 F. Supp. 2d 719, 747 (E.D. Mich. 2003) (internal citations omitted) (quoting *Campbell v. Shearson/American Express Inc.*, 829 F.2d 38, at *2 (6th Cir. 1987)).

Light's argument that it "would not have closed on the stock transaction" but for the alleged misrepresentations regarding the company's projections goes to transaction causation, not loss causation. Loss causation requires the plaintiff to show that "the *subject* of the

- 6 -

fraudulent statement or omission was the cause of the actual loss suffered." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). And here, Light fails to draw any causal connection between the alleged misrepresentations regarding the projections, and any losses Light may have suffered in the two years since. For example, Light fails to allege that the value of its shares declined or was affected once the "true" facts regarding EBTH's financial condition were allegedly disclosed to it in January and February 2019, which is typically the manner in which a securities fraud plaintiff can show loss causation. *Id.* at 175. If the value of Light's shares did not change once it learned the allegedly omitted facts in January and February 2019, then Light cannot sufficiently show loss causation. *Id.; see also In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323 (W.D.N.Y. 2008).

Light attempts to show loss causation by arguing that the "price per share" was determined based on projected losses of $18.5 million, and that the price would have been lower had projected losses of $25.1 million been used. Opp. at p. 36. The price, however, was carefully negotiated between these sophisticated parties, and Light had knowledge of EBTH's $25.1 million in actual losses before agreeing to the price. Light's self-serving conclusions do not establish loss causation, particularly where Light knew about the **actual** losses before closing the sale at the negotiated purchase price.[3]

II. **Light's claims under the Delaware Securities Act and Ohio Securities Act should also be dismissed.**

   A. **The Delaware Securities Act**

Light does not dispute that a Delaware Securities Act claim may only be brought where there is a "sufficient nexus" between the state of Delaware and the conduct at issue. *See FdG*

---

[3] Light does not dispute that its claim under Section 20(a) of the Exchange Act must be dismissed if its claim under Section 10(b) is dismissed. Because the 10(b) claim fails, so too does the 20(a) claim.

*Logistics LLC v. A&R Logistics Holdings*, *Inc.*, 131 A.3d 842, 857 (Del. Ch. 2016). But all Light alleges is that EBTH is incorporated in Delaware, which is insufficient. *Id.* Light's citation to *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 813 F. Supp. 2d 871, 877 (S.D. Ohio 2011), is misplaced; that case did not involve a claim under the Delaware Securities Act and has nothing to do with Delaware law. Opp. at p. 40. Light cannot save its claim by conflating Ohio and Delaware law.

B.   **The Ohio Securities Act**

Light ignores, and thereby concedes, numerous arguments made by the Individual Defendants in their Motion to Dismiss—that (i) the Ohio Securities Act does not apply because the alleged misstatements made by Andrew Nielsen were not in a "written or printed circular, prospectus or advertisement," as the statute requires, *see* ECF No. 25 at p. 26; (ii) liability under Section 1707.44 of the Ohio Securities Act cannot be based on omissions, but only affirmative misrepresentations, *id.*; and (iii) Andrew Nielsen cannot be liable to Light because he did not sell any securities to Light, and thus is not a "seller" under the Act. *Id.* at p. 27; *see also Conrad v. U.S. Bank. N.A.*, 2019 U.S. Dist. LEXIS 102518, at *20 (S.D. Ohio June 19, 2019) (Black, J.) ("Plaintiff does not refute [d]efendants' characterization of Count II, nor does [p]laintiff respond in any way to [d]efendants' argument that this claim should be dismissed. Thus, [p]laintiff appears to concede the point and waives opposition to dismissal of this claim."); *Wood v. U.S. Bank. N.A.*, 2019 U.S. Dist. LEXIS 44901, at *7 (Mar. 18, 2019) ("A party waives opposition to an argument by failing to address it in her responsive brief.").

The Ohio Securities Act claim also fails for the same reasons the federal securities claim fails—Light has not sufficiently alleged any actionable misrepresentations under Federal Rule of Civil Procedure 9(b) (which governs this claim, *see* ECF No. 25 at p. 25), and Light has not

sufficiently alleged that any of the Individual Defendants made misstatements "knowingly" or "with purpose to deceive," as required under O.R.C. §§ 1707.44(B), (G), and (J).

III. **Light's common law claims fail.**

　　A. **Fraud**

Light's common law fraud claim also fails. First, Light cannot claim to have reasonably relied on any projections (or omitted projections) because Light was disclosed actual losses prior to the stock sale. Since Light does not (and cannot) plead reasonable reliance, its common law fraud claim fails.

Additionally, while Light argues otherwise, Opp. at pp. 40-41, nowhere in the FAC is an Individual Defendant alleged to have represented that Light was being provided the "most current" projections for 2016. Because the statement Light describes in its Opposition is not actually in the First Amended Complaint, it cannot give rise to liability for fraud. *In re Porsche Cars N. Am. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio July 19, 2012) (plaintiff "cannot amend his claim in his memorandum in opposition").[4] Moreover, like the federal law claims, Defendants Michael Reynolds and Jonathan Nielsen cannot be liable for common law fraud because they were *silent* as to the underlying transaction. *Nelson v. Am. Power & Light*, 2010 U.S. Dist. LEXIS 82777, at *28-29 (S.D. Ohio Aug. 12, 2010).

---

[4] It bears emphasis that the FAC does not contain any allegations that Andrew Nielsen affirmatively represented that projections sent on December 3, 2016 and December 10, 2016 were "current" or 'the most current' projections for **2016**. The only allegation that even comes close is at Paragraph 39 of the FAC, where Andrew Nielsen is alleged to have sent revenue ***projections for 2017*** to Light, and stated that he was sending the projections "in an effort to make sure you're operating off of the most current info." Light does not allege in the FAC that projections for 2017 were not current or otherwise misleading. Because there is no affirmative representation in the FAC that the 2016 projections were the "most current," Light cannot rely on these purported affirmative representations in support of its fraud claim, negligent misrepresentation claim, or any other claim.

- 9 -

Light's argument regarding the effect of the integration clause in the Stock Purchase Agreement is also wrong. Light incorrectly argues that this clause does not operate as a defense to a fraud claim, relying primarily on inapplicable Illinois law. In Ohio, however—as cases cited by the Individual Defendants show—the integration clause does prohibit Light from bringing fraud claims based on extra-contractual representations. *See* ECF No. 25 at p. 28; *Eastham v. Appalachia,* 2013 U.S. Dist. LEXIS 102846, at *13 (S.D. Ohio July 23, 2013) (dismissing claims for "negligent and/or intentional misrepresentation" where contract was integrated and thus reliance on extra-contractual representations was necessarily unreasonable).

Additionally, Light argues that EBTH cannot assert the economic loss doctrine as a basis for dismissing Light's fraud claim, since EBTH is not a party to the Stock Purchase Agreement. Defendants Jonathan Nielsen and Michael Reynolds, however, are parties to the Stock Purchase Agreement, and thus Light cannot assert a fraud claim against them, since "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Thornton v. Cangialosi*, 2010 U.S. Dist. LEXIS 51818, at *7 (S.D. Ohio May 26, 2010).

B. **Negligent Misrepresentation**

Light does not dispute that, as a matter of Ohio law, a negligent misrepresentation claim cannot be based on alleged omissions. Light vaguely suggests that "the Defendants provided affirmative false statements to the effect that the 2016 projections sent on December 3 and December 10, 2016 reflected the Company's actual business growth model at that time," Opp. at p. 43, but it does not (and cannot) identify any affirmative statement that was alleged to be false. *Id.; see also supra* at n.2. Rather, Light's argument remains that the projections and growth model provided on those dates were rendered false because they omitted any reference to the prior October 2016 re-forecasted projections. This cannot sustain a claim for negligent

misrepresentation. *See Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir. 2003) ("A negligent misrepresentation claim only lies for an affirmative false statement, not an omission.").

  C. **Civil Conspiracy**

Light acknowledges that it pleads that the Individual Defendants were acting in their corporate capacity in connection with the stock sale, and further acknowledges that—under the "intra-enterprise doctrine"—a corporation cannot conspire with its own employees or agents. *See* Opp. at p. 44. Light then incorrectly claims that the Individual Defendants—acting in their corporate capacity—could conspire between and among themselves, even if EBTH did not "participate[] in the conspiracy." *Id.*

Light is wrong. The "intra-enterprise" doctrine prohibits a finding of conspiracy between (i) EBTH and the Individual Defendants and (ii) between and among the Individual Defendants, alleged to be agents or employees of EBTH themselves. "Where all defendants, allegedly co-conspirators, are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Valente v. Univ. of Dayton*, 689 F. Supp. 2d 910, 928-29 (S.D. Ohio 2010); *see also Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991) (same). The civil conspiracy claim fails as a matter of law.

  D. **Breach of Fiduciary Duty**

Light does not dispute that it was not owed any fiduciary duties as a prospective stockholder. Instead, for the first time in this litigation, Light argues that its claim for breach of fiduciary duty is actually asserted derivatively on behalf of EBTH. Opp. at p. 44. Neither in its original Complaint, nor in its First Amended Complaint, did Light purport to be bringing this claim (or any other claim) derivatively on behalf of EBTH, and Light cannot amend its complaints through an opposition brief. *See In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d at 842.

But even assuming that the claim for breach of fiduciary duty is meant to be brought derivatively, the claim should still be dismissed because Light fails to comply with Federal Rule of Civil Procedure 23.1, which requires a derivative plaintiff to plead "with particularity" (i) that it has made a demand on the company's board to take certain action, or (ii) that such a demand would be futile. *See, e.g., Robinson Family Trust v. Greig*, 2013 U.S. Dist. LEXIS 66995, at *8-9 (N.D. Ohio May 10, 2013). There are no such allegations in the First Amended Complaint, and thus Light's claim for breach of fiduciary duty should be dismissed even if considered a derivative claim. *Id.* (dismissing derivative claims for failure to plead that a demand had been made, or that a demand would be futile, under Rule 23.1).

   E.  **Aiding and Abetting Breach of Fiduciary Duty**

Light's aiding and abetting a breach of fiduciary duty claim should also be dismissed. As a threshold matter, no such claim exists under Ohio law. Light half-heartedly argues that the question "is not resolved" under Ohio law, but fails to point to a single case in Ohio in which such a claim was sustained. By contrast, the Individual Defendants cited multiple cases in their Motion to Dismiss showing that there is no such claim. ECF No. 25 at pp. 30-31. Because the claim is governed by Ohio law (where the underlying conduct occurred), and because no such claim exists in Ohio, this claim should be dismissed.

Moreover, even if Delaware law applies, the claim still fails. Light implicitly acknowledges that its aiding and abetting claim can survive only if its underlying breach of fiduciary duty claim also survives. *See* Opp. at p. 44 ("Plaintiff's claim for aiding and abetting a breach of fiduciary duty should stand as well, given that the breach of fiduciary duty claim should survive . . ."). Here, because the breach of fiduciary duty claim fails for the reasons stated above, so does the aiding and abetting claim.

F.     **Breach of Contract**

Light cites no case law in support of its argument that Andrew Nielsen can be held liable for breach of contract, even though he did not sell any stock to Light and was not in contractual privity with Light. Opp. at p. 46. Light's unsupported argument is wrong. *See, e.g., Eves v. AIG, Inc.*, 2010 U.S. Dist. LEXIS 25403, at *4 (S.D. Ohio Feb. 22, 2010) ("To maintain a cause of action for breach of contract, Ohio law requires privity of contract.").

Light's arguments directed toward Jonathan Nielsen and Michael Reynolds are similarly deficient. Light argues that Jonathan Nielsen and Michael Reynolds breached a representation and warranty that the stock sale would not violate "any statute, regulation or rule," because (Light contends) the Defendants violated the federal securities laws in connection with the sale. As shown above, however, since Light's federal securities claim fails, there was no breach of this contractual representation and warranty. Finally, Jonathan Nielsen and Michael Reynolds did not breach the Stock Purchase Agreement by failing to disclose a "material adverse effect on the business of the Company." Light argues that Jonathan Nielsen and Michael Reynolds breached this provision by failing to disclose the October 2016 projections, the disclosure of which, Light argues, "would have revealed a 'material adverse effect on the business of the Company.'" Opp. at p. 45. This claim too is defeated by **the pre-sale disclosure of EBTH's actual financial results** for 2016—even if the losses were a "material adverse effect," they were disclosed to Light prior to the sale, and thus there was no breach of contract.

G.     **Unjust Enrichment**

By failing to address the argument, Light concedes that Andrew Nielsen cannot be liable for unjust enrichment, because he did not sell stock to Light (and thus received no money or other benefit at Light's expense). *See Wood*, 2019 U.S. Dist. LEXIS 44901, at *7 ("A party waives opposition to an argument by failing to address it in her responsive brief.").

- 13 -

The claim also fails as to Defendants Jonathan Nielsen and Michael Reynolds, because their sale of stock to Light is governed by the Stock Purchase Agreement, rendering the unjust enrichment claim superfluous. *See Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009) ("Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment . . . when an express contract governs the same subject."). Light argues that an unjust enrichment claim can proceed alongside a breach of contract claim "when the existence of a contract is in dispute." Opp. at p. 46. Here, there is no dispute that Jonathan Nielsen and Michael Reynolds are parties to the Stock Purchase Agreement with Light, and that the Agreement is valid and binding.

## **CONCLUSION**

For these reasons, and those stated more fully in their opening brief (ECF No. 25), the Individual Defendants respectfully request that Light's claims be dismissed, in their entirety and with prejudice.

Dated: August 5, 2019　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Joseph C. Weinstein*
　　　　　　　　　　　　　　　　　　　Joseph C. Weinstein
　　　　　　　　　　　　　　　　　　　joe.weinstein@squirepb.com
　　　　　　　　　　　　　　　　　　　Sean L. McGrane
　　　　　　　　　　　　　　　　　　　sean.mcgrane@squirepb.com
　　　　　　　　　　　　　　　　　　　SQUIRE PATTON BOGGS (US) LLP
　　　　　　　　　　　　　　　　　　　4900 Key Tower, 127 Public Square
　　　　　　　　　　　　　　　　　　　Cleveland, OH 44114
　　　　　　　　　　　　　　　　　　　Tel: (216) 479-8500
　　　　　　　　　　　　　　　　　　　Fax: (216) 479-8780

　　　　　　　　　　　　　　　　　　　Scott A. Kane
　　　　　　　　　　　　　　　　　　　scott.kane@squirepb.com
　　　　　　　　　　　　　　　　　　　Jennifer L. Dollard-Smith
　　　　　　　　　　　　　　　　　　　jennifer.dollard-smith@squirepb.com
　　　　　　　　　　　　　　　　　　　SQUIRE PATTON BOGGS (US) LLP
　　　　　　　　　　　　　　　　　　　201 E. Fourth St., Suite 1900
　　　　　　　　　　　　　　　　　　　Cincinnati, OH 45202
　　　　　　　　　　　　　　　　　　　Tel: (513) 361 1200
　　　　　　　　　　　　　　　　　　　Fax: (513) 361 1201

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants Andrew C. Nielsen,*
　　　　　　　　　　　　　　　　　　　*Jonathan C. Nielsen and Michael J. Reynolds*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Memorandum of Law was served on all counsel of record through this Court's ECF system on August 5, 2019.

*/s/ Joseph C. Weinstein*

*One of the attorneys for Andrew C. Nielsen, Jonathan C. Nielsen and Michael J. Reynolds*